# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF VIRGINIA

Alexandria, Virginia

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, WARNER BROS. RECORDS INC., ATLANTIC RECORDING CORPORATION, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN LLC, NONESUCH RECORDS INC., SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA RECORDS LLC, LAFACE RECORDS LLC, and ZOMBA RECORDING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TOFIG KURBANOV and DOES 1–10, d/b/a FLVTO.BIZ and 2CONV.COM, <br><br> Defendants. | CASE NO. _____ |

## COMPLAINT

Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Warner Bros. Records Inc., Atlantic Recording Corporation, Elektra Entertainment Group Inc., Fueled by Ramen LLC, Nonesuch Records Inc., Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Arista Records LLC, LaFace Records LLC, and Zomba Recording LLC (collectively, "Plaintiffs"), by and through their attorneys, on personal knowledge as to their own actions and on information and belief as to the actions, capabilities, and motivation of others, hereby allege the following:

## INTRODUCTION

1.      Plaintiffs are record companies that create, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country.  Defendants Tofig Kurbanov and Does 1–10 ("Defendants") own and operate websites located at the web addresses www.FLVTO.biz and www.2conv.com (collectively referred to herein as "FLVTO/2conv" or individually referred to herein as "FLVTO" or "2conv").  By Defendants' design, the FLVTO/2conv websites are essentially dedicated to the piracy of Plaintiffs' copyrighted sound recordings that are available on YouTube (www.youtube.com).  The FLVTO/2conv websites quickly and seamlessly capture the audio tracks contained in videos streamed from YouTube that the users of FLVTO/2conv access (those videos consist largely of Plaintiffs' copyrighted sound recordings), convert those audio tracks to an MP3 or other audio format (referred to herein as "audio files"), copy and store the audio files on FLVTO/2conv servers, and then distribute copies of those files from their servers to users in the United States, including in this District, thus enabling their users to download those audio files to their own computers, tablets or mobile devices.  All of this occurs without the authorization of Plaintiffs or YouTube, which makes videos available to its users for viewing and listening online, but not for copying or downloading.

2.      Capturing digital content streamed over the internet is known as "stream ripping." Copyright infringement through stream ripping has become a major problem for Plaintiffs and for the recorded music industry as a whole.  Indeed, stream ripping is now the dominant form of music piracy and, according to a recent study, nearly half of all internet users between the ages of 16 and 24 now regularly engage in unauthorized stream ripping to acquire music.

3.      By their conduct, Defendants, through their FLVTO/2conv websites, engage in unauthorized stream ripping and directly infringe Plaintiffs' copyrighted sound recordings. Defendants also provide and control the site, facilities, and means for FLVTO/2conv's users to

engage in copyright infringement, while financially profiting from the infringement.  Defendants also materially contribute to the infringement by their users, of which Defendants have knowledge.

4.       Defendants' conduct, and the conduct of FLVTO/2conv's users that Defendants induce and facilitate and to which Defendants materially contribute, infringes Plaintiffs' copyrights and other rights.  It also violates YouTube's Terms of Service.  In addition, on information and belief, Defendants' unauthorized conversion, copying, storage, and distribution of Plaintiffs' copyrighted sound recordings is accomplished by Defendants unlawfully circumventing technological measures that YouTube has implemented to prevent the downloading or copying of content from the YouTube service.  By engaging in and facilitating the unlawful infringement of Plaintiffs' sound recordings, Defendants, through their FLVTO/2conv websites, deprive Plaintiffs (and other copyright owners) of the benefits of their investment in these valuable works and interfere with and create an unlawful substitute for legitimate streaming and download services that are authorized by, and that compensate, Plaintiffs and other copyright owners.

5.       The scale of Defendants' infringing activity is enormous.  The FLVTO/2conv websites are among the most visited sites in the world, and have tens of millions of users.  According to one independent estimate, the FLVTO website alone receives nearly 100 million visits per month and is the 322nd most visited website in the world.[1]  The 2conv website receives 23 million monthly visitors.[2]

6.       Defendants' unlawful conduct inflicts tremendous and irreparable damage on Plaintiffs' businesses and erodes authorized sales and distribution of sound recordings through

---

[1]   Similarweb.com, Site Analytics for FLVTO.biz, available at https://www.similarweb.com/website/flvto.biz#overview, last visited July 11, 2018.

[2]   *Id.,* Site Analytics for 2conv.com, available at https://www.similarweb.com/website/2conv.com, last visited July 11, 2018.

traditional and online channels.  Rampant copyright infringement of sound recordings over the internet, including the massive infringement engaged in and enabled by websites such as FLVTO/2conv, has resulted in significant harm to the music industry, including to artists who rely on royalties from the legitimate exploitation of their recorded music for their livelihood.

7.      At the same time as Defendants are depriving Plaintiffs and their recording artists of the fruits of their labor, Defendants are profiting from the operation of the FLVTO/2conv websites.  Through the promise of illicit delivery of free music, Defendants have attracted millions of users to the FLVTO/2conv websites, which in turn generates advertising revenues for Defendants.  For example, Defendants profit from third-party advertising that targets users based on the users' location (geo-targeting) or based on the users' prior internet browsing history (interest-based targeting).  Such targeted advertising maximizes the "click-through" rate of advertisements on the FLVTO/2conv websites (*i.e.*, the number of visitors to the site who then "click" on an advertisement appearing on the sites), thereby generating substantial revenues and profits to Defendants through their operation of the websites.

8.      Defendants' provision of easy-to-use services for copyright infringement has caused and is causing Plaintiffs significant and irreparable harm.  Defendants' business unlawfully profits from copyright infringement and free rides on the creative efforts and investments of others.  Plaintiffs are entitled to permanent injunctive relief to stop Defendants' ongoing violation of Plaintiffs' rights, and to damages.

## NATURE OF THE ACTION

9.      This is an action for copyright infringement under the Copyright Act of the United States, Title 17, United States Code §§ 101, *et seq.*, and for violations of the provisions of the Copyright Act that prohibit persons from circumventing technological measures designed to protect copyrighted works.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendants because Defendants have caused tortious injury by an act of copyright infringement within Virginia, and have caused tortious injury in Virginia by an act outside Virginia while regularly doing or soliciting business, engaging in a persistent course of conduct, or deriving substantial revenue from services rendered in Virginia.  This includes, without limitation, Defendants' operation and use of "front end" servers (*i.e.*, computer servers through which Defendants' U.S.-based users interact with the FLVTO/2conv websites) physically located in this District.

12.     In the alternative, the Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), for at least the following reasons:  (1) Plaintiffs' claims arise under federal copyright law; (2) FLVTO/2conv are dedicated exclusively to capturing, converting, and copying audio content that is maintained on a U.S.-based website, YouTube (www.youtube.com), which Defendants then distribute to users throughout the United States; (3) Defendants direct their electronic activity into the United States and target and attract a substantial number of users in the United States (on information and belief, FLVTO/2conv attract more users from the United States than any other country) through the FLVTO/2conv websites, which are readily accessible throughout the United States; (4) Defendants do so with the manifest intent of engaging in business or other interactions within the United States; and (5) the effects of Defendants' unlawful conduct are felt in the United States, including in this District.

13.     Venue in this District is proper under 28 U.S.C. §§ 1391(b) and 1400(a).

## THE PARTIES

### *Plaintiffs*

14.     Plaintiff UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

15.     Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Santa Monica, California.

16.     Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.

17.     Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

18.     Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

19.     Plaintiff Fueled by Ramen LLC is a Delaware limited liability company with its principal place of business in New York, New York.

20.     Plaintiff Nonesuch Records Inc. is a Delaware corporation with its principal place of business in New York, New York.

21.     Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

22.     Plaintiff Sony Music Entertainment US Latin LLC is a Delaware limited liability company with its principal place of business in Coconut Grove, Florida.

23.     Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

24.     Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

25.     Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

26.     Plaintiffs, along with their affiliated labels, are the copyright owners or owners of exclusive rights with respect to the vast majority of copyrighted sound recordings sold in the United States.   Under the Copyright Act, Plaintiffs have the exclusive rights to, *inter alia*, reproduce their copyrighted works, distribute copies or phonorecords of their copyrighted works, and perform them by means of a digital audio transmission to the public. *See* 17 U.S.C. §§ 106(1), (3), (6).  Plaintiffs are also the owners of sound recordings protected under state law.

27.     In addition to manufacturing, distributing, licensing, and selling phonorecords in the form of CDs, vinyl records, and other tangible media, Plaintiffs distribute their sound recordings in the form of digital audio files delivered or performed over the internet through authorized services.  Plaintiffs and the legitimate services with which they work provide a wide variety of lawful ways for consumers to enjoy recorded music that is distributed and performed over the internet, including digital download and/or streaming services like Apple Music, iTunes, Google Play, Amazon, Spotify, and many others.  Unlike Defendants' unauthorized and unlawful service, authorized services generally operate lawfully and pay Plaintiffs for sound recordings that they distribute or perform.

28.     Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and distribute sound recordings embodying their performances.  Plaintiffs, their employees, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of sound

recordings to the public, including the authorized online sale, streaming, and distribution described above.

### *Defendants*

29.     Defendant Tofig Kurbanov is a registrant or former registrant of the domain names for the FLVTO and 2conv websites (www.FLVTO.biz and www.2conv.com), and is the primary owner and operator of the FLVTO and 2conv websites.

30.     On information and belief, Defendant Kurbanov is a Russian citizen who lives in Russia.  On information and belief, Defendant Kurbanov personally directs and participates in, and personally receives a direct financial benefit from, the conduct alleged herein.

31.     Does 1–10 are individuals who, along with Defendant Kurbanov, own and/or operate the FLVTO/2conv websites, but whose identities and addresses are currently unknown to Plaintiffs.

32.     Defendants Kurbanov and Does 1–10 are collectively referred to herein as "Defendants."  Plaintiffs are informed and believe, and on that basis allege, that at all times relevant hereto, Defendants served as the agents of one another in infringing, or facilitating the infringement of, Plaintiffs' copyrights.

## THE YOUTUBE SERVICE

33.     YouTube (www.youtube.com) is an online video service.  It is also the largest on-demand music service in the world.  Every day, people watch and listen to hundreds of millions of hours of music videos that are available on YouTube and generate billions of "views" of those videos.  Of the 100 most-viewed YouTube videos of all time, only six are not music videos.

34.     YouTube is a streaming service—the music videos on the site can be listened to and viewed by users while they are connected to the internet, but the transmission of those videos does not result in a permanent copy of the music video being made for offline access by the user.

Music videos and the sound recordings that they contain cannot lawfully be downloaded, copied, saved, or distributed by YouTube users.

35.     In its Terms of Service, YouTube strictly limits what users may do on the site, and with content that appears on YouTube.  Among other things, YouTube's Terms of Service impose the following prohibitions:

a.  "You shall not copy, reproduce, distribute, transmit, broadcast, display, sell, license, or otherwise exploit any Content for any other purposes without the prior written consent of YouTube or the respective licensors of the Content." (YouTube Terms of Service, ¶ 5(B));

b.  "You agree not to circumvent, disable or otherwise interfere with security-related features of the [YouTube] Service or features that prevent or restrict use or copying of any Content or enforce limitations on use of the Service or the Content therein." (YouTube Terms of Service, ¶ 5(C));

c.  "You agree not to distribute in any medium any part of . . . the Content without YouTube's prior written authorization, unless YouTube makes available the means for such distribution through functionality offered by the [YouTube] Service (such as the Embeddable Player)." (YouTube Terms of Service, ¶ 4(A)); and

d.  "You agree not to access Content through any technology or means other than the video playback pages of the [YouTube] Service itself, the Embeddable Player, or other explicitly authorized means YouTube may designate." (YouTube Terms of Service, ¶ 4(C))

36.     YouTube has adopted and implemented technological measures to control access to content maintained on its site and to prevent or inhibit downloading, copying, or illicit

distribution of that content. YouTube maintains two separate URLs for any given video file: one URL, which is visible to the user, is for the webpage where the video playback occurs, and one URL, which is not visible to the user, is for the video file itself. The second URL is generated using a complex (and periodically changing) algorithm—known as a "rolling cipher"—that is intended to inhibit direct access to the underlying YouTube video files, thereby preventing or inhibiting the downloading, copying, or distribution of the video files.

## **DEFENDANTS' INFRINGING CONDUCT**

37. The FLVTO/2conv websites were designed and exist for one principal reason: to profit from the unauthorized reproduction and distribution of the popular copyrighted recorded music that appears on YouTube, a substantial portion of which is owned or controlled by Plaintiffs. Defendants accomplish this goal by unlawfully removing the audio tracks from videos that appear on the YouTube service, converting them to audio files, copying those files to the FLVTO/2conv servers, and then distributing those audio files to FLVTO/2conv users in the United States in the form of downloadable audio files.

38. Stream ripping has become a major threat to the music industry, functioning as an unlawful substitute for the purchase of recorded music and the purchase of subscriptions to authorized streaming services. Stream ripping replaces lawful, revenue-generating streaming and downloads of sound recordings over the internet and sales of phonorecords in tangible media with the mass distribution of unauthorized copies, depriving copyright owners of compensation and enriching unlawful actors at copyright owners' and artists' expense.

39. The scale of stream ripping, and the corresponding impact on music industry revenues, is enormous. Plaintiffs are informed and believe, and on that basis allege, that tens, or even hundreds, of millions of tracks are illegally copied and distributed by stream-ripping services

each month.   And FLVTO/2conv, as created and operated by Defendants, are among the chief offenders, accounting for a vast portion of the unlawful stream ripping that takes place in the world.

40.     The reason for Defendants' success is straightforward: Defendants have created stream-ripping services that, through a few simple mouse clicks on a computer, generate infringing copies of Plaintiffs' sound recordings and distribute those infringing copies for free to any person who wants them.  For example, the FLVTO home page—depicted in the figure below—promotes the simplicity and efficiency of this infringing service, touting that it "makes converting Streaming videos to mp3 online easier and faster than ever."



41.     Similarly, the 2conv homepage, depicted in the image below, boasts that it converts videos from YouTube in a single click:



42.    Defendants' infringement of Plaintiffs' copyrighted sound recordings begins with a user who wants a copy of a song, for free.  Taking FLVTO as an example, the user goes to YouTube (www.youtube.com) and searches for a video with the desired song, an example of which is seen in the figure below.



43.     The user then simply copies the webpage address (or "URL") associated with the playback of that YouTube video (which appears at the top of the YouTube screen), goes to the interface on the FLVTO home page, and pastes or enters the URL into an input box.  Once the URL is entered, the user clicks the "Convert To" button, as shown in the figure below.



44.     FLVTO then extracts the audio track from the YouTube video, converts it to an audio file, and copies the file to its servers.  Plaintiffs are informed and believe, and on that basis

allege, that, to access the YouTube video and extract and copy the audio track, FLVTO circumvents the technological measures that YouTube has implemented to control access to content maintained on its site and to prevent or inhibit illicit activities such as stream ripping. Among other things, Plaintiffs are informed and believe, and on that basis allege, that Defendants employ a means to circumvent the YouTube rolling cipher technology described above, and other technological means that YouTube employs to protect content on its site.

45.     Having circumvented the protective technological measures implemented by YouTube, and having extracted and made a copy of the audio file associated with the relevant video, FLVTO then presents the user with a "download" link.  When the user clicks that link, the FLVTO service distributes the audio file directly from Defendants' servers to the user's computer, as demonstrated in the figure below.



46.     The 2conv website functions in substantially the same simple, straightforward manner.  As with FLVTO, users of 2conv obtain and paste a video link, press a button on the website to convert the video to an audio file, and then download the converted audio file from Defendants' servers, as Defendants explain on the 2conv website's homepage, as follows:

### Enjoy music with 2conv - your online mp3 converter

Have you ever needed a fast and reliable YouTube to mp3 converter to download videos and favourite tracks? Ever tried to find an easy alternative way to get your video files for free? Ever got tired of "easy" malware-infected sites, that ask you for registration and demand fees at the last step of the process? Having trouble finding a good alternative converter for your phone? Look no further, 2Conv is exactly what you need.

We provide an online service that converts your videos to mp3 and other formats from YouTube in just a couple of clicks. All you need in order to get mp3 is to paste a URL into the paste area on our website and then our converter will do the rest! Your conversion starts immediately!

Please note that you can also get an alternative downloader app and desktop converter 2conv.com if you need more convenient way to get your favorite songs in mp3. The visitors make use of the video to MP3 converter because they can additionally convert any videos from YouTube.

Why choose 2conv YouTube converter and downloader to download your mp3 files? Our service is easy-to-use, it doesn't require any registration or fees and it's available in different languages. Check out our page in Spanish, Portuguese and Turkish.

### How to convert to mp3 files from YouTube

1. Copy YouTube video link
2. Paste the copied link into the input field
3. Choose the file format you want
4. Click Convert to get mp3 file

47.     In addition to distributing audio files to users, Defendants, through their FLTVO/2conv websites, also make and store copies of the files on their servers for further distribution to other users.

48.     Defendants have no authorization or permission to copy, store or distribute Plaintiffs' copyrighted sound recordings.  By providing these all-in-one infringement services, Defendants obtain a significant unfair advantage over competing legitimate music services, which pay for the right to distribute Plaintiffs' works, and thus deprive Plaintiffs of the revenues to which they are entitled for exploitation of their copyrighted works.

49.     By drawing from music videos on YouTube, Defendants are, in effect, using virtually the entirety of Plaintiffs' catalogs of sound recordings as the source material for their illicit operations.  Attached as **Exhibit A** is an initial list of a small sampling of the numerous and rapidly growing number of sound recordings to which Plaintiffs and/or their affiliated labels hold exclusive rights under copyright that Defendants have infringed and continue to infringe.  As set forth in **Exhibit A**, the copyrights in each of these sound recordings are registered with the United States Copyright Office.  Plaintiffs intend to amend the Complaint at an appropriate time to provide an expanded list of works infringed by Defendants.

50.     By providing and operating their services, Defendants are both directly infringing Plaintiffs' copyrights and are inducing and materially contributing to the infringement of Plaintiffs' copyrights by others and derive financial benefit from that infringement.  Defendants have the right and ability to supervise and stop the infringing activity, but they have taken no steps to stop the infringement.  Rather, Defendants designed and continue to operate their services to optimize their usefulness for infringement.

51.     Defendants have also used Plaintiffs' sound recordings to induce, entice, persuade, and cause users of FLVTO/2conv to infringe Plaintiffs' copyrights.  In their tutorials on the FLVTO website, for example, Defendants illustrate the process of converting YouTube videos into an unauthorized audio file with such well-known hit sound recordings as Michael Jackson's "Beat It," which is owned by Plaintiff Sony Music Entertainment, Justin Bieber's "What Do You Mean?" which is owned by Plaintiff UMG Recordings, Inc., and Madonna's "Vogue," which is owned by Plaintiff Warner Bros. Records Inc.

52.     The motivation behind Defendants' illegal conduct is clear: Defendants are receiving a direct financial benefit from the copyright infringement occurring on their services.

Defendants have received substantial ill-gotten gains, including by running revenue-generating advertisements on the sites while committing massive copyright infringement.

## COUNT ONE

### (Direct Copyright Infringement)

53.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

54.    Defendants, without authorization or consent from Plaintiffs, reproduce and distribute into the United States unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in **Exhibit A** hereto.   Such reproduction and distribution constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. §§ 106(1) and (3).

55.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

56.    Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

57.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

58.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

59.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to an injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT TWO

### (Contributory Copyright Infringement)

60.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 59 as if fully set forth herein.

61.     As detailed above, users of the FLVTO/2conv websites are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted sound recordings.

62.     Defendants are liable as contributory copyright infringers for the infringing acts of users of the FLVTO/2conv websites.  Defendants have actual and constructive knowledge of the infringing activity of FLVTO/2conv's users.  Defendants knowingly cause and otherwise materially contribute to these unauthorized reproductions and distributions of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in **Exhibit A** hereto.

63.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

64.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

65.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

66.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

67.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to an injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT THREE

### (Vicarious Copyright Infringement)

68.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

69.     As detailed above, users of the FLVTO/2conv websites are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted sound recordings.

70.     Defendants are vicariously liable for the infringing acts of users of the FLVTO/2conv websites.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of FLVTO/2conv, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights.  Defendants are therefore vicariously liable for the infringement of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in **Exhibit A** hereto.

71.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

72.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of, and indifferent to, the rights of Plaintiffs.

73.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 28 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

74.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

75.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to an injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT FOUR

### (Inducement of Copyright Infringement)

76.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

77.     As detailed above, users of the FLVTO/2conv websites are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute their copyrighted sound recordings.

78.     Defendants are liable under the Copyright Act for inducing the infringing acts of the users of FLVTO/2conv.  Defendants operate the FLVTO/2conv websites with the object of promoting their use to infringe Plaintiffs' copyrights.  In addition, Defendants have failed to take any meaningful action to prevent the widespread and rapidly growing infringement by their users and in fact have taken affirmative steps to encourage, promote, and assist infringement by their users.

79.     Defendants knowingly and intentionally induce, entice, persuade, and cause users of the FLVTO/2conv websites to infringe Plaintiffs' copyrights in their sound recordings, including but not limited to those sound recordings listed in **Exhibit A** hereto, in violation of Plaintiffs' copyrights.

80.     Through these activities, among others, Defendants knowingly and intentionally take steps that are substantially certain to result in direct infringement of Plaintiffs' sound recordings, including but not limited to those sound recordings listed in **Exhibit A** hereto, in violation of Plaintiffs' copyrights.

81.     Despite their knowledge that infringing material is made available to users by means of FLVTO/2conv, Defendants have failed to take reasonable steps to minimize the infringing capabilities of the website.

82.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

83.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

84.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

85.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

86.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to an injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT FIVE

### (Circumvention of Technological Measures)

87.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 86 as if fully set forth herein.

88.     On information and belief, the FLVTO/2conv services circumvent technological measures that YouTube has implemented to effectively control access to and prevent copying of works protected under the Copyright Act, in violation of 17 U.S.C. § 1201(a).  More specifically, Defendants' services descramble a scrambled work, decrypts an encrypted work, or otherwise avoids, bypasses, removes, deactivates, or impairs a technological measure without the authority of Plaintiffs or YouTube.

89.     Defendants own, operate, provide, and offer to the public stream-ripping services, FLVTO and 2conv, which are primarily designed for the purpose of circumventing protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights

of Plaintiffs under the Copyright Act in sound recordings including but not limited to those listed in **Exhibit A** hereto, in violation of 17 U.S.C. 18 § 1201(b)(1)(A).

90.     Defendants own, operate, provide, and offer to the public stream-ripping services, FLVTO and 2conv, which have only a limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights of Plaintiffs under the Copyright Act in sound recordings including but not limited to those listed in **Exhibit A** hereto, in violation of 17 U.S.C. § 1201(b)(1)(B).

91.     Defendants own, operate, provide, and offer to the public stream-ripping services, FLVTO and 2conv, which are marketed by Defendants, and with Defendants' knowledge, for use in circumventing protection afforded by a technological measure, implemented by YouTube, that effectively protects the rights of Plaintiffs under the Copyright Act in sound recordings including but not limited to those listed in **Exhibit A** hereto, in violation of 17 U.S.C. § 1201(b)(1)(C).

92.     Plaintiffs have been injured by Defendants' violations of 17 U.S.C. § 1201, including because Defendants' violations have permitted or facilitated the infringement of Plaintiffs' copyrighted works as described more fully herein.

93.     Defendants' conduct as described herein was and is willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

94.     As a direct and proximate result of Defendants' violations of 17 U.S.C. § 1201, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of circumvention.  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 1203(c)(2), Plaintiffs are entitled to their actual damages, including Defendants' profits from circumvention, in amounts to be proven at trial.

95.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5).

96.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiffs are entitled to an injunction prohibiting Defendants' ongoing violation of the anti-circumvention provisions of 17 U.S.C. § 1201.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a) for a declaration that Defendants, both directly and secondarily, willfully infringe Plaintiffs' copyrights;

(b) for such equitable relief under Titles 17 and 28 as is necessary to prevent or restrain infringement of Plaintiffs' copyrights and circumvention of YouTube's technological measures that effectively control access to Plaintiffs' copyrighted works, including:

(i)     an injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, (a) cease infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created; (b) cease circumventing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the circumvention of, any technological measure maintained by YouTube that effectively controls access to Plaintiffs' copyrighted works; and (c) surrender, and cease to use, the domain names of

www.FLVTO.biz and www.2conv.com, and any variant thereof owned or controlled by Defendants; and

(ii)     entry of an Order, pursuant to Sections 502 and 1203 of the Copyright Act (17 U.S.C. §§ 502, 1203), 28 U.S.C. § 1651(a), and this Court's inherent equitable powers, enjoining Defendants and all third parties with notice of the Order from supporting or facilitating access to any or all domain names, URLs, and websites (including, without limitation, www.FLVTO.biz and www.2conv.com) through which Defendants infringe Plaintiffs' copyrights;

(c) for statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 per infringed work, arising from Defendants' violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

(d) for statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of circumvention or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 1203(c)(2), Plaintiffs' actual damages, including Defendants' profits from circumvention, in amounts to be proven at trial.

(e) for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(f) for prejudgment and post-judgment interest; and

(g) for such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Local Rule 38 and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated: August 3, 2018

By:   /s/ Michael K. Lowman

Michael K. Lowman, VA Bar #41663
Kenneth L. Doroshow (*pro hac vice* forthcoming)
Jonathan A. Langlinais (*pro hac vice* forthcoming)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6027
Facsimile: (202) 639-6066

Alison I. Stein (*pro hac vice* forthcoming)
JENNER & BLOCK LLP
919 Third Avenue
Floor 38
New York, NY 10022
Telephone: (212) 891-1622
Facsimile: (212) 891-1699

***Attorneys for Plaintiffs***