**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria, Virginia

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, WARNER BROS. RECORDS INC., ATLANTIC RECORDING CORPORATION, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN, LLC, NONESUCH RECORDS INC., SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, ARISTA RECORDS LLC, LAFACE RECORDS LLC, and ZOMBA RECORDING LLC, | |
| Plaintiffs, | **CASE NO. 1:18-CV-00957-CMH-TCB** |
| v. | |
| TOFIG KURBANOV d/b/a FLVTO.BIZ and 2CONV.COM; and DOES 1–10, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL STANDARD............................................................................................................5

ARGUMENT .........................................................................................................................6

I.   This Court Has Specific Jurisdiction Over Defendant..............................................6

    A.   Personal jurisdiction is proper under Rule 4(k)(1) and the Virginia long-arm statute. ..............................................................................................................6

        1.   Defendant has purposefully availed himself of the privilege of conducting his online piracy business in Virginia................................................................7

        2.   Plaintiffs' claims arise directly out of Defendant's contacts with Virginia.................13

        3.   Exercising personal jurisdiction is constitutionally reasonable. ...................................14

    B.   Alternatively, this Court has specific jurisdiction under Rule 4(k)(2).............................16

        1.   Plaintiffs' claims arise under federal law....................................................................17

        2.   Defendant is not subject to jurisdiction in any state's courts of general jurisdiction. ................................................................................................................17

        3.   Exercising jurisdiction under Rule 4(k)(2) comports with due process. ....................18

II.   Transfer Of Venue Is Not Warranted.......................................................................23

    A.   Plaintiffs' choice of forum is entitled to deference in this case.......................................24

    B.   Transferring to the Central District of California would be less convenient for all parties..............................................................................................................25

    C.   Access to sources of proof does not strongly favor transfer............................................26

    D.   Defendant fails to show that the convenience of the witnesses strongly favors transfer.............................................................................................................26

    E.   The Eastern District of Virginia offers a fair and effective forum for litigating this dispute.............................................................................................................27

CONCLUSION....................................................................................................................29

i

# TABLE OF AUTHORITIES

CASES

*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F. Supp. 2d 340
(E.D. Va. 2001) ......................................................................................................... 10

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ............... 7, 8, 11

*America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449 (E.D. Va. 2003) ...................................... 20

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d
208 (4th Cir. 2002) ...................................................................................................... 18

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) ........................................................................ 13

*Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1:11-cv-935, 2012 WL
1831536 (E.D. Va. May 18, 2012) ................................................................................ 9, 22

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................ 7

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390
(4th Cir. 2003) .......................................................................................................... 8, 11

*CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285
(4th Cir. 2009) ............................................................................................... 6, 7, 14, 17, 18

*Christian Science Board of Directors of First Church of Christ, Scientist v. Nolan*,
259 F.3d 209 (4th Cir. 2001) ........................................................................................ 15

*Citigroup Inc. v. Malik*, No. 1:07-cv-1168, 2009 WL 874497 (E.D. Va. Mar. 24,
2009) ........................................................................................................................... 20

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) ......................................................................... 5

*Crunchyroll, Inc. v. Pledge*, Case No: No. C 11-2334, 2014 WL 1347492 (N.D.
Cal. 2014) .................................................................................................................... 15

*English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990) ....................................................... 6, 21

*ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323 (D.S.C. 1999) ................................... 13

*Fraserside IP L.L.C. v. Hammy Media, Ltd.*, No. C11-3025, 2012 WL 124378
(N.D. Iowa Jan. 17, 2012) ........................................................................................... 13

*Gibbs v. Plan Green, LLC*, --- F. Supp. 3d ---, 2018 WL 3614969 (E.D. Va. July
27, 2018) ..................................................................................................................... 22

*Graduate Management Council v. Raju*, 241 F. Supp. 2d 589 (E.D. Va. 2003) ......... 16, 18, 20, 22

*Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660 (E.D. Va. 2010) ............................................................................................................23, 24

*Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120 (S.D. Fla. 2006)..........................13

*Intercarrier Commcations LLC v. WhatsApp Inc.*, No. 3:12-cv-776, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013)..........................................................................12

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................7

*Liberty Media Holdings, LLC v. Letyagin*, No. 11-62107, 2011 WL 13217328 (S.D. Fla. Dec. 14, 2011) ..........................................................................................13

*Liberty Mutual Fire Insurance Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435 (E.D. Va. 2015)................................................................................................6

*Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685 (E.D. Va. 2007) ..................................................25

*Orbital Australia Pty Ltd. v. Daimler AG*, No. 3:14VC808, 2015 WL 4042178 (E.D. Va. July 1, 2015) ..........................................................................................23

*Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531 (M.D.N.C. 2015) ........................................................................................................................13

*Plixer International, Inc. v. Scrutinizer GmbH*, --- F.3d ---, 2018 WL 4357137 (1st Cir. Sept. 13, 2018)....................................................................................20, 21

*Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708 (E.D. Va. 2005) ................................................................................................23, 24, 26, 27, 28

*Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011) ..................................................15

*Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508 (W.D. Va. 2007) ..................16, 17

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007)........................................................................................................23

*Spanski Enterprises, Inc. v. Telewiszja Polska, S.A.*, 883 F.3d 904 (D.C. Cir. 2018) ........................................................................................................................15

*Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012) ...........................................................................14, 15, 24, 28

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)................................................13

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198 (S.D.N.Y. 2002) ............................................................................................15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)................................................7

*Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599 (E.D. Va. 2016) ...............................................12

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ..................................................................................................... 7-8, 10, 22

STATUTES

28 U.S.C. § 1404(a) ...................................................................................................23

OTHER AUTHORITIES

Fed. R. Civ. P. 4(k)(1)(A) ...........................................................................................6

Fed. R. Civ. P. 4(k)(2)................................................................................................17

Fed. R. Civ. P. 4 advisory committee's note ............................................................16

## <u>INTRODUCTION</u>

Defendant Tofig Kurbanov operates two of the world's most notorious illegal music websites, FLVTO.biz and 2conv.com, which together have millions of users from the United States, including hundreds of thousands of users in Virginia. The core of Defendant's illicit business consists of the illegal extraction, reproduction, and distribution of audio tracks from music videos available on YouTube, a prominent United States business with offices throughout the country, including in Virginia. And yet, despite these and myriad other contacts with the United States—and with Virginia, in particular—Defendant insists that neither Virginia, nor any other state in the United States, may exercise personal jurisdiction over him in this case. Def.'s Mem. 22. As explained in greater detail below, Defendant's position is completely baseless.

The uncontroverted facts and the admissions contained in Defendant's motion are more than sufficient to give this Court personal jurisdiction over Defendant: (1) in the past year alone, Defendant's websites had over 542,000 users from Virginia, who visited the sites more than 1.3 million times, and over 31 million users from the United States as a whole, who visited the sites more than 96 million times; (2) Defendant collects location data and other personal information from his websites' users and knows exactly which states they come from; (3) Defendant's websites are highly interactive and encourage users to make and download illegal copies of copyrighted sound recordings directly from Defendant's servers—which until only a few months ago included servers in Virginia—to their own computers; (4) Defendant enters into a contract with each and every user of the websites—including those in Virginia—in which the user agrees to be subject to the jurisdiction of his or her local courts; (5) Defendant regularly does business with several American vendors whose services are essential to the websites' operation, including U.S.-based web-hosting services, domain-name registrars, and advertising firms; (6) the core of Defendant's business is to extract the audio portions of videos provided by a prominent U.S. company

1

(YouTube) with offices throughout the United States, including in Virginia; and (7) Defendant is keenly aware that he and his websites traffic in illegal copies of popular sound recordings owned by U.S. record companies and protected under U.S. copyright law.

These facts plainly establish a *prima facie* case for jurisdiction throughout the United States, including in Virginia.  For all of these reasons, Defendant's motion to dismiss or, in the alternative, to transfer to the Central District of California should be denied.

## **FACTUAL BACKGROUND**

Plaintiffs are record companies that create, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in the United States.  Defendant Kurbanov, a Russian citizen, operates the websites FLVTO.biz and 2conv.com ("FLVTO" and "2conv" or, together, the "Websites"), two of the most popular "stream-ripping" services in the world.  Def.'s Mem. 2; Declaration of Tofig Kurbanov, dated Oct. 1, 2018 ("Kurbanov Decl.") ¶ 4; Compl. ¶¶ 1, 5.  Stream-ripping involves the extraction of the audio portions of videos that are streamed over the internet.  Kurbanov Decl. ¶ 5.  Stream-ripping has rapidly emerged as the most rampant and pernicious form of internet music piracy, functioning as an unlawful substitute for the purchase of recorded music and of subscriptions to authorized streaming services.  Compl. ¶ 2.  FLVTO and 2conv attract millions of users, including hundreds of thousands of users from Virginia, and they exist for the sole purpose of engaging in and enabling the unauthorized extraction, copying, and distribution of sound recordings—including, especially, Plaintiffs' highly-popular sound recordings—that are contained in music videos.  *Id.* ¶ 1; Kurbanov Decl., Exs. 2-3.

The Websites are highly interactive:  Once users have identified a song they want in a YouTube video,[1] they enter the web address (or "URL") for that video into a box on the Websites.  Compl. ¶¶ 42-43.  The Websites then extract the audio track from the YouTube video, convert the audio track into an audio file, and copy the audio file to the Websites' servers, which the user may then download directly from Defendant's servers to his or her own computer.  *Id. ¶¶* 44-46.  This process is expressly prohibited by YouTube's terms of service, *id.* ¶¶ 35-36, and it takes place entirely without Plaintiffs' permission.

According to Defendant's own data, 9.92% of FLVTO users came from the United States between October 2017 and September 2018—totaling 26.3 million users.  Kurbanov Decl. ¶ 39, Ex. 3.  Of these users, 448,426 came from Virginia and visited FLVTO 1.17 million times over that same period.  *Id.*, Ex. 3.  Publicly available estimates indicate that FLVTO attracted approximately 118 million visits last month (and approximately 127 million visits in August 2018), and 10.18% of these visits came from the United States.  Declaration of Kenneth L. Doroshow, dated Oct. 13, 2018 ("Doroshow Decl.") ¶ 2, Ex. A.

According to Defendant's own data, 5.87% of 2conv users came from the United States between October 2017 and September 2018—totaling 5.37 million users.  Kurbanov Decl. ¶ 36, Ex. 2.  Of these users, 94,342 came from Virginia and visited 2conv 187,486 times over that same period.  *Id.*, Ex. 2.  Publicly available estimates indicate that 2conv attracted approximately 38.5 million visits last month and 43 million visits in August 2018.  Doroshow Decl. ¶ 3, Ex. B.

---

[1] The Websites are designed to extract and copy audio tracks primarily from videos found on YouTube, a website based in the United States.  Compl. ¶¶ 1, 33; Declaration of Matthew Shayefar ("Shayefar Decl.") ¶ 23.  Indeed, the Websites actively encourage users to copy audio tracks from YouTube music videos and refer to and promote their service as "YouTube converters" or "YouTube Downloaders."  *Id.* ¶¶ 40-41.  Plaintiffs, all of which are American record companies, own a substantial portion of the copyrighted recorded music that appears on YouTube.  *Id.* ¶ 37.

Defendant is well aware of where his Websites' users come from, and he exploits that information for profit.  Indeed, Defendant attested to the state-by-state locations of the Websites' users in his declaration.  *See* Kurbanov Decl. ¶¶ 37, 40, Exs. 2-3.  Defendant collects and maintains such granular location data so that, among other things, he can provide it to advertising brokers for purposes of placing geo-targeted advertising on the Websites.  Def's Mem. at 14-15; Doroshow Decl., Exs. E-F.  Defendant admits that "[v]irtually all the revenue derived from the Websites comes from advertisements," Kurbanov Decl. ¶ 23, and that the advertisers on the Websites may be targeting specific ads to users in specific locations, including Virginia.  *Id.* ¶¶ 28-29.

The Websites enter into a contractual relationship with each and every user, requiring users to agree that, "[b]y visiting, accessing, using and/or joining . . . the Website, you express your understanding and acceptance of these Terms [of Use]."  Doroshow Decl., Exs. C-D; *see also* Compl. ¶¶ 40-41.  The Websites explain that the Terms of Use "constitute a contractual agreement between you [the user] and us" and give Defendant "the right to take appropriate action against any user . . . including civil, criminal and injunctive redress," against them.  Doroshow Decl., Exs. C-D.  Users further agree that, "[f]or any claim brought by us against you, you agree to submit and consent to personal jurisdiction in and the venue of the courts in the Russian Federation *and anywhere else you can be found*."  *Id.* (emphasis added).  In other words, Defendant has the right to enforce these contracts with Virginia users (more than 542,000 in the past year alone) in Virginia courts.

Moreover, Defendant registered the domain names for FLVTO and 2conv with GoDaddy.com, a United States domain-name registrar, and selected top-level domains for the Websites that are administered by VeriSign, Inc. (for the ".com" domain) and Neustar, Inc. (for the ".biz" domain), both of which are headquartered in this District.  Declaration of Mark

McDevitt, dated Aug. 20, 2018, Dkt. 12-2 ("First McDevitt Decl.") ¶ 4, Exs. A-B; Second Declaration of Mark McDevitt, dated Oct. 12, 2018 ("Second McDevitt Decl.") ¶¶ 3-5.  Until recently, the Websites contracted with Amazon Web Services (an American company) to host the Websites on front-end servers located in Virginia.[2]   Kurbanov Decl. ¶¶ 42-44; Compl. ¶ 11; Second McDevitt Decl. ¶ 2, Exs. A-B.  According to publicly available information, Defendant uses at least two American advertising firms, MGID and Advertise.com, to sell space on the Websites for geo-targeted advertising.  Doroshow Decl., Exs. A-B, H-I.  And Defendant is well aware that the Websites traffic in unauthorized copies of sound recordings protected under U.S. copyright law.  For example, although the Websites claim that they are "not subject to United States law," they claim to "voluntarily comply with the Digital Millennium Copyright Act [DMCA]," citing expressly to "Title 17, Section 512(c) of the United States Code."  *Id.*, Exs. C-D.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  However, a plaintiff need only make a *prima facie* showing of personal jurisdiction.  *See id.*  The *prima facie* standard is a "tolerant" one, under which courts construe the allegations in the complaint and the available evidence in the light most favorable to the plaintiff.  *See id.* at 676-77.  This Court also draws "all reasonable inferences arising from the proof, and resolve[s] all factual disputes, in the plaintiff's favor."  *Liberty Mut.*

---

[2] In fact, for the past three years, the Websites were hosted on servers in Ashburn, Virginia for extended periods of time.  Second McDevitt Decl. ¶ 2.

*Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 438 (E.D. Va. 2015) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)).

## ARGUMENT

### I.     This Court Has Specific Jurisdiction Over Defendant.

Based on the uncontroverted facts and Defendant's own admissions in his Motion, Plaintiffs have established a *prima facie* case for personal jurisdiction over Defendant under Rules 4(k)(1) and 4(k)(2) of the Federal Rules of Civil Procedure.  Defendant has purposefully availed himself of the privilege of conducting his music piracy business in the United States in general, and in Virginia in particular.  Because Plaintiffs' claims arise directly out of Defendant's contacts with the United States and Virginia, and because exercising jurisdiction would be constitutionally reasonable, a *prima facie* case for personal jurisdiction is easily made here.

### A.     Personal jurisdiction is proper under Rule 4(k)(1) and the Virginia long-arm statute.

Rule 4(k)(1)(A) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  When applying Rule 4(k)(1)(A), courts consider whether the state's long-arm statute authorizes the exercise of jurisdiction and whether that authorization comports with the requirements of due process.  *See, e.g.*, *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009).  Virginia's long-arm statute "extend[s] personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Id.*  Therefore, if exercising jurisdiction over Defendant in Virginia comports with the requirements of due process, then it necessarily satisfies the requirements of Virginia's long-arm statute.  *See id.*; *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).

Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Under this framework, a court may exercise specific jurisdiction over a defendant if (1) the defendant has purposefully availed himself of the privilege of conducting activities in Virginia, (2) the plaintiff's claims arise out of the defendant's contacts with Virginia, and (3) exercising jurisdiction would be constitutionally reasonable.  *See, e.g.*, *CFA Inst.*, 551 F.3d at 294.  Based on the uncontroverted facts already in the record, all three prongs are satisfied.

### 1. Defendant has purposefully availed himself of the privilege of conducting his online piracy business in Virginia.

A defendant purposefully avails himself of the privilege of conducting business in a forum when he deliberately engages in significant activities within the forum or "has created continuing obligations between himself and residents of the forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (internal quotation marks omitted).  The touchstone of the purposeful-availment inquiry is whether a defendant has "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign," *CFA Inst.*, 551 F.3d at 293 (quoting *Burger King*, 471 U.S. at 472), or whether his conduct is such that "he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In the online context, a state may exercise jurisdiction over a foreign defendant when the defendant (1) directs electronic activity into the State, (2) with the manifest intent of engaging in business or other activities within the State, and (3) that activity gives rise to the plaintiff's claims. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).  To decide whether a defendant has purposefully directed electronic activity into a state, the Fourth Circuit has adopted the framework set out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.

7

Supp. 1119 (W.D. Pa. 1997).  *See ALS Scan*, 293 F.3d at 713-14.  Under the *Zippo* framework, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).

The *Zippo* framework sorts websites into three categories: interactive, semi-interactive, and passive.  *See id.* at 713-14.  A website is "interactive" if "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."  *Id.*  If a website is interactive, "personal jurisdiction is proper."  *See id.* at 714.  On the other hand, a website is "passive" if it "does little more than make information available to those who are interested."  *See id.*  Passive websites are "not grounds for the exercise [of] personal jurisdiction."  *Id.*  In between are "semi-interactive" websites "through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 399 (4th Cir. 2003).  Whether jurisdiction is permissible over a semi-interactive website depends on "the level of interactivity and commercial nature of the exchange of information that occurs."  *ALS Scan*, 293 F.3d at 714.

Defendant's Websites are highly interactive under the *Zippo* framework, and Defendant has purposefully availed himself of the privilege of conducting activities in Virginia.  Among other things, Defendant "entered into contracts with residents of Virginia that involve the knowing and repeated transmission of computer files over the internet."  *ALS Scan*, 293 F.3d at 713.  Indeed, the purpose of the Websites is to enable users to download copies of sound recordings over the

internet from Defendant's servers.  Compl. ¶ 1.[3]  Defendant acknowledges that over 542,000 Virginia residents used his Websites more than 1.3 million times this past year alone, Kurbanov Decl., Exs. 2-3, and Defendant required those Virginia residents to enter into binding contracts that give Defendant authority to pursue legal action against those users in Virginia courts. Doroshow Decl., Exs. C-D; Compl. ¶¶ 40-41.  The Websites are also commercial enterprises. Defendant admits that he profits from the sale of advertisements on his Websites, and it is evident that he provides users' location data to advertising brokers so they can engage in targeted advertising.  Kurbanov Decl. ¶ 23; Doroshow Decl., Exs. E-F.  Taken together, these facts make clear that the Websites are easily the type of "interactive" websites that justify the exercise of jurisdiction.

In fact, this Court has found websites having far less contact with Virginia residents to be "interactive" and subject to the Court's jurisdiction.  For example, in *Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1:11-cv-935, 2012 WL 1831536, at *2 (E.D. Va. May 18, 2012), only sixteen of a foreign website's registered users were in Virginia, whereas the website had more than 1.8 million registered users worldwide, meaning that fewer than .001% of registered users were located in Virginia.  Nevertheless, this Court held that Virginia had personal jurisdiction over the website's operators because they required users to agree to a Terms of Use contract and stored the content that users purchased on the website's servers.  *Id.* at *6.  Here, Defendant's Websites have nearly 34,000 times more Virginia-based users than the website at issue in *Bright Imperial*, and Defendant knows exactly which states his users come from.  *See* Kurbanov Decl., Exs. 2-3.

---

[3] Defendant takes issue with Plaintiffs' mention of the Websites' use of front-end servers in Virginia.  *See* Def.'s Mem. 12-14; Compl. ¶ 11.  To be clear, Plaintiffs have never argued that server location is itself a sufficient basis for jurisdiction but rather noted the Virginia server location as one relevant contact to the forum.

Moreover, as in *Bright Imperial*, the Websites require users to enter into Terms of Use contracts— which (unlike the relevant terms and conditions in *Bright Imperial*) are available in English—and the Websites store the pirated copies that users request on Defendant's servers.  Doroshow Decl., Exs. C-D; Compl. ¶¶ 37, 40-41, 47.

Similarly, in *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F. Supp. 2d 340, 349-50 (E.D. Va. 2001), this Court found that an Italian gambling website had purposefully availed itself of the privilege of conducting business in Virginia because it was on notice that five of its 750 members (0.6%) had billing addresses there.  As in *Bright Imperial*—and as is the case here, where the Websites have over 100,000 times more users in Virginia, *see* Kurbanov Decl., Exs. 2-3—the defendant's gambling website was highly interactive and "necessarily required [the defendant] to enter into contracts with" its users.  *Alitalia-Linee*, 128 F. Supp. 2d at 349-50.

Notably, *Zippo* itself supports finding purposeful availment in this case.  In *Zippo*, the Court found purposeful availment by a news website where only 2% of its roughly 140,000 subscribers were residents of the forum state (Pennsylvania), the website had contracts with seven internet access providers in the forum, and where "[t]he intended object of these transactions [with subscribers] has been the downloading of electronic messages that form the basis of this suit . . . ." *Zippo*, 952 F. Supp. at 1121, 1126.  Moreover, the court found that the defendant "freely chose" to do business with forum residents, "presumably in order to profit from those transactions."  *Id.* at 1126.  The court held that the defendant's website was interactive and that jurisdiction was proper, noting that, "[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents."  *Id.* at 1126-27.

The same is true of the Websites at issue here.  Defendant knows that the Websites had more than 542,000 users in Virginia last year alone.  Kurbanov Decl., Exs. 2-3.  And Defendant entered into contracts with these users knowing that those agreements would lead to the transmission of audio files into Virginia (more than 1.3 million times in the past year).  *See* Doroshow Decl., Exs. C-D; Kurbanov Decl., Exs. 2-3.  In short, Defendant cannot reasonably claim to be surprised that he has been haled into court here.  As in *Zippo*, if Defendant wanted to avoid suit in Virginia, he could have chosen not to provide his Website's services to users in Virginia.[4]

Defendant cites a handful of cases in which courts found that websites were insufficiently interactive to warrant jurisdiction, but those cases are all distinguishable.  Def.'s Mem. 15-19.  In *ALS Scan*, for example, the Fourth Circuit held that Maryland could not exercise jurisdiction over a Georgia-based internet service provider that merely offered bandwidth to a website that allegedly posted infringing photographs, finding that the internet service provider "did not select or knowingly transmit infringing photographs specifically to Maryland with the intent of engaging in business or any other transaction in Maryland."  *ALS Scan*, 293 F.3d at 709, 714-15.  Unlike the internet service provider in *ALS*, however, the Websites are not passively facilitating publication online, but are instead actively responding to Virginia-based users' requests for pirated copies of

---

[4] Although "semi-interactive" websites can also be subject to jurisdiction in some circumstances, the Websites at issue here are not merely "semi-interactive," a category reserved for websites "through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer."  *Carefirst*, 334 F.3d at 399.  Virginia users have visited the Websites over 1.3 million times in the past year alone.  *See* Kurbanov Decl., Exs. 2-3.  This is a "high volume" by any standard.  *Compare with Carefirst*, 334 F.3d at 400-01 (holding that the defendant's website was semi-interactive where "the only concrete evidence of online exchanges [with] Maryland residents was the single donation initiated by [plaintiff's] counsel").

sound recordings and actively transmitting those files to Virginia users' computers pursuant to Terms of Use contracts, with knowledge of the users' location.  Compl. ¶¶ 37-47; Doroshow Decl., Exs. C-D.

In *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599 (E.D. Va. 2016), which Defendant also cites, the Court found that Virginia could not exercise jurisdiction over the defendant because the defendant's app was available for download only on third-party sites—not on the defendant's website—and the record showed that the defendant did "not know how many app users are in Virginia, as defendant does not count or keep track of the number of app-users in Virginia or in any other specific location."  *Id.* at 604.  In contrast, Defendant here provides his stream-ripping services through his own Websites—not on third-party websites—and his Websites make and deliver pirated copies of sound recordings to users on demand.  Compl. ¶¶ 37-47.  Furthermore, Defendant acknowledges that he keeps track of the number of Virginia users, as well as other personal information about them, as part of his ongoing operation of the Websites.  Kurbanov Decl. ¶¶ 34-41, Exs. 2-3; Doroshow Decl., Exs. E-F.

Similarly, in *Intercarrier Communications LLC v. WhatsApp Inc.*, No. 3:12-cv-776, 2013 WL 5230631, at *3-4 (E.D. Va. Sept. 13, 2013), the Court found jurisdiction lacking over the defendant in a patent infringement case where the defendant made its allegedly infringing app available online.  Although it was possible to download the app from the defendant's website, the app was distributed primarily through third-party sites, and the defendant collected information about users' locations only if the users chose to share it and, even then, "such information [was] held only so long as necessary to deliver the message."  *Id.* at *1.  The plaintiff's theory of purposeful availment consisted of nothing more than the fact that users in Virginia unilaterally downloaded the WhatsApp messenger app and then used the app while in Virginia.  *Id.* at *4.

12

Here, by contrast, Defendant is actively engaged in massive amounts of copyright infringement in Virginia, where Defendant knows there are hundreds of thousands of users of the Websites.  And Defendant is performing the extraction of audio files from the YouTube videos and then transmitting infringing audio files directly to users in Virginia from his Websites' own servers.[5]

### 2.   Plaintiffs' claims arise directly out of Defendant's contacts with Virginia.

Defendant argues that Plaintiffs' claims do not arise from his Virginia contacts because there are no such contacts.  Def.'s Mem. 20.  As explained above, this assertion is demonstrably false.  All of the forum contacts Plaintiffs describe above are either acts of copyright infringement themselves or acts intended to facilitate Defendant's infringement throughout the United States, including in Virginia.  *See supra* 3-5.  Accordingly, Plaintiffs' claims under the Copyright Act arise directly out of those contacts.

---

[5] Defendant cites several cases involving far fewer forum-based users, or a degree of interactivity that is far less than that of the Websites.  *See Pathfinder Software, LLC v. Core Cashless, LLC,* 127 F. Supp. 3d 531, 542 (M.D.N.C. 2015) (finding defendant's website only semi-interactive because it did not allow defendant to enter into contracts with forum residents, visitors could not make purchases through the website, and the website "led to no contracts, sales or business" for defendant); *Fraserside IP L.L.C. v. Hammy Media, Ltd.*, No. C11-3025, 2012 WL 124378, at *7-9 (N.D. Iowa Jan. 17, 2012) (finding no jurisdiction over website in Iowa where plaintiff "has presented no evidence of any Iowa resident purchasing a membership . . . *or even visiting the website*" (emphasis added)); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (20 users); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 (3d Cir. 2003) (two sales that defendant "scarcely recognized . . . had been consummated"); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1124-26 (S.D. Fla. 2006) (patent infringement case in which defendant allegedly published two books written by Florida residents); *Liberty Media Holdings, LLC v. Letyagin*, No. 11-62107, 2011 WL 13217328, at *3 (S.D. Fla. Dec. 14, 2011) (holding only that "merely registering a domain name with a company in Florida is insufficient"); *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) (finding "no evidence showing that any South Carolina resident has visited [defendant's] website").

### 3.   Exercising personal jurisdiction is constitutionally reasonable.

The final inquiry in the due process analysis—whether exercising jurisdiction is constitutionally reasonable—is meant to ensure that litigation in the forum is not "so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst.*, 551 F.3d at 296 (internal quotation marks omitted).  When applying that standard, courts consider (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiff's interest in obtaining relief.  *See id.*

Defendant offers no reason why litigating this dispute in Virginia would be constitutionally unreasonable.  With respect to burden, Defendant bases his arguments almost entirely on his location in Russia.  Def.'s Mem. 20.  However, foreign defendants are "not shielded from civil liability in Virginia" because they are located in another country.  *CFA Inst.*, 551 F.3d at 296; *see also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 304-05 (4th Cir. 2012).  Like the foreign defendants in *CFA Institute* and *Tire Engineering*, Defendant has already secured counsel to represent his interests in Virginia and his "litigation burden is thus no more substantial than that encountered by other entities that choose to transact business in Virginia."  *CFA Inst.*, 551 F.3d at 296; *Tire Eng'g*, 682 F.3d at 304-05.  Because Defendant transacted his illicit business with over 542,000 Virginia users more than 1.3 million times this past year alone, Kurbanov Decl., Exs. 2-3, it was reasonably foreseeable that he would be haled into court here.  *See CFA Inst.,* 551 F.3d at 296 (holding that the "inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there.").

With respect to the interest of the forum, the Fourth Circuit has held that Virginia has an interest in not allowing the Commonwealth to become a safe haven for copyright infringement.  *See Tire Eng'g*, 682 F.3d at 305.  Indeed, in *Tire Engineering*, the Fourth Circuit held that it was

constitutionally reasonable to exercise jurisdiction in a copyright dispute between an out-of-state

plaintiff and corporations from the United Arab Emirates. *Id.*; *cf. Christian Sci. Bd. of Dirs. of

*First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 218 (4th Cir. 2001) (noting North

Carolina's interest in deterring trademark infringement in a case brought by an out-of-state

plaintiff).[6]

Finally, Plaintiffs have a substantial interest in obtaining relief in Virginia. Plaintiffs are

suffering massive amounts of harm in the Commonwealth, *see* Compl. ¶¶ 38-39, which more than

suffices to give them a substantial interest in holding Defendant accountable in this forum. *See*

*Tire Eng'g*, 682 F.3d at 305 (holding that an out-of-state plaintiff had a substantial interest in

protecting its copyrights in Virginia). Moreover, while Plaintiffs are scattered across the country,

their trade association, the Recording Industry Association of America ("RIAA"), is located

---

[6] Defendant suggests that all of his alleged violations of the Copyright Act are extraterritorial, Def.'s Mem. 20-21, but that is absurd. The Websites transmit infringing material directly from Defendant's own servers to the computers of hundreds of thousands of users in Virginia. Compl. ¶¶ 37-47; Kurbanov Decl., Exs. 2-3. This activity constitutes copyright infringement, to which the U.S. Copyright Act plainly applies. *See, e.g.*, *Spanski Enters., Inc. v. Telewiszja Polska, S.A.*, 883 F.3d 904, 910-16 (D.C. Cir. 2018) (holding that Polish website was liable under the Copyright Act for directing copyrighted video content to United States viewers on demand); *Crunchyroll, Inc. v. Pledge*, Case No: No. C 11-2334, 2014 WL 1347492, at *17 (N.D. Cal. 2014) (holding that copying and uploading copyrighted videos in the United Kingdom and transmitting those copies to viewers in the United States violated the Copyright Act); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1145-47 (N.D. Cal. 2011) (same with respect to copying and uploading that occurred in Canada); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 202-03, 225 (S.D.N.Y. 2002) (rejecting extraterritorial defense by a Canadian website that allegedly posted copyrighted images viewed in the United States); *cf. Tire Eng'g*, 682 F.3d at 306-08 (adopting predicate-act doctrine and endorsing the view that the Copyright Act applies unless the activities take place entirely abroad).

nearby in Washington, D.C. (as is Plaintiffs' counsel), and is primarily responsible for the investigation of the Websites that led to this lawsuit.  First McDevitt Decl. ¶¶ 2-3.[7]

### B.  Alternatively, this Court has specific jurisdiction under Rule 4(k)(2).

Even if the Court finds that it lacks personal jurisdiction under Virginia's long-arm statute (which it should not), this Court would still have jurisdiction over Defendant under Rule 4(k)(2). Rule 4(k)(2) functions as a kind of federal long-arm statute and is designed to fill "a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements."  *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 (E.D. Va. 2003); *see also Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 513 (W.D. Va. 2007); Fed. R. Civ. P. 4 advisory committee's note.  A plaintiff is allowed to plead Rule 4(k)(1) and 4(k)(2) in the alternative and to include allegations supporting jurisdiction under either Rule, as Plaintiffs have done in this case. *See Raju*, 241 F. Supp. 2d. at 600.  The need for Rule 4(k)(2) is particularly compelling in cases like this one, where foreign defendants rampantly and flagrantly violate American law while arguing that they are not amenable to suit in any state.  *See* Def.'s Mem. 22; *see also Raju*, 241 F. Supp. 2d at 600.

Rule 4(k)(2) provides that serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) "exercising

---

[7] Defendant makes the startling suggestion that Plaintiffs should travel to Russia to assert their rights under U.S. copyright law.  Def.'s Mem. 21-22.  As this Court has recognized, traveling to a foreign country is not an effective strategy for vindicating rights under American law or for obtaining meaningful relief against internet pirates.  *See Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 600 (E.D. Va. 2003).

jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see also CFA Inst.*, 551 F.3d at 291 n.12. All three elements of the Rule are satisfied here.

### 1. Plaintiffs' claims arise under federal law.

Plaintiffs assert claims under the Copyright Act stemming from Defendant's operation of the Websites. *See* Compl. ¶¶ 53-96. These claims clearly arise under federal law for purposes of Rule 4(k)(2). *See, e.g.*, *Silver Ring Splint Co.*, 508 F. Supp. 2d at 514 ("Copyright . . . claims clearly arise under federal law."). Defendant does not dispute this point.

### 2. Defendant is not subject to jurisdiction in any state's courts of general jurisdiction.

Under Rule 4(k)(2), the plaintiff must make a *prima facie* showing that the defendant is not subject to personal jurisdiction in any state. *See* Fed. R. Civ. P. 4(k)(2). However, plaintiffs are not required to disprove the existence of personal jurisdiction in each and every state. *See, e.g.*, *Silver Ring Splint Co.*, 508 F. Supp. 2d at 516. Rather, once the plaintiff makes a *prima facie* showing that this second factor is met, the burden shifts to the defendant to identify particular states that would have personal jurisdiction. *See, e.g.*, *id.*

Defendant disputes that he is subject to personal jurisdiction in Virginia. Def.'s Mem. 9-22. He contends that operating highly-interactive websites that make and deliver pirated copies of sound recordings to over 542,000 Virginia residents, and having more than 1.3 million knowing contacts with the forum in the past year alone, is not enough for him to reasonably foresee the possibility of being haled into court here. That is mistaken for all of the reasons discussed above. *See supra* 6-13. But, if the Court agrees with Defendant on this point, the same logic applies to every other state in the country, as Defendant's contacts with other states are essentially the same as his contacts with Virginia and there is no evidence that the Websites purposefully target users in any other state more than they target users in Virginia.

17

Although Defendant gestures at California as a proper venue, Defendant insists that *no* state—not even California—can exercise jurisdiction in this case.  Def.'s Mem. 22.  Because Defendant has failed to show that there is personal jurisdiction in some other state, Rule 4(k)(2)'s second requirement is satisfied.[8]

### 3.   Exercising jurisdiction under Rule 4(k)(2) comports with due process.

The due process inquiry under Rule 4(k)(2) is the same as under Rule 4(k)(1)—whether Defendant has sufficient minimum contacts with the forum to justify the exercise of personal jurisdiction—although, under Rule 4(k)(2), the relevant forum is the United States as a whole rather than any particular state.  *See Raju*, 241 F. Supp. 2d at 597.  Accordingly, this Court has specific jurisdiction under Rule 4(k)(2) if: (1) Defendant purposefully availed himself of the privilege of conducting his business in the United States, (2) Plaintiffs' claims arise out of Defendant's contacts with the United States, and (3) exercising personal jurisdiction is constitutionally reasonable.  *See, e.g.*, *CFA Inst.*, 551 F.3d at 294.

There is already a mountain of evidence that Defendant knowingly operates his illicit business in, and targeted to, the United States.  Indeed, the very heart of Defendant's business—

---

[8] Defendant suggests in passing that Plaintiffs were required to plead specifically in their Complaint that Defendant is not subject to the jurisdiction of any state, though Defendant frames this argument as a reason why "[t]ransfer is [p]roper [u]nder Rule 4([k])(2)."  Def.'s Mem. 23.  Defendant is incorrect.  Although Plaintiffs are required to make a *prima facie* showing that this second element of Rule 4(k)(2) is satisfied in response to a motion to dismiss, they are not required to *plead* that this is so.  *See Raju*, 241 F. Supp. 2d at 599 & n. 20 (finding jurisdiction under Rule 4(k)(2) even though plaintiff failed to allege nationwide jurisdiction in its complaint).  Defendant's citation to *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"* misses the mark.  In that case, the Fourth Circuit held that the plaintiff failed to show that the requirements of Rule 4(k)(2) were satisfied, observing that"[the plaintiff] has never *attempted* to argue that [the defendant] is not subject to personal jurisdiction in any state," and it "continue[d] to assert that personal jurisdiction over [the defendant] is proper in Maryland *as well as in other states*" on appeal.  283 F.3d 208, 215 (4th Cir. 2002) (emphases added).

the ability to extract the audio portions of music videos available on YouTube—requires access to the service of a prominent United States company (YouTube).  Although Defendant contends that the Websites "can be used with a variety of websites other than YouTube," Def's Mem. at 2-3, even a cursory glance at the Websites shows that YouTube videos are the Websites' focus.  *See, e.g.*, Kurbanov Decl., Ex. 1; Compl. ¶¶ 40-41.  Indeed, the Websites promote themselves expressly as a "YouTube Downloader," Compl. ¶ 40, that allows users to "[c]onvert videos from YouTube in 1 click!"  *Id.* ¶ 41.[9]

Moreover, the Websites receive approximately eight to 12 million visits from users in the United States *every month*.  Doroshow Decl., Exs. A-B; Kurbanov Decl., Exs. 2-3.  At the request of those users, the Websites make pirated copies of sound recordings and transmit them to users' computers throughout the United States (including in Virginia) and do so pursuant to binding contracts with each of those users, whose geographic locations are fully known to Defendant. Compl. ¶ 37-47; Doroshow Decl., Exs. C-D, E-F.  The Websites also make a point of asserting that they voluntarily comply with the Digital Millennium Copyright Act, 17 U.S.C. § 512. Doroshow Decl., Exs. C-D.  In the face of this overwhelming evidence, Defendant cannot plausibly deny that he is exploiting the United States market, and intentionally so.

If this were not enough, Defendant has also made several additional, intentional contacts with the United States to facilitate the operation of his illicit business in the United States.  For example, for several years, Defendant contracted with Amazon Web Services to provide the front-end (*i.e.*, consumer facing) servers for the Websites in the United States, including in this District.

---

[9] Nearly all of the other streaming services that the Websites mention, in passing, as sources of music that can be extracted through Defendant's "YouTube Downloader" are also United States companies.  *See* Kurbanov Decl., Ex. 1 (claiming that the "YouTube Downloader" also works with, among other websites, Vimeo (a New York company)); Doroshow Decl. ¶ 8, Ex. G.

Second McDevitt Decl. ¶ 2, Exs. A-B; Kurbanov Decl. ¶ 43.  Defendant registered the domain names for the Websites with an American domain-name registrar, using top-level domains that are administered by Virginia-based domain registries.  Second McDevitt Decl. ¶¶ 3-5; *see also America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 456-57 (E.D. Va. 2003); *Citigroup Inc. v. Malik*, No. 1:07-cv-1168, 2009 WL 874497 at *2 (E.D. Va. Mar. 24, 2009) (finding personal jurisdiction based, in part, on defendants' registration of domain names through the VeriSign registry).  And Defendant profits from his illicit operations by doing business with at least two American advertising firms.  Doroshow Decl., Exs. A-B, H-I.  In short, the record shows that Defendant has taken multiple steps specifically to reap the benefits of running his illicit business in the United States.

Taken together, these contacts show conclusively that Defendant should have foreseen being haled into court in the United States.  To hold otherwise "would not only frustrate [Plaintiffs'] attempts in this case to vindicate [their] rights under United States law, by requiring [Plaintiffs] to turn to foreign courts to vindicate those rights against a likely elusive defendant, it would also provide a blueprint whereby other individuals bent on violating United States . . . copyright laws could do so without risking suit in a United States court."  *Raju*, 241 F. Supp. 2d at 600.  The Court should decline Defendant's invitation to create such a dangerous precedent.

Just last month, the First Circuit found that Rule 4(k)(2) provided jurisdiction over a foreign website with far fewer substantial contacts with the United States than Defendant has here.  In *Plixer International, Inc. v. Scrutinizer GmbH*, --- F.3d ---, 2018 WL 4357137, at *1 (1st Cir. Sept. 13, 2018), the defendant operated a website that provided software-analysis services.  Customers could pay for these services only with euros, and the company's standard contract provided that "all lawsuits relating to the contract be brought in German courts and under German law."  *Id.*  The

website operated globally, and the defendant sold its services to American consumers only 156 times out of more than 5,000 transactions. *Id.* Over the defendant's objections, the First Circuit found personal jurisdiction under Rule 4(k)(2), basing its conclusion, in part, on the fact that the defendant "can track where its customers are from." *Id.* at *5. The court found that the defendant "knew that it was serving U.S. customers and took no steps to limit its website's reach or block its use by U.S. customers." *Id.* Moreover, the court found that the "failure to implement such restrictions, coupled with [the defendant's] substantial U.S. business, provides an objective measure of its intent to serve customers in the U.S. market and thereby profit." *Id.* The court also found that the defendant's standard contract showed that it knowingly extended the reach of its website outside of Germany. *Id.* at *5 n.10.

The same is true here. As discussed above, Defendant tracks the location of the Websites' users and knows that the Websites are serving users in the United States; Defendant has apparently taken no steps to limit the Websites' reach or block potential users in the United States; and, unlike the website at issue in *Plixer*, the Websites are available in English, impose contractual terms that provide for jurisdiction in courts anywhere that users "can be found," and serve more than 31 million American users approximately eight to 12 million times every month. Doroshow Decl., Exs. A-B, C-D; Kurbanov Decl., Exs. 2-3.

Defendant's only argument against 4(k)(2) is an amorphous suggestion that Rule 4(k)(2) might not confer jurisdiction because the Websites are "[e]qually [a]ccessible [t]hroughout the [w]orld." Def.'s Mem. 15. However, "[t]he relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." *English & Smith*, 901 F.2d at 39. Defendant admits that the Websites had more than 31 million users with over 96 million contacts with users in the

United States in the last year alone. *See* Kurbanov Decl., Exs. 2-3.[10]   That staggering number of contacts is more than sufficient.   Moreover, virtually every website is "equally accessible throughout the world," so that is not enough to escape jurisdiction in the United States.   *See Zippo*, 952 F. Supp. at 1123-24; *Bright Imperial*, 2012 1831536, at *6.   And even if the relative percentages of United States users were relevant to the due process analysis (which they are not), then the fact that (according to Defendant) 5.87% of 2conv users and 9.92% of FLVTO users are in the United States easily satisfies those concerns.   *See* Kurbanov Decl. ¶¶ 36, 39, Exs. 2-3; Doroshow Decl., Exs. A-B.

In short, it would be highly unjust if Defendant could violate Plaintiffs' rights here in the United States—millions of times per month—and yet evade any accountability for his willful violations.   No principle of due process requires such a result; to the contrary, as this Court has previously observed, justice requires the exercise of jurisdiction under Rule 4(k)(2) in such circumstances.   *See Raju*, 241 F. Supp. 2d 600.[11]

---

[10]  For the same reasons as with Rule 4(k)(1), the other factors of the due process inquiry are satisfied here as well.  *See supra* 14-16.

[11]  As discussed above, Plaintiffs have detailed Defendant's pervasive contacts with the United States and Virginia.  However, if the Court were to find that, notwithstanding all of this evidence, a *prima facie* case for personal jurisdiction still has not been made, Plaintiffs respectfully request that the Court defer ruling on Defendant's motion and permit the parties to engage in limited jurisdictional discovery to resolve any remaining material issues of fact.  Jurisdictional discovery is warranted when a plaintiff's motion offers "specific and substantive" allegations regarding jurisdiction or when "significant gaps in the record exist" regarding jurisdiction.  *See Gibbs v. Plan Green, LLC*, --- F. Supp. 3d ---, 2018 WL 3614969, at *7 (E.D. Va. July 27, 2018) (internal quotation marks omitted).  Again, however, Plaintiffs respectfully submit that the jurisdictional basis for this case is already plain.

## II.        Transfer Of Venue Is Not Warranted.

Defendant asks the Court, in the alternative, to transfer the case to the Central District of California pursuant to Rule 4(k)(2) and the doctrine of *forum non conveniens*.  Def.'s Mem. 23-26.  As an initial matter, there is no mechanism for transferring venue under Rule 4(k)(2).[12]  Moreover, *forum non conveniens* is generally available only when the alternative forum is abroad, not a sister federal court.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  Defendant's mechanism for seeking a transfer, then, would be 28 U.S.C. § 1404(a), but nowhere in his motion does Defendant invoke this statutory provision.

Even if the Court were to treat Defendant's motion as one under 28 U.S.C. § 1404(a), there is no justification for transferring this case to the Central District of California.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  When deciding whether to transfer venue to another district, courts principally consider (1) plaintiff's choice of forum, (2) the convenience of the parties, (3) access to sources of proof, (4) the convenience of the witnesses, and (5) the interest of justice.  *See, e.g.*, *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005).  As the moving party, Defendant bears the burden of showing that a transfer of venue is warranted.  *See id.* at 715.  To carry this burden, Defendant must show that the balance of factors "are *strongly* in favor of" transferring the case to the Central District of California.  *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F.

---

[12] Defendant's citation to *Orbital Australia Pty Ltd. v. Daimler AG*, No. 3:14VC808, 2015 WL 4042178 (E.D. Va. July 1, 2015) is inapposite.  *Orbital* involved a motion to transfer under 28 U.S.C. § 1404.  *See id.* at *1-2.

Supp. 2d 660, 667 (E.D. Va. 2010) (quoting *Jones v. Frazier*, No. 1:09-cv-513, 2009 WL 2601355, at *8 (E.D. Va. Aug. 18, 2009) (emphasis in original)).

Defendant has utterly failed to meet its burden.  Defendant's bare-bones motion does little more than recite the relevant factors and note that *some* of the Plaintiffs are located in California—a fact that counts for little when those Plaintiffs are fully willing to appear and litigate the case in this District.  Defendant fails to show that any of these factors favor transfer at all, much less that the balance of these factors *strongly* favors such a transfer.

### A.   Plaintiffs' choice of forum is entitled to deference in this case.

A plaintiff's choice of forum is typically entitled to "substantial weight," particularly where it bears a substantial relation to the cause of action.  *Heinz Kettler*, 750 F. Supp. 2d at 667.  That is the case here.  Although the Eastern District of Virginia is not the Plaintiffs' home forum, the Eastern District of Virginia has quite a bit to do with their claims.  As discussed above, Defendant knowingly contracts with hundreds of thousands of Virginia residents to provide them with his illicit stream-ripping services, and there is evidence that he does so *more than 1.3 million times per year*.  *See supra* 3-5; Kurbanov Decl., Exs. 2-3.  Defendant also consciously chose to place the Websites on top-level domains (".biz" and ".com") that are administered by prominent, Virginia-based domain registries.  Second McDevitt Decl. ¶¶ 4-5.  Although Virginia is not the *only* state where the Websites operate, it is nevertheless true that Defendant's Websites are causing massive harm to Plaintiffs here in this District.  On these facts, Plaintiffs' choice of forum is entitled to substantial weight.  *See Tire Eng'g*, 682 F.3d at 305.

But even if it were not entitled to "substantial weight," Plaintiffs' choice of forum is still "a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum."  *Samsung*, 386 F. Supp. 2d at 716.  That is certainly the case here.  In addition to

Defendant's many infringing contacts with Virginia, Plaintiffs' trade association is located across the Potomac River, in Washington, D.C., and it is coordinating this lawsuit with Plaintiffs' litigation counsel, who are also located in Washington, D.C.  First McDevitt Decl. ¶¶ 2-3.  Taken together, these factors "reasonably and logically" support Plaintiffs' choice of forum.[13]

### B. Transferring to the Central District of California would be less convenient for all parties.

Defendant argues that the convenience of the parties "clearly weighs in favor of transfer." Def.'s Mem. 24.  This claim does not withstand scrutiny.  In his own declaration, Defendant contends that it would be "extremely burdensome and costly" for him to travel from his home in Rostov-on-Don, Russia to Virginia "*or anywhere else in the United States*."  Kurbanov Decl. ¶ 45 (emphasis added).  In fact, the courthouses in the Central District of California are more than 1,000 miles farther away from Defendant than the courthouse in Alexandria, Virginia.  Furthermore, Defendant's counsel are located in Richmond, Virginia and in Massachusetts. Def.'s Mem. 28.  It is difficult to see how transferring this case even farther away from Defendant and his counsel could be *more* convenient for him.  Defendant offers no explanation at all.

Defendant also suggests that each Plaintiff *could* litigate this case in California if necessary. Def.'s Mem. 24-25.  But that proposition does not address whether litigating in California would be *more* convenient for Plaintiffs.  Plaintiffs are fully prepared to appear and testify in this District.

---

[13] Defendant's citation to *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685 (E.D. Va. 2007), is inapposite.  In *Lycos*, this Court found that the plaintiff's patent infringement suit against out-of-state corporations had "at best, a tenuous connection with Virginia." *Id.* at 692.  Although the defendants had customers in Virginia, the location of these customers had no bearing on the plaintiff's claim that the defendants had infringed on its "information filtering technology." *Id.* at 687, 692.  Here, by contrast, Plaintiffs allege that Defendant is actively inducing and contributing to copyright infringement by more than 542,000 Virginia users.  Compl. ¶¶ 62-86.

*See Samsung*, 386 F. Supp. 2d at 719 (finding that the convenience of plaintiff's party witnesses "does not seem to be an issue" when the plaintiff offered to bring "any and all" of its party witnesses to give live testimony in the district).  In any event, transferring the case to the Central District of California would actually make this case *less* convenient for the Plaintiffs as a group.  As noted in the Complaint, only three of the twelve Plaintiffs have their principal places of business in California.  Compl. ¶¶ 14-25.  And, again, the RIAA and Plaintiffs' litigation counsel are both located nearby in Washington, D.C.  Accordingly, Defendant fails to show that the convenience of the parties strongly favors transferring this case to a courthouse across the country.

### C.    Access to sources of proof does not strongly favor transfer.

This is a case involving twelve plaintiffs scattered across the United States and at least one foreign defendant.  Wherever the case is held, there will be some burden associated with accessing evidence.  But Defendant does not explain why it will be especially difficult to litigate this case in Virginia (much of the evidence Plaintiffs have gathered is located in D.C.), or why transferring the case to the Central District of California will resolve those hypothetical problems.  In fact, much of the evidence in this case will be stored electronically, and access to it will be no more difficult in Virginia than in California.  Contrary to what Defendant suggests, transferring the case will cause greater inconvenience to *all* parties.  Def.'s Mem. 24-25.  Accordingly, this factor does not favor transfer either.

### D.    Defendant fails to show that the convenience of the witnesses strongly favors transfer.

Defendant asserts in conclusory fashion that "witnesses from at least three of the Plaintiffs" and "the witnesses from YouTube will be located in California."  Def.'s Mem. 25.  Nothing more.  That falls well short of Defendant's burden to show that a transfer is warranted.  Party witnesses "are presumed to be more willing to testify in a different forum," and in fact, Plaintiffs' witnesses

are prepared to testify in Virginia. *Samsung*, 386 F. Supp. 2d at 718 (quoting *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004)). With respect to non-party witnesses, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Id.* at 718 (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003)). In addition, Defendant must show "whether that witness is willing to travel to a foreign jurisdiction" and, if not, Defendant must explain why alternative forms of testimony like videotaped depositions "will be inadequate." *Id.* at 719 (internal quotation marks omitted).

Defendant has not even tried to make this showing. Instead, Defendant discusses at length how YouTube and its parent company, Google, are spread across the globe—noting, as he must, that Google has an office in Virginia. Def.'s Mem. 8. At the same time, Defendant also claims that his Websites work not only with YouTube, but also with other streaming platforms, one of which (Vimeo) is based in New York. *See* Def.'s Mem. 2-3; Kurbanov Decl., Ex. 1; Doroshow Decl. ¶ 8, Ex. G. It is therefore far from clear that the necessary witnesses will in fact be "in California," as Defendant baldly contends. Def.'s Mem. 25. Moreover, Defendant has not bothered to identify any particular witnesses—from YouTube or elsewhere—or their potential testimony, and thus cannot possibly speak to whether those witnesses would be willing to travel to Virginia or why their videotaped depositions would not suffice. Accordingly, Defendant has not shown that convenience of the witnesses favors transfer.

### E. The Eastern District of Virginia offers a fair and effective forum for litigating this dispute.

The interest-of-justice factor concerns the "systemic integrity and fairness" of the proceedings, including considerations of judicial economy, avoiding inconsistent judgments,

docket congestion, the interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and the interest in avoiding unnecessary conflicts of law.  *Samsung*, 386 F. Supp. 2d at 721.

Defendant does not explain how any of these considerations favors transfer.  Defendant contends that transferring the case would resolve the personal jurisdiction issue because "if the Court were to find that jurisdiction exists under Rule 4(k)(2) . . . Mr. Kurbanov would consent to jurisdiction in California."  Def.'s Mem. 26.  It is unclear what Defendant means by this assertion.  If the Court finds that jurisdiction exists under Rule 4(k)(2), then Defendant will have no power to give or withhold his consent to jurisdiction, in California or anywhere else in the United States.

Equally strange is Defendant's suggestion, without citation to any authority, that the interest-of-justice considerations favor transfer because there are more users of the Websites in California than in Virginia.  Def.'s Mem. 25.  This fact has nothing to do with the "systemic integrity and fairness" of the proceedings.  In any case, the difference in the number of users in California and Virginia is nearly proportional to the differences in their populations.  California has the largest population in the country, by far.  Unsurprisingly, then, it has the most users of the Websites of any state.  Kurbanov Decl. ¶¶ 37, 40.  Virginia is the 12th largest state by population, and it has the 11th most users of 2conv and the 13th most users of FLVTO.  *See id.*, Exs. 2-3.  Proportionally, therefore, California and Virginia are essentially equally situated.

Finally, Defendant suggests—also with no authority—that the interest-of-justice factor favors transfer because three of the twelve Plaintiffs are in California.  Def.'s Mem. 25.  Again, this fact is irrelevant.  Most of the Plaintiffs are *not* in California, Compl. ¶¶ 14-25, and the fact that some are has no effect on the basic integrity and fairness of proceeding in this District.  *See Tire Eng'g*, 682 F.3d at 304-05.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss and motion to transfer should be denied.

Dated:  October 15, 2018

By:  /s/ Michael K. Lowman

Michael K. Lowman, VA Bar #41663
Kenneth L. Doroshow (*pro hac vice*)
Jonathan A. Langlinais (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6027
Facsimile: (202) 639-6066

Alison I. Stein (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
Floor 38
New York, NY 10022
Telephone: (212) 891-1622
Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2018, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Transfer to the Central District of California was served on all counsel of record via the Court's CM/ECF electronic filing system.

Dated: October 15, 2018

/s/ Michael K. Lowman

Michael K. Lowman