**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC.; CAPITAL RECORDS, LLC; WARNER BROS. RECORDS INC.; ATLANTIC RECORDING CORPORATION; ELEKTRA ENTERTAINMENT GROUP, INC.; FUELED BY RAMEN, LLC; NONESUCH RECORDS INC.; SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT US LATIN LLC; ARISTA RECORDS LLC; LAFACE RECORDS LLC; and ZOMBA RECORDING LLC, | **Case No.**<br>**1:18-CV-00957-CMH-TCB** |
| Plaintiffs, | |
| v. | |
| TOFIG KURBANOV d/b/a FLVTO.BIZ and 2CONV.COM;<br>And DOES 1-10, | |
| Defendants. | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE TO TRANSFER TO THE**
**CENTRAL DISTRICT OF CALIFORNIA**

Plaintiffs – a collection of record companies, none of which are located within Virginia –

appear to be having something of an identity crisis.  They are not, as they seem to believe,

YouTube.com, despite basing much of their jurisdictional argument on alleged misuse of that

website's platform by a small minority of Defendant's users.  Nor are they quite as prevalent on

Youtube.com as they seem to believe – at least not according to YouTube's own statistics which

suggest that all music-related videos (both those owned by Plaintiffs and all of the rest of the

1

music in the world) – comprise only 2.5% of all of that site's streaming traffic.[1]  Nor are Plaintiffs the users of Defendant's Websites, despite Plaintiffs' attempts to invoke as jurisdictionally relevant those Websites' Terms of Use.  Plaintiffs are also not their attorneys – despite the argument contained in their Opposition – that this Court should find personal jurisdiction in Virginia because it's such an easy drive for Plaintiffs' counsel from their offices in Washington, D.C.[2]  Adding to this sense of confusion, Plaintiffs seem to have a touch of amnesia, forgetting that they brought a near-identical lawsuit two years ago in the Central District of California where they argued that jurisdiction was proper in part because, they alleged, that was "where several Plaintiffs are located and/or maintain substantial business operations."  *See* Complaint, *UMG Recordings, Inc. v. PMD Technologie UG*, Case No. 2:16-cv-07210 (C.D. Cal.), attached hereto as Exhibit 1.

    Plaintiffs' confusion is not limited to its own identity: they also appear confused about the type of action they have brought, citing at times cases that are clearly only applicable to jurisdictional questions in very specific types of *in rem* cases.  And at least one of the advertising brokers that Plaintiffs believe Defendant engaged with in the United States, was actually founded in the Ukraine, where it continues to maintain the office with whom the Defendant dealt exclusively, communicating entirely in Russian.  And, finally, Plaintiffs appear to confuse the importance of the *number* of contacts users have with a website with the number of *jurisdictionally relevant contacts*.

---

[1] *See* "YouTube Says Just 2.5% Of Its Traffic Is Music-Related," *Digital Music News* https://www.digitalmusicnews.com/2016/04/29/youtube-says-just-2-5-of-its-traffic-is-music-related (April 29, 2016)
[2] For the record, the undersigned quite like Plaintiffs' counsel and consider them to be some of the best copyright lawyers in the country, despite their being mistaken in their jurisdictional arguments here.

In the course of this Reply, Defendant hopes to clear up some of this confusion.

## Argument

I. **Plaintiffs' Arguments do not Establish Jurisdiction Either in Virginia or the United States as a Whole.**

    A.    <u>Plaintiffs are not YouTube</u>[3]

From reading both Plaintiffs' Complaint and their Opposition, one might be tempted to believe that YouTube is a named plaintiff. It is not. This being the case, Plaintiffs' complaints that Defendant's Websites allegedly violate YouTube's terms of service not only ring hollow but also add nothing to the jurisdictional analysis. Plaintiffs' continued insistence that YouTube is a "prominent United States business" is also jurisdictionally irrelevant. Although Plaintiffs try to allege that Defendant's Websites are aimed at YouTube (in general), such an allegation would only be jurisdictionally relevant (if at all) in circumstances not present here. First, as noted, YouTube is not itself a Plaintiff and so (to the extent that the Plaintiffs' location figures into the jurisdictional analysis at all), the fact that YouTube is located in the United States is simply immaterial here. Indeed, the fact that Plaintiffs are *not* YouTube is particularly poignant given that YouTube does not see itself as provincially as Plaintiffs do. According to YouTube itself, the website has local versions in more than 88 countries; is available in 76 different languages; and fewer than 17% of its visitors come from the United States, all of which cuts against Plaintiffs' argument that a service that focuses on YouTube.com users is somehow specifically

---

[3] It is more than a little ironic that Plaintiffs, in essence, cast themselves as YouTube's white knights given that the recording industry has long been at war with YouTube over what it believes is YouTube's refusal to properly compensate them for use of their songs, something YouTube denies. *See, e.g.*, "Here's why the music labels are furious at YouTube. Again." ReCode, https://www.recode.net/2016/4/11/11586030/youtube-google-dmca-riaa-cary-sherman (Apr. 11, 216); "Setting the Record Straight," YouTube Creator Blog, https://youtube-creators.googleblog.com/2016/04/setting-record-straight.html (April 28, 2016).

targeted at the United States.

Further undercutting Plaintiffs' arguments is their own over-estimation of their importance on the YouTube platform. According to YouTube, music related videos account for only 2.5% of all of YouTube's traffic. *Supra*, fn. 1. This, of course, doesn't mean that 2.5% of YouTube's traffic involves *Plaintiffs'* music, but rather music as a whole, whether it be copyrighted, subject to a Creative Commons license, or freely offered to the public without restriction, constitutes 2.5% of YouTube's traffic. And, of course, given YouTube's international reach, much of that music is itself likely from outside the United States and thus not owned by Plaintiffs.

All of this is important, to the extent that Plaintiffs' YouTube arguments are actually relevant, because the only contacts that are jurisdictionally relevant at all are those that give rise to Plaintiffs' cause of action. In reality, however, although the discussion of YouTube's international statistics is certainly interesting, it is not actually relevant to the jurisdictional analysis because it focuses not on the *Defendant's* connection to the United States, as it must, but instead on the materials that the Websites' *users* choose to download. Jurisdiction is not decided based on the fortuitous decisions of third-parties not under the Defendant's control.

Finally, the Court should reject Plaintiffs' attempted sleight-of-hand in suggesting that the alleged "place of injury" is the United States because YouTube is (in part) located within the United States. Even if Plaintiffs could somehow stand in YouTube's shoes and thereby claim that "they" suffered some injury in the United States by virtue of conduct "aimed" at YouTube, this would still be an insufficient basis for jurisdiction in the United States without additional proof that the Defendant himself had sufficient minimum contacts with the United States to support such a finding of jurisdiction. *See Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d

273, 280-81 (4th Cir. 2009) ("'[A]lthough the place the plaintiff feels the alleged injury is plainly

relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own

contacts with the state if jurisdiction over the defendant is to be upheld.'" (quoting *ESAB Group,*

*Inc. v. Centribut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997))); *Carefirst of Md., Inc. v. Carefirst*

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003) (same).

> B.    The Terms of Use for Defendant's Websites are Irrelevant to the Court's
>       Jurisdictional Inquiry.

Plaintiffs also attempt to make much of the Terms of Use of Defendant's Websites to

support their proposition that the Defendant has subjected himself to jurisdiction in Virginia

and/or the United States.  Here, again, Plaintiffs are mistaken.  Even if Plaintiffs were entitled to

take advantage of the Websites' Terms of Use, despite the fact that Plaintiffs are not themselves

parties to the Terms or intended third-party beneficiaries, Plaintiffs simply read too much into

little and ignore everything surrounding the words they actually like.  First (if the Terms were

actually relevant), Plaintiffs have neglected to note that the Terms specifically call for the

application of "the laws of THE RUSSIAN FEDERATION without regard to conflict of law

provisions."  Docket No. 28-1, Section 14(a) (capitalization in original.)  Next, the provision

notes that:

> FOR ANY CLAIM BROUGHT BY YOU AGAINST US, YOU AGREE TO
> SUBMIT AND CONSENT TO THE PERSONAL AND EXCLUSIVE
> JURISDICTION IN, AND THE EXCLUSIVE VENUE OF THE COURTS IN
> THE RUSSIAN FEDERATION.

*Id.* (capitalization in original).

This is, of course, directly contrary to Plaintiffs' supposition that the Defendant has

intentionally subjected himself to the jurisdiction of Virginia and/or the United States.  Plaintiffs,

however, rely on the next sentence of the agreement that provides that, for claims *brought by*

Defendant Websites that such claims may be brought either in the Russian Federation or wherever the user may be found.  *Id.*  Such a provision, of course, is not only common sense but fully consistent with Defendant's position here because it simply preserves the option for the Defendant Websites to bring an action wherever a user may be found, *recognizing that there may not be minimum contacts to sue a user of the website in the Russian Federation.*  Moreover (again if any of this were actually relevant), it is not what right Defendant has claimed to reserve for itself that is actually relevant here, but whether the Defendant has actually acted in a way that is consistent with an exercise of personal jurisdiction.  And, despite this provision in the Terms of Service, Defendant has never sued anyone under those Terms in Virginia, the United States, or anywhere else for that matter.  *See* Reply Declaration of Tofig Kurbanov, filed herewith, ¶ 3.

     C.    <u>The Location of Plaintiffs' Lobbying Group and Lawyers Is Immaterial</u>

Plaintiffs also argue, somewhat surprisingly, that this case should proceed in Virginia because the location is close to Plaintiffs' lobbying group and counsel of choice.  First, if this consideration was even valid – which it is not – it would counsel in favor of Plaintiffs if they brought the present action in the D.C. District Court, where both Plaintiffs' counsel and the RIAA are located.  But, of course, that would not have given Plaintiffs what they really seek here, namely to utilize the Court's infamous "rocket docket" despite any legitimate connections to the forum.[4]  As this Court has noted "many times over, '[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district.' ...  The 'rocket docket' certainly

---

[4] Plaintiffs' forum shopping has not gone unnoticed in the press.  *See, e.g.*, "Sony Music, UMG, and WMG Forcefully Respond to FLVTO.biz's Motion to Dismiss," Digital Music News, https://www.digitalmusicnews.com/2018/10/19/major-label-flvto-biz/ (October 19, 2018) ("More likely, Jenner and the RIAA chose Virginia hoping for an easier panel of judges, especially if FLVTO's operators declined to respond.  That strategy of 'forum shopping' works well with a no-show, but is more difficult to justify if the defendant actually responds.").

attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner....  In other words, this Court should not allow itself to be overrun by a horde of Visigoths who simply want quick results." *Intercarrier Communs., LLC v. Glympse, Inc.*, 2013 U.S. Dist. LEXIS 113572, at *17 (E.D. Va. Aug. 12, 2013).  Plaintiffs in this case – all who hail from outside Virginia and who are suing an individual in Russia – are precisely the invading horde of which this Court has been wary.

D.   Plaintiffs' Argument that Defendant is Subject to Jurisdiction in Virginia Simply by Virtue of Having Registered .biz and .com Domain Names is the Height of Absurdity.

Because the Court will be tempted to believe that Plaintiffs are simply making a *silly* argument – as opposed to a patently absurd one – Plaintiffs' actual argument needs to be articulated.  Plaintiffs are *not* simply arguing that Mr. Kurbanov should be subject to jurisdiction in Virginia because he registered his domain names with Verisign, Inc. or Neustar, Inc. (each of which is located within the Commonwealth.  *That* would be a silly argument.  *See*, *e.g.*, *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.,* 2009 U.S. Dist. LEXIS 97704, at *15 (E.D. Va. Oct. 16, 2009) ("Finally, as to the registration of the domain name in Virginia, the court noted 'mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state.'"); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state."); *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 858 (E.D. Va. 2000) ("Even assuming that a domain name registration is a 'thing' that may be located in Virginia, it is nonetheless a relatively minor portion of the Internet's architecture, and a minuscule presence in this Commonwealth; in terms of physical or electronic presence, it is merely a reference point in a

computer database."); *EZScreenPrint LLC v. SmallDog Prints LLC*, 2018 U.S. Dist. LEXIS 131611, at *8 (D. Ariz. Aug. 6, 2018) ("Moreover, the Court is cognizant of the fact that Defendants' domain name is registered with GoDaddy, an Arizona corporation. GoDaddy is apparently the largest domain registrar in the world and maintains over 50 million domain names worldwide, as of 2013.... The argument Plaintiff advances could allow millions of companies with domain names registered through GoDaddy to be subject to general personal jurisdiction in the state of Arizona.").

That, as noted, would have been the silly argument. Plaintiffs here instead argue that – even though Defendant's Websites were registered through Arizona registrar GoDaddy.com – jurisdiction is proper in Virginia because Verisign, Inc. *oversees* the entire top-level .com domain and Neustar, Inc. *oversees* the entire top-level .biz domain. Currently, there are **137.9 million registered .com domains and an additional 2.25 million .biz domains**. *See* Domain Count Statistics for TLDs, DomainTools, http://research.domaintools.com/statistics/tld-counts/ (last accessed October 22, 2018). Under Plaintiffs' theory, every owner of each of those 140+ million domains are subject to personal jurisdiction in Virginia.

Even the two cases cited by Plaintiffs for this absurd argument do not stand for this proposition. *See America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449 (E.D. Va. 2003); *Citigroup, Inc. v. Malik*, 2009 U.S. Dist. LEXIS 25919 (E.D. Va. Mar. 24, 2009). Preliminarily, each of these two cases actually involved defendants that had registered their domain names through Virginia registrars (and not simply registered top level domains "overseen" by companies within the state). And, each of these two cases involved default judgments, where the Plaintiffs had sought *in rem* relief pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA"). In other words, because the registration of the domain name was the actual wrong

being complained of under the ACPA and because the relief sought would require the registrar's

cooperation in transferring the offending domain name, jurisdiction was proper where the

domain itself was registered.  Nothing about this is surprising, other than Plaintiffs' belief that

these two cases are somehow even remotely applicable here.

      E.    <u>Plaintiffs' Misplaced Focus on the (Inaccurate and Unsubstantiated) Number of Visitors to the Websites.</u>

Whereas Defendant provided the Court with actual statistics showing the number of

visitors to the Websites, Plaintiff offers the Court unverified and inaccurate statistics from a

website called SimilarWeb.com, that (by its own admission) provides users with "estimates" of

the number of visitors to a website.[5]  Even if this were not the case, however, Plaintiffs'

obsession simply with numbers of visitors to the Defendant Websites is misplaced.  Numerous

other federal courts have, in similar situations, rejected the argument that a foreign defendant

may be subject to personal jurisdiction in the United States based simply on a website that

garners significant traffic from the United States.  *See*, *e.g.*, *Liberty Media Holdings, LLC v.

Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Plaintiff contends

that Defendant has 'considerable' web traffic originating from the United States and has

presented an exhibit showing that fifteen percent of the visitors to the website are from the

United States.  Precedent, however, establishes that maintaining a website accessible to users in a

jurisdiction does not subject a defendant to be sued there: those users must be directly targeted,

such that the defendant can foresee having to defend a lawsuit...." (and cases cited therein));

*Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17,

---

[5] *See* https://www.similarweb.com/corp/developer/estimated_visits_api (last accessed October 22, 2018) ("The Total Traffic API allows you to input a domain and receive the Estimated Number of Visits for the domain on a daily, weekly, or monthly basis for desktop and mobile users.").

2012) (rejecting personal jurisdiction despite allegations that "xHamster's website www.xHamster.com is visited daily by over 1,500,000 internet users worldwide with roughly 20 percent of the site's visitors being from the United States"); *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.*, 2013 U.S. Dist. LEXIS 3779 (N.D. Iowa Jan. 10, 2013) (allegations that "17 to 20 percent of visitors to Youngtek's websites are U.S. citizens"); *Fraserside IP L.L.C. v. Netvertising Ltd.,* 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa Dec. 21, 2012) (allegations that "16.7% percent of HardSexTube's website's daily visitors are from the United States"); *Fraserside IP L.L.C. v. Letyagin*, 885 F. Supp. 2d 906 (N.D. Iowa 2012) (allegations that "eighteen percent of SunPorno's website's 2,500,000 daily visitors are from the United States); *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.,* 2012 U.S. Dist. LEXIS 98041 (N.D. Iowa July 16, 2012) (allegations that "the EmpFlix.com website is allegedly visited daily by over 1,500,000 internet users worldwide with approximately 16.9 percent of the site's visitors coming from the United States. The TNAFlix.com website is allegedly visited daily by over 3,000,000 internet users worldwide with approximately 21.5 percent of the site's visitors coming from the United States.").

In focusing solely on the number of viewers that Defendant's Websites draw from the United States – Plaintiffs incorrectly elevate the importance of *non-claim related contacts* with the United States.  On this front, the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) is particularly instructive.  In *Bristol-Myers*, "more than 600 plaintiffs, most of whom are not California residents, filed [a] civil action in a California state court against Bristol-Myers Squibb Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix." *Id.* at 1777.

Although *Bristol-Myers* "engages in business activities in California and sells Plavix there," the Supreme Court nonetheless found that the California courts could not exercise personal jurisdiction over the claims brought by non-California residents.  The Court reached this conclusion despite the fact that "five of the company's research and laboratory facilities, which employ a total of around 160 employees, are located" in California and the company "employs about 250 sales representatives in California and maintains a small state-government advocacy office in Sacramento." *Id*. at 1778.  Indeed, the Supreme Court noted that "BMS does sell Plavix in California. Between 2006 and 2012, it ***sold almost 187 million Plavix*** pills in the State and took in more than $900 million from those sales." *Id.* at 1778 (emphasis added).

Nevertheless, the Supreme Court rejected the argument that these contacts should be considered for specific jurisdiction purposes because the contacts did not relate directly to the claims brought by the non-resident plaintiffs:

> Settled principles of specific jurisdiction control this case.  For a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State....  When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State....  The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California does not allow the State to assert specific jurisdiction over the nonresidents' claims.  Nor is it sufficient (or relevant) that BMS conducted research in California on matters unrelated to Plavix.  What is needed is a connection between the forum and the specific claims at issue.

*Id.* at 1776 (internal citations omitted).

The same holds true here.  While Plaintiffs point simply to the raw number of visitors to Defendant's Websites, they do not allege (nor can the allege) how many of those visitors (if any) improperly used Defendant's service to download Plaintiffs' copyrighted works.

II.   **If Plaintiffs' Case is not Dismissed Outright, it Should, in the Alternative, be Transferred to the Central District of California.**

   A.   The Foreign Plaintiffs' Choice of Jurisdiction is not Entitled to Substantial Deference.

Plaintiffs first choose to ignore the relevant caselaw holding that a non-forum plaintiff's choice of forum is not entitled to substantial weight,[6] to suggest again that Virginia has substantial ties to this matter by virtue of Verisign and Neustar being located within the Commonwealth.  The argument is no less incorrect by virtue of its repetition.  Plaintiffs are blatantly forum shopping and it is an exercise that should receive no deference at all.

   B.   Convenience of the Parties

Although Plaintiffs attempt to brush aside the Central District of California as being no more convenient than Virginia (based on the RIAA and Plaintiffs' counsel being located not in Virginia, but next door in the District of Columbia), it ignores the fact that: (a) three of the Plaintiffs are actually headquartered in the Central District of California; (b) YouTube is in the Central District of California; (c) Advertise.com (one of the two advertising brokers Plaintiffs cite as being relevant) is headquartered in the Central District of California; (d) MGID's (the other advertiser) only United States Office[7] is located in the Central District of California; and

---

[6] *Orbital Austl. PTY Ltd. v. Daimler AG*, 2015 U.S. Dist. LEXIS 86631 at *14 (E.D. Va. July 1, 2015). *See, also, Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("However, the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." (citing *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F.Supp.2d 741, 743 (E.D. Va. 2003))); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) ("[I]f there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts.").

[7] In fairness to Plaintiffs, MGID's location should be less relevant given that Defendant only dealt with MGID's Ukraine office and never the U.S. Office.  *See* Reply Declaration of Tofig Kurbanov, filed herewith, ¶ 2.

(e) Plaintiffs have themselves argued that the Central District of California is an appropriate location for jurisdiction in a near-identical lawsuit to this one.

### C.   Access to Sources of Proof

Although Plaintiffs are correct that written discovery would be conducted primarily electronically, to the extent that it is not, it is clear from the above that there are documents and evidence in existence in California, while none exist in Virginia.

### D.   Convenience of Witnesses

Again, whereas Defendant has identified (above) potential party and third party witnesses within California, Plaintiffs have identified none that are located in Virginia.  And, while the party witnesses could be required to travel to Virginia, the same is not true for the non-party witnesses.

### E.   Interests of Justice

Finally, Plaintiffs claim as irrelevant: (a) that there are Plaintiffs located in California and not in Virginia; (b) that YouTube is located in California and not Virginia; (c) that the advertising brokers Plaintiffs believe to be relevant are located in California and not Virginia; (d) that more users of Defendant's Websites are located in California; and (e) Plaintiffs' own prior litigation involving identical claims was brought in California and not Virginia.  And, although they do not come out and say so, Plaintiffs' only (apparent) motivation for being in the Eastern District of Virginia is to take advantage of the Court's rocket docket.  The Visigoths are indeed at the gate.

## **Conclusion**

For the reasons stated hereinabove and in Defendant's original Memorandum of Law, Defendant respectfully requests that the Court dismiss the Complaint against Mr. Kurbanov

individually and d/b/a FLTVO.biz and 2CONV.com in its entirety, or, in the alternative, that the

case be transferred to the Central District of California.

Dated: October 22, 2018

**Respectfully Submitted:**

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger (VSB No. 40163)
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
Facsimile: (804) 783-7291
jgeiger@sandsanderson.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of October, 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing to the following:

Michael K. Lowman, Esquire
Jenner & Block LLP
1099 New York Ave, NW
Suite 900
Washington, DC 20001-4412
Email: mlowman@jenner.com
*Counsel for Plaintiffs*

Kenneth L. Doroshow, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: kdoroshow@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Alison I. Stein, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: astein@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Jonathan A. Langlinais, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: jlanglinais@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger