IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:18-cv-00957 ) ) |
| TOFIG KURBANOV, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Tofig Kurbanov's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), or, alternatively, to transfer the case to the Central District of California.

Plaintiffs are twelve record companies that produce, distribute, and license the majority of commercial sound recordings in the United States. All of them are Delaware companies, with eight having their principal place of business in New York, three in California, and one in Florida.

Defendant is a Russian national living and working in the Russian Federation. Defendant owns and operates two websites, www.FLVTO.biz (FLVTO) and www.2conv.com (2conv) (collectively

the "Websites"). The Websites are devoted to "stream ripping" which is a process by which users may "rip" a file from a streaming platform and convert it to a downloadable file format, such as an mp3. Terrica Carrington, "Stream-Ripping" A Growing Threat to the Music Industry, COPYRIGHT ALLIANCE (Nov. 10, 2016), https://copyrightalliance.org/ca_post/stream-ripping-growing-threat-music-industry/. A large portion of the files ripped using the Websites come from YouTube videos and are frequently music videos, however, the Websites are able to stream rip from a wide variety of sources. Neither Plaintiffs nor YouTube authorize or condone the ripping of files from YouTube videos.

The Websites are visited very frequently by users around the world. The Websites are available in twenty-three different languages and are most used in Brazil, Italy, and Mexico. FLVTO received over 263 million visits between October 2017 and September 2018 making it the 322nd most visited website in the world. 2conv also receives millions of visits each month. A significant portion of this traffic comes from the United States and Virginia more specifically. Approximately 26.3 million of FLVTO's visitors last year, or 9.92%, come from the United States. Nearly 500,000 of FLVTO's visitors came from Virginia. 2conv had similar percentages of its users from the United States and Virginia respectively.

The Websites are free to users and users do not have to register to use the Websites' capabilities. Users do have to agree to certain terms of use, but Defendant does not track or maintain a relationship with individual users beyond this agreement.

Defendant earns revenue from the Websites only through advertisements posted on them. Some of the advertisements placed on the Websites have geo-targeting capabilities, which means that the advertisements can be targeted to users based on their location. A similar function is available for interest-based targeting of advertisements on the Websites. Defendant sells the advertising placements to an advertising broker who then resells them to actual advertisers. Defendant deals directly with a broker in the Ukraine and does not deal with anyone in the United States or Virginia with regard to the sale or placement of advertisements. Defendant does not advertise the Websites in any way in the United States or elsewhere.

Defendant has the Websites' domain names registered with GoDaddy.com, a United States based domain-name registrar. Defendant also has top-level domains for the Websites administered by VeriSign, Inc. (2conv) and Neustar, Inc. (FLVTO) both of which are headquartered in Northern Virginia. As of July 2018, the Websites were, and have since been, hosted by Hetzner Online Gmbh, a German based organization without servers in the

United States. For nearly three years prior to July 2018, the Websites were hosted by Amazon Web Services which has servers physically located in Ashburn, Virginia.

Defendant operates the Websites entirely from Russia. Defendant has not directly done business in the United States or Virginia, nor does he have an agent in either forum. Defendant has no bank account in the United States, nor has he paid taxes here.

Plaintiffs allege that the Websites are a vehicle for music piracy and copyright infringement. Plaintiffs filed this lawsuit as an action for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §§ 101 et seq., on August 3, 2018. Defendant moves to dismiss the Complaint for lack of personal jurisdiction, or, alternatively, to have the case transferred to the Central District of California.

A motion to dismiss tests the sufficiency of the complaint. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). On a Rule 12(b)(2) motion, a defendant must affirmatively challenge personal jurisdiction and the plaintiff bears the burden of demonstrating the existence of personal jurisdiction at every stage following the defendant's challenge. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). A plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie

showing. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). This prima facie standard is "tolerant." See id., at 676-77. Further, a court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) (citing Combs, 886 F.2d at 676). A court may look beyond the complaint to affidavits and exhibits in order to assure itself of jurisdiction. Grayson, 816 F.3d at 269.

The Defendant challenges this Court's personal jurisdiction over him. Plaintiffs state that there is personal jurisdiction over Defendant under either Federal Rule of Civil Procedure 4(k)(1) or 4(k)(2).

The Court must evaluate whether it has personal jurisdiction over Defendant by looking at whether he is "subject to the jurisdiction of a court of general jurisdiction in the state" where the Court is located, i.e. in Virginia. Fed. R. Civ. P. 4(k)(1)(A). This is done by considering the two prongs of whether Virginia's long-arm statute provides jurisdiction and whether the jurisdiction comports with due process. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009). Numerous state and federal courts have construed Virginia's long-arm statute to extend personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment.

5

Va. Code Ann. § 8.01-328.1; CFA Inst., 551 F.3d at 293; English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990); Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 512 S.E.2d 560, 562 (Va. 1999). Where the long-arm statute's authorization is coterminous with the full limits of due process, the two inquiries merge and the court may consider solely whether due process is satisfied. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009); CFA Inst., 551 F.3d at 293. A court conducts the same due process analysis under Rule 4(k)(2), only the analysis is applied to all fifty states, as opposed to the single forum state. See Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory, 283 F.3d 208, 215 (4th Cir. 2002).

Personal jurisdiction was historically limited by the physical presence of a defendant in the territorial jurisdiction of the court. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Pennoyer v. Neff, 95 U.S. 714, 733 (1877). Over time the Supreme Court recognized, however, that due process only requires that a defendant have certain "minimum contacts" within the territory such that a suit would not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). While there has been some relaxation in the standards of personal jurisdiction, the Supreme Court has noted that it

6

would be "a mistake to assume that this trend heralds the eventual demise of all restrictions on . . . personal jurisdiction." Hanson v. Denckla, 357 U.S. 235, 250-51 (1958).

Personal jurisdiction comes in two flavors: (1) general jurisdiction and (2) specific jurisdiction. General jurisdiction may be established if the defendant's activities in the territory meet the demanding standard of "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984); ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). General jurisdiction may be used to maintain a suit against a defendant even when it does not arise out of the defendant's activities in the forum state. ALS Scan, 293 F.3d at 712. In contrast specific jurisdiction allows for a suit to be maintained only when the defendant's contacts with the forum are also the basis for the suit. Id. To determine if specific jurisdiction exists, a court must consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiffs' claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003); ALS Scan, 293 F.3d at 711-12.

7

Here, the parties do not dispute that Defendant's actions were not "continuous and systematic" enough to create general jurisdiction over him. Thus, the Court must determine whether there is specific jurisdiction. The Court will analyze whether the Websites' contacts with Virginia, and the United States as a whole, were sufficient to establish specific jurisdiction as those are the contacts from which this action arises. Carefirst of Maryland, 334 F.3d at 397 (second prong requiring the action to arise out of the contacts with the forum).

The Court must first consider whether the contacts Defendant had with Virginia and the United States through the Websites constitutes purposeful availment. Id. Purposeful availment is required so that one is not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Purposeful availment cannot be satisfied by the unilateral activity of those who claim some relationship with a nonresident defendant. Kulko v. Superior Court of California In and For City and County of San Francisco, 436 U.S. 84, 93-94 (1978) (quoting Hanson, 357 U.S. at 253). Instead, a defendant must "purposefully direct," Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), its actions towards a forum in order to be found to have purposely availed itself of "'the benefits and protections' of the forum's laws," Burger King Corp., 471

8

U.S. at 476. There must be knowing direction of harm towards the forum state to satisfy this prong. Calder v. Jones, 465 U.S. 783, 790 (1984).

An interesting question of purposeful availment arises in the context of the internet where websites are accessible globally. The Fourth Circuit has stated that a state may exercise judicial power over a non-resident when that person "(1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the state, and (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts." ALS Scan, 293 F.3d at 714. This protects individuals with passive websites or those who do not direct electronic activity into a forum with the manifest intent of engaging business there. Id. To provide guidance in this arena, the Fourth Circuit has adopted the sliding scale test from Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Penn. 1997). ALS Scan, at 713

The Zippo test provides three categories in which to place websites: (1) interactive, (2) semi-interactive, and (3) passive. 952 F. Supp. at 1124. An interactive website is one through which a foreign defendant enters into contracts with residents of the state "that involve the knowing and repeated transmission of computer files." Id. Interactive websites are

9

generally a proper basis for personal jurisdiction. Id. On the other end of the scale are passive sites which merely post information on the internet and are accessible by users in foreign jurisdictions. Id. Passive websites are improper bases for jurisdiction. Id. Finally, semi-interactive websites are somewhere in the middle because "there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer." Carefirst of Maryland, 334 F.3d at 399. A court must examine "the level of interactivity and commercial nature of the of the exchange of information" occurring on the website to make a proper jurisdictional analysis. Zippo, 952 F. Supp. at 1124.

The Fourth Circuit has made it clear that personal jurisdiction requires purposeful targeting of a forum with manifest intent to engage in business there. ALS Scan, 293 F.3d at 714; Graduate Mgmt. Admission Council v. Raju (GMAC), 241 F. Supp. 2d 589, 594 (E.D. Va. 2003). An evaluation of the contacts in this case points to the absence of personal jurisdiction due to a lack of purposeful targeting of either Virginia or the United States.

To begin, the Websites are semi-interactive. They allow users to share information with the host and for files to be downloaded, but there is not a significant or prolonged

engagement between the user and the Websites. See, e.g., Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com, 128 F. Supp. 2d 340 (E.D. Va. 2001) (finding an online gambling site on which users could play online games for significant periods of time to be highly interactive). Also, there is no evidence that users exchanged multiple files with the Websites. See, e.g., Bright Imperial Ltd. v. RT MediaSolutions, S.R.O., No. 1:11-cv-935, 2012 WL 1831536 (E.D. Va. May 18, 2012) (finding a site to be highly interactive when it contracted with individuals to make and send multiple videos for posting on the site). Plaintiffs attempt to describe the Websites as highly interactive due to the million of users. This is incorrect because the number of users cannot make a website highly interactive, there must instead be numerous transactions between the site and a user evidencing an ongoing relationship. Id. at *5. Here, there is no ongoing relationship as the Terms of Use state that the files transmitted between the Websites and users are only stored until the user has downloaded them. Cf. Bright Imperial, 2012 WL 1831536 at *1-2 (highly interactive site stored video files for future viewing by other users). Further, users do not need to create an account, sign in, or register in order to use the Websites. This want of an ongoing, developed relationship between users and the Websites leads to a finding that the Websites are semi-interactive.

11

Next, the relationship between the Websites and the users is not based on a commercial contract. While users of the Websites must agree to the Terms of Use, the Websites are free to use. Defendant does earn money from the sale of advertising space on the Websites, but all of this money comes from third party advertisers who Defendant does not deal with directly. The revenue from the advertisements cannot be the basis for finding a commercial relationship with the users because they are separate interactions and the due process analysis must only look at the acts from which the cause of action arises, here, the alleged aid in music piracy. Carefirst of Maryland, 334 F.3d at 397.

Finally, Defendant took no action through the Websites that would demonstrate purposeful targeting of Virginia or the United States. Defendant does not advertise the Websites in either forum, nor does Defendant provide specific instructions or advice to users in either forum. Cf. GMAC, 241 F. Supp. 2d at 598 (finding Rule 4(k)(2) jurisdiction when website had specific ordering instructions for U.S. customers). The contact that users have with the Websites is unilateral in nature and as such cannot be the basis for jurisdiction without more. Kulko, 436 U.S. at 93-94. Users may access the Websites from anywhere on the globe and they select their location when they use the Websites. Plaintiffs make the contention that Defendant's

tracking of where the users are located and use of geo-targeted advertisements demonstrates that he was targeting Virginians and Americans. This is an attenuated argument as tracking the location of a user does not show targeting of the user or their location; instead it is merely a recording of where the user's unilateral act took place. See, e.g., Intercarrier Communications LLC v. WhatsApp Inc., 3:12-cv-776, 2013 WL 5230631, at *4 (Sept. 13, 2013 E.D. Va.) (finding no personal jurisdiction based on unilateral acts of users even where the defendant could users' track locations). Even if the Websites' servers knew exactly where the users were located, any interaction would still be in the unilateral control of the users as they initiate the contacts. See Zaletel v. Prisma Labs, Inc., 226 F. Supp. 3d 599, 610 (E.D. Va. 2016) (finding user-initiated contact to be fortuitous and not arising out of defendant created contacts with the forum). It is clear that Defendant did not take any actions which purposefully targeted Virginia or the United States.

As the Websites are semi-interactive, the interactions with the users are non-commercial, and there were no other acts by the Defendant that would demonstrate purposeful targeting, the Court finds that Defendant did not purposefully avail himself of the benefits and protections of either Virginia or the United States. Due to this finding, the Court does not need to engage

in a reasonability analysis. The Court finds that exercise of personal jurisdiction over Defendant would be unconstitutional as a violation of due process under either Rule 4(k)(1) or 4(k)(2).

Due to the Court's finding that personal jurisdiction is absent under either section of Rule 4(k), the Court need not address whether transfer to the Central District of California would be appropriate as that venue would also be without jurisdiction.

For the reasons mentioned, the Court concludes that it is without personal jurisdiction over Defendant. Dismissal is granted to Defendant on all counts. An appropriate order shall issue.

*/s/ Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 22, 2019