**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UMG RECORDINGS, INC.; CAPITAL RECORDS, LLC; WARNER BROS. RECORDS INC.; ATLANTIC RECORDING CORPORATION; ELEKTRA ENTERTAINMENT GROUP, INC.; FUELED BY RAMEN, LLC; NONESUCH RECORDS INC.; SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT US LATIN LLC; ARISTA RECORDS LLC; LAFACE RECORDS LLC; and ZOMBA RECORDING LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TOFIG KURBANOV d/b/a FLVTO.BIZ and 2CONV.COM;<br>And DOES 1-10,<br><br>    Defendants. | **Case No.**<br>**1:18-CV-00957-CMH-TCB** |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION**
**FOR PARTIAL RECONSIDERATION**

*"In order to constitute a manifest injustice and thus provide proper grounds for a motion for reconsideration, a prior decision may not be 'just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'"*

> *Harrell v. Freedom Mortg. Corp.*, 2019 U.S. Dist. LEXIS 231638, at *4 (E.D. Va. Mar. 12, 2019)

**Background**

On October 1, 2018, Defendant Tofig Kurbanov, a Russian citizen, filed a motion to

dismiss Plaintiffs' complaint for a lack of personal jurisdiction.  On January 22, 2019, this Court

granted Mr. Kurbanov's motion to dismiss.  Plaintiffs appealed and, on June 26, 2020, the Fourth

Circuit reversed and remanded to this Court.  Mr. Kurbanov filed a timely Petition for Rehearing

*En Banc*, which the Fourth Circuit denied on July 24, 2020.

On September 16, 2020, Mr. Kurbanov moved this Court to stay proceedings pending: (a)

this Court's consideration of the third-factor of the constitutional jurisdictional test, as instructed

by the Fourth Circuit, and (b) the resolution of Defendant's (then-anticipated) petition to the

United States Supreme Court for *certiorari*.  Mr. Kurbanov incorporates his Motion to Stay by

reference herein.

On September 18, 2020, this Court allowed Mr. Kurbanov's motion for a stay.  On

September 30, 2020, Plaintiffs filed their motion for partial reconsideration.[1]

On October 12, 2020, Mr. Kurbanov filed his petition for certiorari with the Supreme

Court, a copy of which is attached hereto as Exhibit 1.

In support of this Opposition, Mr. Kurbanov states as follows:

**Argument**

In their Motion for Reconsideration, Plaintiffs first acknowledge, as they must, that this

Court has the inherent power to control its own docket and set deadlines as it sees fit in its

discretion.  Only then they pivot and argue that this Court cannot, in reality, control its own

docket or set reasonable deadlines as it has done here.  In support of this surprising proposition,

Plaintiffs argue: (1) that 28 U.S.C. §2101(f) prevents this Court from issuing a reasonable stay;

---

[1] Plaintiffs conceded in the Motion that a stay is appropriate to allow this Court time to issue a
decision concerning the due process reasonability analysis required by the Fourth Circuit's order
of remand.  Plaintiffs seek reconsideration only of the Court's order to the extent that it also stayed
proceedings pending a resolution of Defendant's cert petition.

(2) the so-called "mandate rule" precludes the Court having issued a stay; and (3) that the stay

was improvidently granted.  None of these arguments are correct.

Preliminarily, it bears noting that in a Motion filled with pearl-clutching over Mr.

Kurbanov's supposed failure to invoke Section 2101(f) in his motion, Plaintiffs have failed to

discuss the extent of the burden placed on a party seeking reconsideration of a court's order.

Plaintiffs claim they are entitled to reconsideration primarily because of an alleged error of law.

"However, '[a] disagreement with the Court's resolution of the legal issues is a far cry from 'a

clear error of law.'...  In order to constitute a manifest injustice and thus provide proper grounds

for a motion for reconsideration, a prior decision may not be 'just maybe or probably wrong; it

must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.  It must be

dead wrong.'"  *Harrell v. Freedom Mortg. Corp.*, 2019 U.S. Dist. LEXIS 231638, at *4 (E.D.

Va. Mar. 12, 2019) (quoting *U.S. Tobacco Coop. v. Big South Wholesale of Virginia, LLC*, 899

F.3d 236, 258 (4th Cir. 2018)).  It is a standard Plaintiffs cannot hope to meet, nor have they tried

to meet.

**I.      Section 2101(f) Did Not Preclude Mr. Kurbanov's Motion.**

Plaintiffs' first (and primary) argument for reconsideration is that (a)  Section 2101(f)

governs applications for stays pending a petition for *certiorari*, (b) motions under Section

2101(f) are to be directed either to the circuit court whose order is being appealed or the

Supreme Court, and (c) this Court has no jurisdiction to issue an order under Section 2101(f).

Plaintiffs, however, are only partially correct.  While it is true that motions under Section 2101(f)

can only be directed to the applicable circuit court or the Supreme Court, Plaintiff has

misunderstood both the inapplicability of Section 2101(f) to the present matter and this Court's

continuing ability to control its trial docket upon remand from the Fourth Circuit.

First, it is far from clear that Section 2101(f) is applicable to the present circumstance at all.  Section 2101(f) provides, in relevant part, that:

> In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court....

8 USCS § 2101(f).

As other district courts have held, Section 2101(f) is not necessarily applicable to an order from the circuit court that does not put an end to the case itself.  *See*, *e.g.*, *United States v. Sample*, 2018 U.S. Dist. LEXIS 212788, at *4 (D.N.M. Dec. 18, 2018) (rejecting government's argument that stay could only be granted under §2101(f) because the remand from the circuit court "was not a 'final judgment or decree' because it did not end the case and required further proceedings" and because the district court "has discretion in controlling its docket").

Even if this were not the case, Section 2101(f) was simply not the correct vehicle for the relief sought, nor did it preclude this Court's allowance of Mr. Kurbanov's motion.  Section 2101(f), by its explicit terms, is aimed at situations in which a party is requesting a stay of *the execution and enforcement of the Circuit Court's judgment or decree.*  In the present case, the Fourth Circuit's decree did nothing more than order the present case reinstated to this Court's docket (with instructions for this court to first issue a decision concerning the due process reasonability analysis).

Far from seeking a stay of the Fourth Circuit's judgment or decree, Mr. Kurbanov's motion was premised on the very fact that, once the matter was returned to this Court's docket, this Court once again had the inherent power to structure the timing of discovery as it deemed proper.  And – as numerous District Courts have held – that inherent power includes the ability

4

to stay proceedings pending a resolution of a party's *certiorari* petition, the exercise of which is

entirely consistent with a remand for further proceedings.  *See*, *e.g.*, *Black & Veatch Corp. v.*

*Aspen Ins. (UK) Ltd.,* 2018 U.S. Dist. LEXIS 73013, at *5 (D. Kan. May 1, 2018) ("[T]he court

concludes that the Excess Insurers are not asking this court to exercise authority it does not have.

The motion is not requesting this court to stay the enforcement or execution of any judgment by

the Tenth Circuit.  The case was remanded for proceedings in accordance with the court's

opinion.  Entering a scheduling order for the submission of new cross-motions for summary

judgment that accounts for their filing and the pendency of a petition for writ of certiorari does

not contravene the Tenth Circuit's mandate or 28 U.S.C. § 2101(f)."); *Citibank, N.A. v. Stok &*

*Assocs., P.A.*, 2010 U.S. Dist. LEXIS 153436, at *3 n.1 (S.D. Fla. Dec. 15, 2010) (rejecting

plaintiff's argument that litigation could only be stayed for defendant's petition for certiorari

under Section 2101(f) after remand from the Eleventh Circuit, because the district court has

"broad discretion" to "briefly stay the litigation of further proceedings in order to resolve an

action in the most efficient manner").

Indeed, it can hardly be debated that, in the ordinary course of managing its docket, a

district court may stay proceedings to allow a party to seek a grant of *certiorari* from the

Supreme Court.  *See*, *e.g.*, *Walker v. Monsanto Co. Pension Plan*, 472 F.Supp.2d 1053, 1054-55

(S.D. Ill. 2006) (considering plaintiffs' "request a stay of a few months' duration pending

resolution by the Supreme Court of the United States of a petition for writ of certiorari," holding

that the "power to grant a stay is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants," and noting that "[s]uch stays are entered quite routinely"); *Peaceable Planet, Inc.*

*v. Ty, Inc.*, 2004 U.S. Dist. LEXIS 13006, at *5 (N.D. Ill. July 12, 2004) (granting defendants'

motion to stay proceedings pending resolution of defendants' cert petition because, "considering

the relatively short amount of time anticipated to resolve the pending writ of certiorari, granting

Defendants' stay is the more efficient procedure"); *NGV Gaming, Ltd. v. Harrah's Operating*

*Co.*, 2008 U.S. Dist. LEXIS 96833 (N.D. Cal. Nov. 18, 2008) (invoking the Court's inherent

power to stay proceedings pending resolution of cert petition and holding that, "although far

from a sure thing," a circuit split "would tend to increase the prospect for review ... by the

Supreme Court," making a stay appropriate); *Cherny v. AT&T*, 2010 U.S. Dist. LEXIS 74502

(C.D. Cal. Feb. 8, 2010) (allowing defendant's motion for a stay of proceedings pending a

decision from the Supreme Court on defendant's cert petition in a related matter because the

delay would be limited and denying such a stay would deprive defendant of the benefit of their

argument that the court lacked jurisdiction as the dispute is subject to an arbitration agreement).

      Nor do the cases cited by Plaintiffs compel a contrary result as they involved scenarios

distinguishable from the present case. *See*, *e.g.*, *In re Time Warner Cable, Inc.*, 470 F.App'x 389,

390 (5th Cir. 2012) (although the court expressed concern that, where the case had been pending

for 7 years and the Fifth Circuit had ordered that the matter be handled "expeditiously" upon

remand, it nonetheless refused plaintiffs' request for a mandamus order to the district court);

*Merchant v. Fairfax Cty.*, *Va.*, 2012 WL 12830388, at *1 (E.D. Va. Sept. 18, 2012) (court

declines to issue stay requested one month before the start of trial, finding that such a stay would

contradict the mandate of the circuit court); *United States v. Lentz*, 352 F.Supp.2d 718, 726 (E.D.

Va. 2005) (acknowledging "that § 2101(f) does not explicitly preclude a district court from

issuing such a stay," but finding such a stay inappropriate where *the defendant had explicitly*

*moved for such a stay under §2101(f) and the Fourth Circuit had denied defendant's motion*);

*United States v. Kotmair*, 2008 WL 11509293, at *1 (D. Md. Jan. 15, 2008) (finding it could not

stay the Fourth Circuit's mandate which affirmed a grant of summary judgment dismissing the entire case, particularly where the Fourth Circuit itself had denied a request to stay the issuance of its mandate); *United States v. Foster*, 2012 WL 1259166, at *1 (W.D. Va. Apr. 16, 2012) (declining to issue a stay of defendant's resentencing in a criminal case where the Court concluded that such a stay would violate the spirit of the circuit court's mandate).

Ironically, one of the cases cited by Plaintiffs in support of their contention that this Court could not issue a stay of proceedings pending the resolution of Mr. Kurbanov's cert petition proves the opposite. In *In re Stumes*, 681 F.2d 524 (8th Cir. 1982), the Eighth Circuit considered a stay of proceedings that the District Court had issued, purportedly under Section 2101(f). And, while the Court found that the district court did not have the authority to issue such a stay *under Section 2101(f)*, it nonetheless found the district court's stay to be a proper exercise of the district court's discretionary power to set its own deadlines following a remand:

> The District Court's stay order of May 10, 1982, in effect does no more than hold that the reasonable time within which Stumes should be retried should be determined with the fact in mind that the State has applied for review in the Supreme Court. The District Court, in other words, seems to have taken the view that it would be unreasonable to release petitioner, or to require that the State begin to try him again, before the Supreme Court has acted on the State's petition. Certainly this is not an unreasonable view, and we are not prepared to say that the District Court abused its discretion, though, as indicated above, we cannot agree with its reliance upon 28 U.S.C. Section 2101(f).

*Id.* at 525.

In summary, this Court was well within its rights to issue a stay of proceedings pending the resolution of Mr. Kurbanov's cert petition. This Court's order was not an "error of law" at all, much less a decision that was "dead wrong."

**II.     The "Mandate Rule" Did Not Require a Different Result.**

Plaintiffs next argue that, pursuant to the "mandate rule," this Court lacked the ability to grant Mr. Kurbanov's motion for a stay.  Here, too, Plaintiffs are seriously mistaken.

As Plaintiffs correctly note, the mandate rule generally requires a district court to "implement both the letter and spirit of the ... mandate."  *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).  As the Fourth Circuit held in *Bell*, the "'mandate rule' is merely a 'specific application of the law of the case doctrine,' ... [that] forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *Id.*

Plaintiffs also concede that "the Fourth Circuit's mandate did not expressly reject or preclude a stay...."  Plaintiffs' Motion, p. 7.  That concession is, of course, the end of Plaintiffs' argument.  "Law of the case principles do not bar a district court from acting unless an appellate decision has issued on the merits of the claim sought to be precluded."  *Thompson v. Colorado,* 60 F.App'x 212, 214 (10th Cir. 2003).  *See*, *also*, *Harte v. Bd. of Comm'rs*, 2017 U.S. Dist. LEXIS 172819, at *10-11 (D. Kan. Oct. 19, 2017) ("Regardless of whether §2101(f) or the mandate rule precludes the court from granting a stay pending defendants' certiorari petition, the court agrees with defendants that the court, without deviating from the Circuit's mandate, has the inherent authority to manage its trial docket and to schedule the trial of this case at its discretion—even if that trial setting occurred after resolution of the defendants' anticipated certiorari petition."); *United States v. Sample*, *supra* at *5-6 ("Defendant argues, however, that the Tenth Circuit's mandate required resentencing, but did not impose any timetable for that resentencing.  Defendant also contends that a district court has the power to stay proceedings generally and control its docket.  The Court agrees with Defendant that it has discretion in controlling its docket and scheduling the resentencing."); *Black & Veatch Corp.*, *supra* at *5

8

("The case was remanded for proceedings in accordance with the court's opinion. Entering a scheduling order for the submission of new cross-motions for summary judgment that accounts for their filing and the pendency of a petition for writ of certiorari does not contravene the Tenth Circuit's mandate.").

Indeed, by returning the matter to this Court for further proceedings, the Fourth Circuit impliedly restored to this Court all of its powers (inherent and otherwise) to control its own docket. Plaintiffs, however, cite *In re A.F. Moore & Assocs.*, 2020 U.S. App. LEXIS 28706 (7th Cir. Sep. 10, 2020), claiming that the case stands for the proposition that "remanding the case for further proceedings requires that the case be reopened and move forward at an ordinary pace." Plaintiffs' Motion, p. 7. Putting aside the fact that this argument would mean that a district court has no power to set its own schedule for a case that has been remanded, *A.F. Moore* stands for nothing of the sort. In *A.F. Moore*, defendants moved the circuit court for a stay of proceedings, which the court explicitly denied. The Court there held that the mandate rule precluded the district court from providing the very relief explicitly denied by the circuit court:

> mindful that the taxpayers had already spent a decade trying to litigate these claims in state court, and judging the Supreme Court unlikely to grant certiorari, much less to reverse our judgment, we expressly denied the defendants' request that we stay our remand pending their petition for a writ of certiorari. The district court was powerless to reconsider our decision on this matter and grant what we had withheld.

*Id.* at *6.

As Plaintiffs have themselves conceded, the Fourth Circuit's remand neither precluded nor rejected a stay of proceedings pending the resolution of Mr. Kurbanov's certiorari petition. Accordingly, the mandate rule did not preclude this court's allowance of a stay and reconsideration is not warranted.

9

**III.** **This Court Properly Found that the Test for a Stay Was Met.**

Finally, Plaintiffs argue (somewhat halfheartedly) that this Court reached the wrong result in weighing the relevant factors to determine if a stay of proceedings was warranted. Plaintiffs' disagreement with the Court's conclusions, of course, is not grounds for reconsideration.  *See*, *e.g.*, *Jervis v. Perry*, 2018 U.S. Dist. LEXIS 110811, at \*16-17 (E.D. Va. July 2, 2018) ("Relief under Rule 59(e) is available only '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993))).

Mr. Kurbanov presented the Court with extensive arguments in support of his Motion to Stay, which he will not repeat here but instead incorporates by reference.  Mr. Kurbanov will, however, respond briefly to the arguments made by Plaintiffs in their Motion for Partial Reconsideration.

A.      Likelihood of Success on the Merits

As Mr. Kurbanov argued in his original motion, in the context of a motion to stay pending an appeal, the movant need only demonstrate that "there is a strong likelihood that the issues presented on appeal *could be rationally resolved* in favor of the party seeking the stay."  *Northrop Grumman Tech. Servs.*, *supra* at \*6 (emphasis in original) (quoting *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995)).

Now that Mr. Kurbanov has actually filed his cert petition, his argument on this front is even stronger than when this Court granted his motion for a stay.

In their Motion for Reconsideration, Plaintiffs choose to ignore this caselaw and argue instead that Mr. Kurbanov has "not demonstrated that the Supreme Court is likely to grant a

10

petition for certiorari...."  Plaintiffs' Motion, p. 8.  But, this is simply not the standard to be

applied by the Court.  Mr. Kurbanov was required to show that there was a strong likelihood that

the issues presented on appeal could be rationally resolved in his favor; he did so; and Plaintiffs

do not argue to the contrary.

    B.    Irreparable Harm

    As Mr. Kurbanov argued in his motion, Mr. Kurbanov has a *constitutional right* not to be

subjected to proceedings in jurisdictions which do not have personal jurisdiction over him.  If

Mr. Kurbanov is required to participate in proceedings in a court that lacks such jurisdiction, the

right afforded to him will have been forfeited and any success in petitioning the Supreme Court

would be pyrrhic in nature.  *See*, *e.g.*, *Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC*,

2016 U.S. Dist. LEXIS 78864, at \*10 (E.D. Va. June 16, 2016) ("[A] stay is appropriate to

prevent rendering the statutory right to appeal 'hollow.'" (and cases cited therein)).  This is, then,

precisely the type of irreparable harm that the Court should (and did) consider in weighing the

relative harms to the parties.

    Plaintiffs ignore this portion of Mr. Kurbanov's argument, however, and instead focus

solely on Mr. Kurbanov's argument that he might be needlessly subjected to the expenses

associated with litigation in the United States if a stay is not granted.  Plaintiffs point out that

monetary damages are not typically considered to be "irreparable harm" as they can be remedied

with a monetary award.  In this context, Plaintiffs' argument is disingenuous at best.

    Plaintiffs are correct that monetary damages are not typically considered to be

"irreparable," but that applies only to situations in which the party incurring the monetary

damages has an avenue to recover them through the litigation.  In the present case, if Mr.

Kurbanov were to incur substantial costs and fees in connection with participating in discovery

11

in a court that lacked jurisdiction over him, he would have no means to recover such damages

even if the Supreme Court were to ultimately rule in his favor.  The amounts incurred would be

unrecoverable under the American system and, as such, do indeed constitute irreparable harm.

> C.     Lack of Injury to Plaintiffs

Displaying a remarkable degree of hypocrisy, Plaintiffs next argue that they will be

"irreparably harmed" if a stay is granted because (they allege) the continued operation of the

Websites is causing them financial harm.  This, however, *is* precisely the type of harm that *can*

be remedied by an award of damages.  Indeed, these are precisely the damages sought by

Plaintiffs in the present action.  And, as Plaintiffs themselves argue, such recoverable monetary

damages are not "irreparable" for purposes of the present analysis.

Two other points merit brief response:

1.     Plaintiffs again point to the raw numbers of visitors to the Websites as if those

numbers have any actual relevance to Plaintiffs claimed damages.  They do not.  The simple fact

that a person has visited one of the relevant Websites does not mean that: (a) the person has

utilized the Websites' functionality to download an audio track; (b) the visitor downloaded a

music track; (c) the visitor downloaded a music track owned by Plaintiffs; (d) the visitor

downloaded a music track owned by Plaintiffs under circumstances not covered by fair use; (e)

Mr. Kurbanov was somehow legally responsible for such download; or (f) Plaintiffs suffered any

actual injury as a result of the download (*i.e.* that the user would have otherwise acquired the

audio track in a way that would have benefitted Plaintiffs).

Even if Plaintiffs' claimed monetary damages could constitute "irreparable harm" (which

they clearly cannot), then Plaintiffs have done nothing to demonstrate to this Court that they have

actually incurred (or would continue to incur) such damages if the stay ordered by the Court were allowed to stand.

2.      Although largely irrelevant to their motion, Plaintiffs nonetheless breathlessly claim that the Websites at issue "have caught the attention of the United States government," citing to an excerpt from the government's "annual report on Notorious Markets for Counterfeiting and Piracy."  Plaintiffs' Motion, p. 11.  This is – to put it mildly – highly misleading.  As Plaintiffs are well-aware, the process by which entities get named in the government's report is by "nomination," primarily from self-interested industry groups.[2]  What Plaintiffs have not told this Court is that the Websites at issue here were "nominated" for inclusion in the report by Plaintiffs' own lobbying arm, the Recording Industry Association of America ("RIAA").  *See*, *e.g.*, Exhibits 2 and 3.  In other words, Plaintiffs themselves (through their lobbying arm), managed to get the Websites included in the government report and now point to the same report as "proof" that the Websites "have caught the attention of the United States Government."  And, as the report itself acknowledges (not in the limited excerpt provided to the Court by Plaintiffs), inclusion in the report "does not constitute a legal finding of a violation or an analysis of the general IP protection and enforcement environment in any country or economy."  2019 Review of Notorious Markets for Counterfeiting and Piracy, p. 12.  A complete copy of the 2019 Report is attached hereto as Exhibit 4**.**

4.      Public Interest

Finally, although it is certainly true that a public interest exists in protecting the property rights of copyright owners, there is a much more compelling *constitutional* right in protecting a

---

[2] Smaller entities such as the Websites at issue here may never know that they have been "nominated" and may not have the resources to file a rebuttal to protest their having been so accused.

13

defendant's due process interests at issue here.  In balancing those two rights – and in

considering the potential effects of a brief stay as contemplated by Mr. Kurbanov's motion – this

Court properly concluded that a stay was warranted.  Plaintiffs have presented no reason to

reconsider that decision.

## Conclusion

For the reasons stated hereinabove, the Court should deny Plaintiffs' Motion for

Reconsideration.

Respectfully Submitted,

**TOFIG KURBANOV**

By Counsel

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger (VSB No. 40163)
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
jgeiger@sandsanderson.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
vgurvits@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Evan@CFWLegal.com

14

/s/ Matthew Shayefar
Matthew Shayefar (*Pro hac vice*)
LAW OFFICE OF MATTHEW SHAYEFAR, PC
925 N La Brea Ave
West Hollywood, California 90038
Telephone: 323-948-8101
matt@shayefar.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of October, 2020, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing to the following:

Michael K. Lowman, Esquire
Jenner & Block LLP
1099 New York Ave, NW
Suite 900
Washington, DC 20001-4412
Email: mlowman@jenner.com
*Counsel for Plaintiffs*

Kenneth L. Doroshow, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: kdoroshow@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Alison I. Stein, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: astein@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Jonathan A. Langlinais, Esquire
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Email: jlanglinais@jenner.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Matthew J. Oppenheim, Esquire
Oppenheim + Zebrak, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Email: matt@oandzlaw.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Lucy G. Noyola, Esquire
Oppenheim + Zebrak, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC  20016
Email:  lucy@oandzlaw.com
*Counsel for Plaintiffs (admitted pro hac vice)*

Kellyn Goler, Esquire
Oppenheim + Zebrak, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC  20016
Email:  kellyn@oandzlaw.com
*Counsel for Plaintiffs (admitted pro hac vice)*

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger