UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:18-cv-00957-CMH-TCB |
| KURBANOV, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiffs respectfully request an order compelling Defendant Tofig Kurbanov ("Defendant") to produce: (1) documents Defendant initially agreed to produce but is now withholding, (2) documents Defendant claims do not exist but undoubtedly must exist, and (3) unredacted versions of documents Defendant produced with improper redactions.

As set forth below, although Defendant initially produced some documents, he now appears to have decided that he will no longer participate in producing responsive documents, including information that his counsel has acknowledged exists and is relevant. Indeed, Defendant's counsel has explained that Defendant has responsive documents that are outstanding but will not provide them to his counsel. Moreover, among the documents that Defendant has produced, he has improperly redacted information in an attempt to conceal relevant information about the identities of those involved in his illegal scheme and the money trail from the massive piracy facilitated by Defendant's Websites.

1

Defendant's actions are untenable and contrary to basic discovery obligations under Federal Rules of Civil Procedure 26 and 34. Plaintiffs respectfully request that the Court compel Defendant to produce documents responsive to the requests that are the subject of this motion.

## BACKGROUND

Plaintiffs are record companies that create, produce, distribute, and license the vast majority of all legitimate commercial sound recordings in the United States. ECF No. 1, Complaint, ¶ 1. Defendant owns and operates www.FLVTO.biz and www.2conv.com (collectively, "Defendant's Websites" or "the Sites")—music piracy websites that engage in and facilitate copyright infringement at a staggering scale. *Id.* These websites provide users an unlawful "stream-ripping" service that converts authorized video streams from third-party platforms, such as YouTube, to unauthorized downloadable audio files. *Id.* ¶ 2. Stream-ripping provides a means for easy, instantaneous, and rampant infringement of copyrighted sound recordings, including those owned by Plaintiffs. *Id.*

Plaintiffs allege that Defendant is directly, contributorily, and vicariously liable for infringement of their copyrighted sound recordings. Plaintiffs also allege that Defendant has circumvented technological protective measures that YouTube implemented to control access to and copying of copyrighted works, in violation of Section 1201 of the Copyright Act.

## ARGUMENT

**I.      Defendant Should Be Ordered to Produce Documents He Agreed to Produce.**

Defendant is improperly withholding documents that are responsive to Plaintiffs' Request for Production Nos. 13, 18-19, 28–29, 37, 39, 43, and 48. Defendant previously agreed to produce—but has not produced—documents responsive to the following requests:

Request No. 13: Documents sufficient to show, on a yearly basis, the number of Users of Defendant's Websites in the United States, and the number of visits to Defendant's Websites by those Users.

Request No. 18: All documents or communications concerning the Digital Millennium Copyright Act ("DMCA") or alleged copyright infringement in connection with Defendant's Websites, including all communications concerning infringement notices.

Request No. 19: Documents sufficient to identify each infringement notice You have received alleging infringement of one or more copyrighted sound recordings in connection with Defendant's Websites, including the date of the infringement notice, the sound recording(s) allegedly infringed, the website recipient, and the rights holder on behalf of whom the infringement notice was sent.

Request No. 28: All documents concerning any data, reports, logs, or other information from current or former advertising brokers for Defendant's Websites, including concerning the identity or location of the broker and payments from the broker.

Request No. 29: All documents concerning any agreements, communications, data, or payments relating to AdsTerra, Propeller Ads, MGID, AdSupply, Advertise.com, Adcash, Taboola, DoubleClick, RevContent, AddThis, Mycdn, Clksite, Mybestmv, Pushnice, or Google.

Request No. 37: All documents concerning any alleged non-infringing uses of Defendant's Websites or uses of Defendant's Websites to convert video streams of non-copyrighted content from Source Sites into downloadable audio files.

Request No. 39: All documents concerning any policy applicable to Users, including a copy of each version of the Terms of Use and privacy policies for Defendant's Websites, any repeat infringer policy, and any documents that describe the implementation of such policies.

Request No. 43: Documents sufficient to show Your total and average revenues, costs, and profits, by year and quarter, in connection with Defendant's Websites.

Request No. 48: All documents supporting, refuting, or otherwise concerning Your affirmative defenses or any other defenses in this case.

Ex. A at 9, 11–12, 16–17, 21–22, 24, 26–27.[1]

---

[1] All exhibits are attached to the Declaration of Lucy Grace D. Noyola ("Noyola Decl."), filed contemporaneously with this motion.

3

These requests seek information that is plainly relevant to the core claims and defenses in this case, including the scope and extent of infringement, Defendant's financial benefit from infringement, and Defendant's affirmative defense that users use his Sites for non-infringing uses. In his written objections and responses to these requests, Defendant did not challenge the relevance of this information. And there is no doubt that responsive documents exist. Indeed, Defendant initially began producing responsive documents. But, for reasons that Defendant has failed to explain, he has changed course mid-stream. Defendant now refuses to produce additional responsive documents in his possession, custody, or control even as his counsel acknowledges that these documents exist. In fact, counsel for Defendant stated by email that "there are other documents responsive to the RFPs (as specified in our Responses) [that] do exist, the Defendant has not provided them to us and we have now concluded that he will not provide them." Noyola Decl., ¶ 4; Ex. B at 2; *see also id.* at 1 (reiterating "we are not going to be able to provide you with any additional documents"). In a subsequent telephonic conferral, for Defendant's counsel confirmed his client's refusal to produce existing responsive documents and provided no explanation for Defendant's withholding of documents.[2] Noyola Decl., ¶ 5.

It appears that Defendant has simply determined that he will no longer participate in the production of documents. Defendant's refusal to participate further in discovery is improper. Defendant cannot participate in discovery in ways that are convenient only for him.[3] Defendant

---

[2] Defendant's counsel later produced some responsive documents that counsel downloaded or copied from Defendant's Websites. Noyola Decl., ¶ 6 & Ex. C. But that production is not a substitute for the documents in Defendant's own possession, custody, or control that he had agreed to produce. Nor does that production include the documents that are the subject of this motion.

[3] Just days before refusing to produce additional documents, Defendant served Plaintiffs interrogatories and requests for production of documents, seeking many of the same documents Plaintiffs seek from Defendant. Noyola Decl., ¶ 7.

4

should be ordered to produce documents responsive to Plaintiffs' Request for Production Nos. 13, 18–19, 28–29, 37, 39, 43, and 48—all of which Defendant previously agreed to produce.

## II.   Defendant Should Be Ordered to Produce Other Responsive Documents in His Possession, Custody, or Control.

Defendant is also improperly withholding documents responsive to Plaintiffs' Request for Production Nos. 35, 36, and 38 that are in his possession, custody, or control. These requests seek communications with the users of Defendant's Websites regarding topics directly relevant to this lawsuit, as well as documents regarding Defendant's affirmative defense that people use Defendant's Websites for non-infringing purposes:

> Request No. 35: All communications with Users concerning copyright or the legality of Defendant's Websites, converting video streams from Source Sites into downloadable audio files, or stream ripping.
>
> Request No. 36: All communications with Users concerning the use of Defendant's Websites for stream ripping, converting video streams from Source Sites into downloadable audio files, or downloading or obtaining audio files.
>
> Request No. 38: All documents substantiating allegations that: (a) professors or students use Defendant's Websites to download the audio portions of lectures for later reference and playback; (b) bands use Defendant's Websites to download the audio tracks from their live performances that they have captured on video; or (c) parents use Defendant's Websites to download the audio portion of a school concert that they recorded.

Ex. A at 20–22. Defendant states or indicates that he has no responsive documents in his possession, custody, or control, *id.*, but that response is not plausible.

Plaintiffs' Request for Production Nos. 35 and 36 seek Defendant's communications with users of the Sites. As the Fourth Circuit noted, Defendant's Websites are "among the most popular websites of any kind on the Internet," attracting over 300 million visitors from around the world. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349 (4th Cir. 2020). Defendant's Websites rely on user engagement, providing forms and email addresses to contact the Sites for support, to provide feedback, and to submit copyright infringement notices. Ex. D; Ex. E at 7;

5

Ex. F; Ex. G at 7.  Defendant's Websites also have social media accounts, including on Facebook and Twitter, where users can post comments and questions about the Sites.  Ex. H–K.  Given the large number of users of Defendant's Websites, it is not credible for Defendant to suggest that he has no responsive documents.  User communications must exist, and Defendant should produce them.

With respect to Plaintiffs' Request for Production No. 38, Defendant has alleged, as an affirmative defense, that the Sites are capable of significant non-infringing uses and, in support of a motion to dismiss, submitted a declaration alleging specific examples of those uses.  ECF No. 81, Def.'s Answer, Affirmative Defenses, and Jury Trial Demand at 11; ECF No. 25-1, Decl. of Tofig Kurbanov in Support of Mot. to Dismiss, ¶ 6.  But, instead of producing documents supporting these allegations, Defendant simply referred to unidentified articles that he believes exist yet expects Plaintiffs to find themselves.  Ex. A at 21–22.  These documents are responsive to Plaintiffs' Request for Production No. 38 and should be produced.

Defendant should be ordered to produce documents responsive to Plaintiffs' Request for Production Nos. 35, 36, and 38.

### III. Defendant Should Be Ordered to Produce Unredacted Versions of Documents That Have Been Improperly Redacted.

Defendant has improperly redacted important information in documents responsive to Plaintiffs' Request for Production Nos. 26 and 27.  These requests seek agreements related to advertising on Defendant's Websites:

> Request No. 26: All agreements You have entered into for advertising displayed on Defendant's Websites.
>
> Request No. 27: All agreements You have entered into with advertising brokers.

Ex. A at 15–16. In response to these requests, Defendant produced 28 insertion orders or other documents reflecting agreements with advertisers or ad brokers to display advertisements on Defendant's Websites. However, in each one of those documents, Defendant redacted information identifying (i) individuals participating in Defendant's illegal operation and (ii) the financial and payment processing accounts Defendant uses to receive money as part of that operation.[4] The redactions are improper and prejudicial to Plaintiffs' ability to litigate this case: the hidden information prevents Plaintiffs from following the money and knowing who else is involved in Defendant's Websites.

Defendant has failed to offer any legitimate justification for the redactions. To the contrary, counsel for Defendant has indicated that Defendant applied these redactions himself, that counsel is not able at this time to cite any legal grounds for doing so, and that Defendant does not intend to produce unredacted documents. Noyola Decl., ¶ 5. In his written objections and responses to these two document requests, Defendant did not refuse to provide the information that he has now redacted. Moreover, although Defendant objected to certain interrogatories by invoking the Fifth Amendment against self-incrimination, Defendant did not invoke the Fifth Amendment in response to these document requests. And to the extent that any information contained in the documents warrants protection, the Stipulated Protective Order entered by the Court (ECF No. 90) allows for Defendant to mark such documents as Confidential without any need for redaction. Generally, where a protective order is in place, "the Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is

---

[4] If it would assist the Court, Plaintiffs can provide copies of these insertion orders and agreements for *in camera* review. The documents contain individual names, addresses, email addresses, phone numbers, and/or account information for the advertiser or ad broker, none of which Defendant has redacted.

not favored." *David v. Alphin*, No. 3:07CV11, 2010 WL 1404722, at *8 (W.D.N.C. Mar. 30, 2010) (citing *In re FedEx Ground Package System, Inc.*, 2007 WL 79312, at *5 (N.D. Ind. Jan. 5, 2007)).

No legal justification exists for Defendant's redactions. His refusal to produce responsive documents in unredacted form amounts to a rejection of the discovery process as required by Federal Rules of Civil Procedure 26 and 34. Defendant should be ordered to produce the insertion orders and any other advertising agreements in their entirety, without redactions.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court compel Defendant to produce: (1) documents responsive to Plaintiffs' Request for Production Nos. 13, 18–19, 28–29, 37, 39, 43, and 48; (2) documents responsive to Plaintiffs' Request for Production Nos. 35, 36, and 38; and (3) documents responsive to Plaintiffs' Request for Production Nos. 26 and 27 in their entirety, without redactions.

Respectfully submitted,

Dated May 26, 2021

/s/ Scott A. Zebrak
Scott A. Zebrak (VSB No. 38729)
Matthew J. Oppenheim (*pro hac vice*)
Lucy Grace D. Noyola (*pro hac vice*)
Kellyn M. Goler (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: (202) 480-2999
Fax: (866) 766-1678
scott@oandzlaw.com
matt@oandzlaw.com
lucy@oandzlaw.com
kellyn@oandzlaw.com

*Attorneys for Plaintiffs*