**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| |
|---|
| UMG RECORDINGS, INC., *et al*., |
| *Plaintiffs*, |
| v. |
| KURBANOV, *et al*., |
| *Defendants*. |

Case No. 1:18-cv-00957-CMH-TCB

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

     A.    Case Overview ................................................................................................ 2

     B.    Defendant's Refusal to Comply with His Discovery Obligations ........................... 3

     C.    Defendant's Willful Violations of the Court's June 4, 2021 Discovery Order ...... 3

     D.    Defendant's Willful Violations of the Court's June 25, 2021 Discovery Order .... 6

     E.    Defendant's Refusal to Appear for His Own Deposition and to Cooperate with His Own Counsel ............................................................................................ 10

ARGUMENT ................................................................................................................... 11

I.    Defendant Failed to Comply with Multiple Discovery Orders and Refused to Attend His Own Deposition. ........................................................................................... 12

II.    A Default Judgment Sanction Is Appropriate. ................................................ 13

     A.    Defendant Acted in Bad Faith ...................................................................... 13

     B.    Defendant's Non-Compliance Caused Substantial Prejudice to Plaintiffs. ......... 15

     C.    Conduct Such as Defendant's Deliberate and Repeated Non-Compliance Should Be Deterred. ................................................................................................ 18

     D.    Lesser Sanctions Would Not Be Effective ...................................................... 19

CONCLUSION ................................................................................................................ 20

## <u>INTRODUCTION</u>

Defendant has willfully disobeyed two of this Court's orders and has refused to comply with his discovery obligations, even after this Court warned him that his conduct "may result in the entry of sanctions, including default judgment."  (Ex. 1, at 1.)[1]  His counsel has informed the Court that Defendant "has made clear that he does not intend to cooperate further with the present litigation," and that "Mr. Kurbanov has indicated that he will not provide Counsel for Defendant with any additional discovery and will not sit for his previously-noticed deposition." (Ex. 2, at 2.)  Defendant's conduct amounts to a failure to defend and has effectively shut down the continued prosecution of this lawsuit.  His contumacious and continuing discovery abuses are precisely the kind of conduct for which the default judgment sanction under Federal Rule of Civil Procedure 37 exists.

Defendant's bad faith disobedience has prejudiced Plaintiffs' ability to litigate this case. As set forth in greater detail below, in refusing to comply with this Court's discovery orders or sit for his deposition, Defendant is withholding information that is directly relevant to the central claims and defenses in this case.  This display of contempt for the U.S. judicial process, along with Defendant's clear disdain for copyright law and the creative efforts of record companies and artists, should not be tolerated.  Defendant's repeated violations of the Court's discovery orders and refusal to cooperate further with the litigation warrant the severe sanction of a default judgment.

Any lesser sanction would be inadequate.  Defendant's refusal to participate has hindered Plaintiffs' ability to adequately conduct discovery, and to develop and present their case.

---

[1] All exhibits are attached to the Declaration of Kellyn M. Goler ("Goler Decl."), filed contemporaneously with this motion.

Defendant's refusal to appear for his own deposition has only amplified the prejudice to Plaintiffs. Indeed, lesser sanctions have had no impact on Defendant's misconduct. Even after the Court sanctioned Defendant with attorneys' fees for non-compliance of the Court's first discovery order and twice warned that Defendant's non-compliance could result in a default judgment, Defendant's disobedience has continued unabated. A default judgment is necessary to avoid rewarding Defendant for his non-compliance, and to deter other parties from engaging in the same conduct.

The factors in determining appropriate sanctions under Rule 37 all strongly favor entry of a default judgment. Plaintiffs respectfully request that the Court: (1) enter a default judgment against Defendant; and (2) set a briefing schedule on damages, a permanent injunction, and attorneys' fees.

## **BACKGROUND**

### A.    **Case Overview**

Plaintiffs are record companies that create, produce, distribute, and license the vast majority of all legitimate commercial sound recordings in the United States. (Ex. 3, Compl. ¶ 1.) Defendant owns and operates www.FLVTO.biz and www.2conv.com (collectively, "Defendant's Websites")—music piracy websites that engage in and facilitate copyright infringement at a staggering scale. (*Id.*) These websites provide users an unlawful "stream-ripping" service that converts authorized video streams from third-party platforms, such as YouTube, into unauthorized, downloadable audio files. (*Id.* ¶ 2.) Stream-ripping provides a means for easy, instantaneous, and rampant infringement of copyrighted sound recordings, including those owned by Plaintiffs. (*Id.*)

Plaintiffs allege that Defendant is directly, contributorily, and vicariously liable for infringement of their copyrighted sound recordings. Plaintiffs also allege that Defendant has

circumvented technological protective measures that YouTube implemented to control access to and prevent copying of copyrighted works, in violation of Section 1201 of the Copyright Act.

### B.    Defendant's Refusal to Comply with His Discovery Obligations

Discovery began on April 1, 2021, and it was set to close four months later on August 13, 2021.  (Ex. 4, at 1; Ex. 5, ¶ 1.)  On April 7, 2021, Plaintiffs promptly served Defendant with interrogatories and requests for production of documents.  (Ex. 6, ¶ 3.)  In response to some of the interrogatories, Defendant refused to answer, invoking the Fifth Amendment right against self-incrimination.  (Ex. 7, Interrog. Nos. 1–3, 8, 10.)  Defendant also initially produced some documents, but then stopped altogether, improperly withholding documents in response to numerous discovery requests.

### C.    Defendant's Willful Violations of the Court's June 4, 2021 Discovery Order

On May 26, 2021, Plaintiffs filed a motion to compel Defendant to produce: (1) documents Defendant had initially agreed, but then refused, to produce; (2) documents Defendant claimed do not exist but undoubtedly must exist; and (3) unredacted versions of documents Defendant produced with improper redactions.  (Ex. 8.)  The specific document requests at issue were as follows:

- Request No. 13: Documents sufficient to show, on a yearly basis, the number of Users of Defendant's Websites in the United States, and the number of visits to Defendant's Websites by those Users.

- Request No. 18: All documents or communications concerning the Digital Millennium Copyright Act ("DMCA") or alleged copyright infringement in connection with Defendant's Websites, including all communications concerning infringement notices.

- Request No. 19: Documents sufficient to identify each infringement notice You have received alleging infringement of one or more copyrighted sound recordings in connection with Defendant's Websites, including the date of the infringement notice, the sound recording(s) allegedly infringed, the website recipient, and the rights holder on behalf of whom the infringement notice was sent.

- Request No. 26: All agreements You have entered into for advertising displayed on Defendant's Websites.

- Request No. 27: All agreements You have entered into with advertising brokers.

- Request No. 28: All documents concerning any data, reports, logs, or other information from current or former advertising brokers for Defendant's Websites, including concerning the identity or location of the broker and payments from the broker.

- Request No. 29: All documents concerning any agreements, communications, data, or payments relating to AdsTerra, Propeller Ads, MGID, AdSupply, Advertise.com, Adcash, Taboola, DoubleClick, RevContent, AddThis, Mycdn, Clksite, Mybestmv, Pushnice, or Google.

- Request No. 35: All communications with Users concerning copyright or the legality of Defendant's Websites, converting video streams from Source Sites into downloadable audio files, or stream ripping.

- Request No. 36: All communications with Users concerning the use of Defendant's Websites for stream ripping, converting video streams from Source Sites into downloadable audio files, or downloading or obtaining audio files.

- Request No. 37: All documents concerning any alleged non-infringing uses of Defendant's Websites or uses of Defendant's Websites to convert video streams of non-copyrighted content from Source Sites into downloadable audio files.

- Request No. 38: All documents substantiating allegations that: (a) professors or students use Defendant's Websites to download the audio portions of lectures for later reference and playback; (b) bands use Defendant's Websites to download the audio tracks from their live performances that they have captured on video; or (c) parents use Defendant's Websites to download the audio portion of a school concert that they recorded.

- Request No. 39: All documents concerning any policy applicable to Users, including a copy of each version of the Terms of Use and privacy policies for Defendant's Websites, any repeat infringer policy, and any documents that describe the implementation of such policies.

- Request No. 43: Documents sufficient to show Your total and average revenues, costs, and profits, by year and quarter, in connection with Defendant's Websites.

- Request No. 48: All documents supporting, refuting, or otherwise concerning Your affirmative defenses or any other defenses in this case.

(Ex. 9, Request Nos. 13, 18–19, 26–29, 35–39, 43, 48.)

These requests sought information that is plainly relevant to the core claims and defenses in this case, including the scope and extent of infringement, Defendant's financial benefit from infringement, and Defendant's affirmative defense that users use his Websites for non-infringing uses.  In his written objections and responses to these requests, Defendant did not challenge the relevance of this information.  As later confirmed by Plaintiffs (*see infra* at p. 6), Defendant's improper redactions were an attempt to conceal relevant information about the identities of those involved in perpetrating the illegal scheme with him, the nature and extent of the illicit profits Defendant's Websites generated, and the money trail from those illicit profits.

As argued in Plaintiffs' motion to compel, there is no doubt that responsive documents exist.  (Ex. 10, at 5–6.)  Indeed, Defendant initially began producing responsive documents.  But, for reasons that Defendant failed to provide, he changed course mid-stream.  Defendant refused to produce additional responsive documents in his possession, custody, or control even as his counsel acknowledged that those documents exist.  In fact, counsel for Defendant stated by email that "there are other documents responsive to the RFPs (as specified in our Responses) [that] do exist, the Defendant has not provided them to us and we have now concluded that he will not provide them."  (Ex. 11, ¶ 4; Ex. 12, at 2; *see also* Ex. 12 at 1 (reiterating "we are not going to be able to provide you with any additional documents").)  In a subsequent telephonic conferral, Defendant's counsel confirmed his client's refusal to produce existing responsive documents and provided no explanation for Defendant's withholding of those documents.  (Ex. 11, ¶ 5.)

Following a hearing on June 4, 2021, the Court granted Plaintiffs' motion in its entirety, ordering Defendant to produce and un-redact documents responsive to Plaintiffs' discovery requests by June 11, 2021, and allowing Plaintiffs to seek their fees and costs associated with the

motion.  (Ex. 1.)  The Court warned Defendant that his failure to comply with the order could result in the entry of sanctions, including default judgment.  (*Id.*)

Defendant failed to comply with the Court's June 4, 2021 discovery order.  He did not produce or un-redact the documents by June 11 or thereafter.  (Goler Decl. ¶ 4.)  Defendant's counsel acknowledged that Defendant understood, but refused to obey, the June 4 order.  (Ex. 13, at 1.)  At a subsequent hearing on June 25, 2021, the Court again warned Defendant that non-compliance could result in entry of a default judgment.  (Ex. 14, Hr'g Tr. 27:14–28:09.)

In addition, in view of Defendant's failure to produce documents without redactions, Magistrate Judge Buchanan permitted Plaintiffs to attempt to remove the redactions that Defendant had unilaterally and improperly applied to certain documents.  (Ex. 14, Hr'g Tr. 31:3– 25.)  Plaintiffs were able to remove some, but not all, of the redactions.  (Goler Decl. ¶ 18.) Based on the un-redacted information, it became clear that Defendant's redactions were an attempt to hide the identities of other individuals and entities that were doing his bidding and receiving and moving illicit funds.  They included Alexandra Dimakos, Daria Khalizova, Natalia Kyriakidou at a company in Cypress named Able Sun Holdings LTD, and Pavel Vasin and Daria Jones at a company in Russia named Hotger Ltd.  (Goler Decl. ¶ 18.)[2]  While Plaintiffs successfully removed Defendant's redactions in some of the produced documents, Defendant has continued to refuse to produce and un-redact all of the documents as required by the Court's June 4 order.

### D.  Defendant's Willful Violations of the Court's June 25, 2021 Discovery Order

On June 16, 2021, Plaintiffs filed a motion to compel Defendant to preserve and produce web server data.  (Ex. 15.)  Plaintiffs' motion sought server data that Defendant's Websites

---

[2] Copies of the un-redacted documents revealing the identities and corporate affiliations of these individuals can be made available to the Court for inspection upon request.

necessarily generate in the ordinary course of operations, including data that identifies: (a) the YouTube videos being stream-ripped; (b) the MP3 audio files being copied and distributed; and (c) the geographic locations of the users downloading the audio files. The specific document requests at issue were as follows:

- Request for Production No. 2: Documents sufficient to identify each sound recording that Defendant's Websites converted from a video stream from a Source Site into a downloadable audio file, including the track title, the recording artist, identifying information for the video stream from the Source Site, the URL of the video stream from which Defendant's Websites extracted the audio file, the URL of the downloadable audio file, and the date and time that Defendant's Websites created the audio file.

- Request for Production No. 5: Documents sufficient to identify each sound recording that Users downloaded within the United States using Defendant's Websites, including the track title, the recording artist, identifying information for the video stream from the Source Site, the URL of the video from which Defendant's Websites extracted the audio file, the date and time of the download, and the geographic location (i.e., state) of the User.

- Request for Production No. 6: All server logs or other documents showing the video streams from any Source Site converted into downloadable audio files using Defendant's Websites and any subsequent storage, copying, distribution or other use of the audio files.

- Request for Production No. 7: For each sound recording that Defendant's Websites converted from a video stream from a Source Site into a downloadable audio file, all documents concerning each subsequent use, copying, storage, distribution, or other disposition of the audio file, including the date and time of download of the audio file and the geographic location (i.e., state) of the User.

- Request for Production No. 9: Documents sufficient to identify each sound recording that Defendant's Websites copied to computer servers that You own, control, or have access to through any contract, subscription, or other agreement, including the track title, the recording artist, identifying information for the video stream from the Source Site, the URL of the video from which Defendant's Websites extracted the audio file, the date and time that Defendant's Websites copied the sound recording, and the IP address and the geographic location of each computer server from which Defendant's Websites acted in the process.

- Request for Production No. 12: All documents showing, on a yearly and monthly basis, the frequency of converting video streams from a Source Site into downloadable audio files using Defendant's Websites, including lists of the most frequently converted music video streams.

- Request for Production No. 30: All documents concerning the use of location-specific advertising to Users in the United States in connection with Defendant's Websites.

- Request for Production No. 31: All documents concerning the use of data associated with Users, including for location-specific or interest-based advertising, in the United States in connection with Defendant's Websites.

(Ex. 9, Req. Nos. 2, 5–7, 9, 12, 30, 31.)

In his written objections and responses to these requests, Defendant did not challenge the relevance of this information. Defendant's objections and responses to each of the above-referenced requests read as follows:

- **Objection**: Defendant objects to this Discovery Request as overbroad and unduly burdensome. Defendant objects to this request to the extent that it could be read to require Defendant to create or produce documents that do not otherwise exist or which are not within the Defendant's care, custody, or control. Defendant objects to this inquiry to the extent that it could be read to impose an obligation on Defendant to conduct independent research for Plaintiffs' benefit. Subject to these objections, Defendant responds as follows.

- **Response**: Defendant has no responsive documents or things in his care, custody, or control.

(*Id.*)

When the parties had their Rule 26(f) conference on April 19, 2021, Defendant did not indicate that he was not retaining the data sought in Plaintiffs' discovery requests. Although the Federal Rules of Civil Procedure require the parties to discuss "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C), Defendant refused to agree to—or even discuss—this topic, deeming it "premature." (Ex. 6, ¶ 4; Ex. 16, at 4.)

During a conferral on May 4, 2021, Defendant indicated for the first time that he did not have server data to produce, without providing additional explanation. (Ex. 6, ¶ 7.) In a series of follow-up emails and conferences, Plaintiffs requested that Defendant identify the server

software he is currently using and that the parties attempt to work through this discovery issue.
(*Id.*)  Defendant's counsel stated that they "are not fact witnesses" and that Defendant would not
be disclosing additional information and had no server data to produce.  (*Id.*)

In his opposition, Defendant conceded that the data at issue "does exist."  (Ex. 17, at 13.)
Defendant did not argue that the requested data lacked relevance.  Defendant conceded a lack of
any undue burden, indicating that compliance could cost only up to a few thousand dollars.
(Ex. 17, at 4.)  Defendant also did not dispute that he already engages in remote logging via a
third-party service called Yandex Metrica ("Yandex").  Instead, Defendant attempted to confuse
matters by discussing his custom-made *website* software—which is distinct from the standard
web server software that underlies it—and what is allegedly involved with re-programming that
website software.  (Ex. 18, ¶¶ 7–9; Ex. 17, at 1, 4.)  Defendant further attempted to confuse
matters by making assertions about his alleged practices concerning use of a German web host
and storage of stream-ripped *audio files.*  (Ex. 18, ¶¶ 10–11, 14; Ex. 17, at 5–6.)

At the June 25, 2021 hearing, Defendant dropped his arguments regarding his website
software, his German web host, and the audio files, and conceded that the requested web server
data is created in the normal operation of his websites.  (Ex. 14, Hr'g Tr. 19:18–21:18.)
Defendant further conceded that the data is relevant and preservation and production of the data
does not present an undue burden.  (*Id.* at 19:9–11, 20:17–24, 23:10–11; *see also id.* at 19:21
("Yes, it's a matter of flipping a switch . . . .").)

Following the hearing on June 25, 2021, Magistrate Judge Buchanan granted Plaintiffs'
second motion to compel.  (Ex. 19.)  Magistrate Judge Buchanan ordered Defendant to:
(1) preserve the requested web server data by changing the settings on his web server software
beginning no later than July 2, 2021, (2) produce that data to Plaintiffs on a weekly basis

beginning on July 9, 2021, and (3) log into his account at Yandex and produce reports with the requested data stored at Yandex by July 6, 2021. (*Id.*; Ex. 14, Hr'g Tr. 29:24–30:03, 30:23–24.)

On July 2, 2021, Defendant filed objections to Magistrate Judge Buchanan's June 25, 2021 discovery order. (Exs. 20–22.) On July 19, 2021, Judge Hilton issued an order on the papers, affirming the June 25, 2021 discovery order. (Ex. 23.)

Defendant failed to comply with the Court's June 25, 2021 discovery order. He did not produce the required Yandex data by July 6 or thereafter. (Goler Decl. ¶ 28.) He also did not produce the required web server data on July 9 or any week thereafter. (*Id.*)

### E.    Defendant's Refusal to Appear for His Own Deposition and to Cooperate with His Own Counsel

In late June 2021 and early July 2021, counsel for Plaintiffs and Defendant discussed arrangements for Defendant's deposition. (Goler Decl. ¶ 29.) On July 11, 2021, Defendant's counsel confirmed Defendant's availability for a deposition on July 28–29, 2021, and Plaintiffs accordingly served a notice for Defendant's deposition. (*Id.*) On July 22, 2021, Defendant's counsel informed Plaintiffs' counsel by email that they intended to withdraw as counsel. (Goler Decl. ¶ 30.) On July 23, 2021, during a telephonic meet-and-confer, Defendant's counsel stated that they believed Defendant would not appear for his deposition, and later the same day, Defendant's counsel confirmed by email that Defendant did not intend to appear for his deposition. (Goler Decl. ¶ 30; Ex. 24.)

On July 23, 2021, Defendant's counsel moved to withdraw as counsel for Defendant. (Ex. 25.) Defendant's counsel explained that, despite the Fourth Circuit's ruling to the contrary and the U.S. Supreme Court's denial of his petition for certiorari, Defendant holds a "firm conviction that he is not subject to personal jurisdiction in this Court." (Ex. 2, at 2.) Defendant's counsel also confirmed that Defendant "has made clear that he does not intend to cooperate

further with the present litigation" and Defendant "has indicated that he will not provide Counsel for Defendant with any additional discovery and will not sit for his previously-noticed deposition." (*Id.*)

On July 27, 2021, the Court denied the motion to withdraw. (Ex. 26.) The Court also granted Plaintiffs' request to suspend discovery and the final pretrial conference until after the Court rules on this motion for sanctions. (*Id.*)

## **ARGUMENT**

Federal Rule of Civil Procedure 37(b)(2)(A) and 37(d) authorize district courts to impose a range of sanctions, including "rendering a default judgment," against a party that fails to obey a discovery order or to appear for a properly noticed deposition. In determining whether a default judgment is an appropriate sanction under Rule 37, the Fourth Circuit considers four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). A district court has "nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) (citation omitted); *see also Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) ("Rule 37(d) . . . gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders.").[3]

---

[3] Courts also possess inherent authority to impose sanctions for "any conduct utterly inconsistent with the orderly administration of justice." *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 375 (4th Cir. 2013) (quotations and citations omitted). In imposing sanctions under its inherent authority, courts must apply a similar multi-factor test: (1) the degree of the

## I.      Defendant Failed to Comply with Multiple Discovery Orders and Refused to Attend His Own Deposition.

As discussed above, Defendant deliberately violated, and continues to violate, two different discovery orders by failing to produce documents and information responsive to numerous discovery requests.  Specifically, the Court's June 4, 2021 discovery order required Defendant to produce by June 11, 2021:

- Documents responsive to Plaintiffs' Request for Production Nos. 13, 18–19, 28–29, 43, and 48;

- Documents responsive to Plaintiffs' Request for Production Nos. 35 and 36; and

- Documents responsive to Plaintiffs' Request for Production Nos. 26 and 27 in their entirety, without redactions.

(*See* Ex. 1.)[4]  The Court's June 25, 2021 discovery order required Defendant to do the following:

- Preserve web server data responsive to Plaintiffs' Request for Production Nos. 2, 5–7, 9, 12, 30, and 31 beginning no later than July 2, 2021;

- Produce the preserved web server data responsive to Plaintiffs' Request for Production Nos. 2, 5–7, 9, 12, 30, and 31 on a weekly basis beginning on July 9, 2021; and

- Produce the data stored on Defendant's Yandex account responsive to Plaintiffs' Request for Production Nos. 2, 5–7, 9, 12, 30, and 31 by July 6, 2021.

(*See* Ex. 19; Ex. 14, Hr'g Tr. 29:24–30:03, 30:23–24.)

---

wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993).  While Plaintiffs seek sanctions under Rules 37(b)(2)(A) and 37(d), the Court's inherent authority provides an alternate basis.

[4] The Court did not rule on Request Nos. 37–39.  At the hearing, Plaintiffs indicated that for those particular requests Defendant's representation that he had no documents was sufficient.

As of the date of this filing, Defendant has not produced or un-redacted ***any*** of the

documents—much less by the deadlines—as required by either discovery order.  On the

contrary, Defendant has made clear that he will not produce the documents.  Defendant has also

refused to appear for his deposition that was noticed for July 28–29, 2021, and has indicated

through his counsel that he will no longer defend against Plaintiffs' claims or produce additional

discovery.  (Ex. 2, at 3.)

## II.   **A Default Judgment Sanction Is Appropriate.**

### A.   **Defendant Acted in Bad Faith.**

Rule 37 authorizes terminating sanctions for bad faith disobedience of an order.  *Nat'l*

*Hockey League v. Metro. Hockey Club, Inc.* ("*NHL*"), 427 U.S. 639, 643 (1976) (per curiam)

("[T]he extreme sanction of dismissal was appropriate . . . by reason of respondents' 'flagrant

bad faith' and their counsel's 'callous disregard' of their responsibilities."); *Anderson*, 155 F.3d

at 504 (affirming entry of default judgment where defendant violated multiple discovery orders

in bad faith).

Here, Defendant has willfully refused to comply with the Court's discovery orders and

attend his own deposition in bad faith.  He withheld documents he had agreed to produce,

withheld documents that undoubtedly exist, and produced documents with improper redactions.

Despite being directly instructed by the Court to comply with his discovery obligations on

multiple occasions, Defendant failed to do so.  He knowingly disobeyed the Court's June 4, 2021

and June 25, 2021 discovery orders, even after the Court's two warnings that Defendant would

face sanctions, including default judgment, unless he came into compliance with his discovery

obligations.  And while Defendant initially agreed to be deposed, he reversed course and refused

to appear for his deposition just days before the noticed dates.

Defendant has had sufficient time to comply with the Court's orders.  More than seven weeks have passed since the deadline for Defendant to comply with the June 4, 2021 discovery order.  With respect to the June 25, 2021 order, Defendant's counsel conceded that preserving the requested web server data is "a matter of flipping a switch" and "not . . . a huge endeavor." (Ex. 14, Hr'g Tr. 19:18–20:24).  And the requested Yandex data is readily accessible through Defendant's accounts.[5]  (*See* Ex. 14, Hr'g Tr. 14:16–24, 17:19–20, 24:25–25:7, 29:18–22.)  Yet Defendant's counsel has informed the Court that Defendant will not comply with that order, either.  (*See* Ex. 2, at 2.)

Defendant's failure to cooperate in discovery and comply with the Court's orders recently culminated in a motion by Defendant's counsel to withdraw as counsel for Defendant.  (Ex. 25.) That motion confirmed that Defendant's misconduct has been contumacious, based on his "firm conviction that he is not subject to personal jurisdiction in this Court."  (Ex. 2, at 3.)  The motion also confirmed that, despite his counsel's advice, Defendant has no intention of complying with his discovery obligations or the Court's orders.  (*Id.*)

This Court has held that "[a]cting in bad faith can include a party's disregard of its obligations under the Federal Rules of Civil Procedure and willful conduct where the party clearly should have understood [its] duty to the court but nonetheless deliberately disregarded it." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10cv1011 (LMB/JFA), 2011 WL 2560096,

---

[5] Defendant's objections to the June 25, 2021 order did not excuse his non-compliance pending resolution of those objections.  A magistrate judge's order on a non-dispositive motion, such as the discovery orders at issue here, is not automatically stayed upon a timely objection to that order.  *See Plant v. Merrifield Town Center Ltd. P'shp*, 711 F. Supp. 2d 576, 584 (E.D. Va. 2010); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 3069 ("Moreover, a timely objection does not automatically render the magistrate judge's ruling invalid until the district court acts on the objection.") (citing cases).  And Defendant did not seek a stay of the discovery order.

at *7 (E.D. Va. June 3, 2011), *report and recommendation adopted*, 2011 WL 2559806 (E.D. Va. June 27, 2011) (internal quotation marks and citation omitted).  Defendant has been fully informed of his discovery obligations and the Court's orders, and his disregard of multiple discovery orders and failure to appear for his own deposition amounts to bad faith.

### B.       Defendant's Non-Compliance Caused Substantial Prejudice to Plaintiffs.

Defendant's stonewalling tactics and deliberate non-compliance have materially and substantially prejudiced Plaintiffs.  Plaintiffs have the burden of proof in this case, and Defendant's discovery violations have hindered Plaintiffs' ability to adequately conduct discovery and present their case.

Defendant's failure to comply with the Court's discovery orders infect numerous issues that are core to this case.  The table below summarizes the categories of documents and information that are the subject of the Court's orders and the issues to which those categories relate.[6]

| Category | Discovery Requests | Issue |
|---|---|---|
| Web server data and Yandex Metrica data that identifies: (a) the YouTube videos being stream-ripped; (b) the MP3 audio files being copied and distributed; and (c) the geographic locations of the users downloading the audio files | Request Nos. 2, 5, 6, 7, 9, 12, 30, and 31 | The scope and extent of infringement and illegal activities on Defendant's Websites; personal jurisdiction; damages; Defendant's claim of non-infringing uses of his Websites |
| The frequency of conversions using Defendant's Websites, the number of users of Defendant's Websites, and the number of visits to Defendant's Websites by those users | Request Nos. 12 and 13 | The extent of infringement and illegal activities on Defendant's Websites; damages |

---

[6] This table and the explanations therein are illustrative, not exhaustive.

| Category | Discovery Requests | Issue |
|---|---|---|
| Documents and communications about the DMCA and copyright infringement in connection with Defendant's Websites, including infringement notices received by Defendant | Request Nos. 18, 19, 35, and 36 | Defendant's knowledge of the infringing activity of users of Defendant's Websites, which relates to Plaintiffs' claim for contributory infringement, willfulness, and statutory damages considerations |
| Agreements with, and payments from, advertising services or brokers | Request Nos. 26–29 | Individuals acting in concert with Defendant in the operation Defendant's Websites and financial and payment processing accounts that Defendant uses to receive money in connection with operation of Defendant's Websites; Defendant's financial benefits from the infringing and unlawful activities on Defendant's Websites; damages |
| Defendant's revenues, costs, and profits in connection with Defendant's Websites | Request No. 43 | Defendant's financial benefit from the infringing and unlawful activities on Defendant's Websites; damages |
| Defendant's affirmative defenses or any other defenses in this case | Request No. 48 | Defendant's affirmative and other defenses |

As shown in this table, Defendant's failure to produce documents as required by the Court's orders implicates a number of issues. Defendant's disobedience has prevented Plaintiffs from obtaining evidence material to the litigation.

Defendant's failure to appear for his deposition further deprived Plaintiffs of important testimonial evidence with respect to the issues listed above as well as other issues. The issues potentially impacted by Defendant's refusal to attend his own deposition include, but are not limited to, all of the factual issues that go to the heart of Plaintiffs' claims for copyright infringement and violation of 17 U.S.C. § 1201. By way of example, those issues include the following:

16

- The design and operation of Defendant's Websites to reproduce and distribute copyrighted sound recordings;

- The design and operation of Defendant's Websites to maintain a library of stream-ripped MP3 files;

- Defendant's knowledge of infringing activity on Defendant's Websites;

- Defendant's inducement of infringing activity on Defendant's Websites;

- Defendant's material contribution to infringing activity on Defendant's Websites;

- Defendant's control over infringing activity on Defendant's Websites;

- Defendant's financial benefits from the infringing and unlawful activities on Defendant's Websites;

- Defendant's circumvention of YouTube's technological protective measures;

- Other individuals and entities acting in concert with Defendant in the design and operation of Defendant's Websites;

- Defendant's sources of revenues in connection with Defendant's Websites;

- Other stream-ripping websites owned or operated by Defendant; and

- Defendant's affirmative and other defenses, including Defendant's allegation that Defendant's Websites have substantial non-infringing uses.

Mr. Kurbanov is the only named Defendant, and the owner and operator of Defendant's Websites. (*See* Ex. 27, Answer ¶ 1; Ex. 7, at 2–3.) He is the person with access to information that is central to resolution of the legal claims in this case. The documents he should have produced, and the deposition testimony he should have given, would have been highly probative of those claims. Nor are there other sources from which Plaintiffs could obtain all of the information that Defendant has withheld. By engaging in this virtually wholesale refusal to provide relevant information, Defendant has substantially prejudiced Plaintiffs' ability to present their case.

### C.      Conduct Such as Defendant's Deliberate and Repeated Non-Compliance Should Be Deterred.

Defendant's continued disobedience of the Court's discovery orders is an affront to the authority of the Court and the judicial process as a whole.  Defendant has impeded the discovery process throughout the litigation and has not indicated any remorse.  The Supreme Court has stated that a default sanction is intended "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  *NHL*, 427 U.S. at 642.  Defendant's conduct is far worse than that of the sanctioned party in *NHL*, who the court of appeals noted had failed to timely answer "only fifty-six out of 1,150 interrogatories" and had "worked frantically to complete discovery within the deadlines set by the [district] court."  *In re Prof'l Hockey Antitrust Litig.*, 531 F.2d 1188, 1194–95 (3d Cir. 1976), *rev'd*, *NHL*, 427 U.S. 639 (1976) (upholding the district court's dismissal sanction).  Unlike *NHL*, where there was an attempt to fully comply, here Defendant has not taken any steps to obey the Court's orders and has confirmed he has no plans to do so.

The Fourth Circuit, along with other appellate courts, has also approved case-terminating sanctions under Rule 37 against parties who willfully undermine the judicial system.  *See*, *e.g.*, *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 93 (4th Cir. 1989) ("Entrance of default judgment against the defendants now is . . . an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future."); *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1381 (Fed. Cir. 2004) ("[T]he judicial system cannot tolerate litigants who flagrantly refuse to comply with the orders of the court and who refuse to make discovery, for delay and evasion are added burdens on litigation, causing waste of judicial and legal time, are unfair to the litigants and offend the administration of justice."); *Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. Cir. 1984) ("We encourage such

18

[dismissal] orders.  Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents.").  This Court has reached the same conclusion: "Continued contumacious behavior and abuse of the Courts through non-compliance with its orders cannot be tolerated.  And with discovery's important role in modern litigation, deterrence is greatly needed." *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014).

### D.      Lesser Sanctions Would Not Be Effective.

First, lesser sanctions would not cure the prejudice caused by Defendant's contumacious conduct.  As explained above, the documents and information that Defendant has wrongfully withheld span virtually all the issues in this case.  In some cases, a party may refuse to provide discovery related to a certain issue; in that circumstance, a lesser sanction such as an adverse inference on the issue in question may be sufficient.  In this case, however, Defendant has engaged in a wholesale refusal to provide discovery that relates to so many issues in the case that drawing adverse inferences would effectively amount to a default judgment.  Indeed, Defendant's failure to participate in discovery is so extensive that there is no way even to know all the documents and the information that have been withheld or all the issues to which that discovery might pertain.  Such flagrant disobedience cannot be remedied by a sanction less than a default judgment.

Second, a lesser sanction would not change Defendant's conduct.  Indeed, the Court has already imposed lesser sanctions, but to no avail.  In issuing the June 4, 2021 discovery order, the Court sanctioned Defendant by granting Plaintiffs attorneys' fees and costs in connection with Plaintiffs' motion to compel the production of documents.  (Ex. 1, at 1.)  The Court also has twice warned Defendant that failure to comply with the Court's orders could result in a default judgment.  (*See id.* at 1; Ex. 14, Hr'g Tr. 27:19–28:3.)  Despite that sanction and warnings from

19

the Court, Defendant has continued to defy the Court's authority.  Lesser sanctions also would not deter a future party from refusing to produce documents and otherwise participate in discovery.  To the contrary, a lesser sanction would encourage other parties, including copyright pirates like Defendant, to take their chances by withholding evidence.  In the best case scenario from the pirate's perspective, no one would ever know the full nature and extent of its illegal operations, the identities of others involved, the revenues from the piracy, or the location of the illicit proceeds, yet the pirate would still have a chance to defend the case on the merits.

## <u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs respectfully request that the Court grant the motion, issue an order entering a default judgment against Defendant, and set a briefing schedule on damages, a permanent injunction, and attorneys' fees.  A proposed Order is attached.


Respectfully submitted,

Dated August 4, 2021

*/s/ Scott A. Zebrak*
Scott A. Zebrak (VSB No. 38729)
Matthew J. Oppenheim (*pro hac vice*)
Lucy Grace D. Noyola (*pro hac vice*)
Kellyn M. Goler (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: (202) 480-2999
Fax: (866) 766-1678
scott@oandzlaw.com
matt@oandzlaw.com
lucy@oandzlaw.com
kellyn@oandzlaw.com

*Attorneys for Plaintiffs*