**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KURBANOV, *et al.*, <br><br> *Defendants*. | Case No. 1:18-cv-00957-CMH-TCB |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT PURSUANT TO RULE 37**

**INTRODUCTION**

The present motion comes before this Court in a somewhat unusual posture: counsel for defendant Tofig Kurbanov ("Mr. Kurbanov") recently sought leave to withdraw as counsel of record, citing Mr. Kurbanov's unwillingness to cooperate with his counsel and produce certain documents that this Court had ordered produced, as well as Mr. Kurbanov's general unwillingness to continue to participate in the discovery process.[1]  The Court, however, denied that motion and instructed Plaintiffs to file the motion for sanctions that Plaintiffs had told the court they contemplated filing, which resulted in the present motion.  And, although the undersigned counsel previously expressed their frustration at Mr. Kurbanov's failure to fully cooperate in the discovery process, it is nonetheless clear that Plaintiffs' motion for default judgment must fail because: (a) some of the conduct complained of is outside the purview of

---

[1] Mr. Kurbanov produced some documents in response to Plaintiffs' requests in their entirety; produced certain other documents in redacted form; and declined to produce certain documents at all.  Mr. Kurbanov has also answered interrogatories propounded by Plaintiffs and responded to requests for admissions.  Mr. Kurbanov declined to sit for his deposition.

Rule 37; (b) Mr. Kurbanov's conduct is not so egregious as to require the ultimate sanction of default judgment; and (c) there exist other, less drastic sanctions that are more commensurate with the degree of Mr. Kurbanov's discovery failures.

In support of this Opposition, Mr. Kurbanov states as follows.

## ARGUMENT

I. Rule 37 Sanctions Cannot Be Based On Mr. Kurbanov's Failure to Appear For His Deposition.

Plaintiffs premise their motion for a default judgment on two distinct discovery failures: (a) Mr. Kurbanov's failure to produce certain documents that this Court previously ordered produced; and (b) Mr. Kurbanov's failure to appear for his previously-noticed deposition. With respect to the former, while Mr. Kurbanov's failure to produce documents that this Court ordered be produced is at least governed by Rule 37, his failure to appear for his deposition is not. Rule 37, by its plain terms, applies only to violations of court orders. And, although Plaintiffs could have sought an order from this Court requiring Mr. Kurbanov to appear for his deposition, they did not do so. As such, sanctions are unavailable to Plaintiffs under Rule 37 for Mr. Kurbanov's failure to appear for his deposition.[2]

II. Default Judgment is Not Appropriate Under Either the Fourth Circuit's Four-Part Test for Rule 37 Sanctions or its Six-Factor Test for Sanctions Under the Court's Inherent Authority.

As the Fourth Circuit Court of Appeals has often held, the Courts adhere to a "strong policy that cases be decided on the merits." *See, e.g., United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993)("Mindful of the strong policy that cases be decided on the

---

[2] Although Plaintiffs also invoke this Court's inherent powers, such powers are available to the Court to punish abuses not otherwise governed by the Rules of Civil Procedure. Whereas Rule 37 specifically addresses the situation of a deponent failing to appear for his deposition *after being ordered to do so by the Court*, Plaintiffs cannot make an end run around the rules by appealing instead to the Court's inherent powers.

merits, and that dismissal without deciding the merits is the most extreme sanction, a court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors, which we have detailed under other circumstances*"); Blue Cross Blue Shield of N.C. v. Jemsek Clinic, P.A.* (*In re Jemsek Clinic, P.A.*), 850 F.3d 150, 159 (4th Cir. 2017)("public policy strongly favors deciding cases on the merits"); *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019)("We are mindful of the strong policy favoring the disposition of cases on the merits and disfavoring dismissals without a merits decision.")

Akin to a default judgment, a "dismissal without deciding the merits is the most extreme sanction" and is only appropriate in the "most egregious cases" that evidence "bad faith and callous disregard for the authority of the district court and the Rules." *Blue Cross Blue Shield of N.C., supra* ("because it is 'the most extreme sanction,' dismissal with prejudice is appropriate only in the most egregious cases"); *Zornes v. Specialty Indus.*, 1998 U.S. App. LEXIS 31686, at *19 (4th Cir. Dec. 21, 1998)"we have held that the district courts should restrict their imposition of the ultimate sanction of dismissal with prejudice to 'only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules'"); *Hensley v. Alcon Labs.*, 277 F.3d 535, 542-43 (4th Cir. 2002)("bad faith or abuse necessary to justify dismissal.…")

Even then, such a sanction is only permissible if there is no lesser sanction that will adequately protect the needs and interests of the plaintiffs. *Id.* ("because it is 'the most extreme sanction,' dismissal may not be entered without the court's first considering numerous factors, including the availability of other sanctions"); *Shaffer,* 11 F.3d at 463 (reversing dismissal despite litigant's failure of duty of candor to the Court, holding "We are confident that the district court's objective of punishing the wrongdoers, deterring similar future conduct, and

compensating the defendant can be achieved by a sanction, short of dismissal, tailored more directly to those goals.")

Indeed, in *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494 (4th Cir. 1977), although the Fourth Circuit confirmed the district court's ability to sanction discovery misconduct, it cautioned "the Court to act cautiously when the sanction imposed is that of default judgment, which is 'the most severe in the spectrum of sanctions provided by statute or rule.' In that situation the Trial Court's 'range of discretion is more narrow' than when the Court is imposing other less severe sanctions." *Id.* at 503 (footnotes omitted).

With these interests in mind, the "Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under Rule 37. The court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective. *Anderson v. Found. for Advancement*, 155 F.3d 500, 504 (4th Cir. 1998) (citing *Wilson*, 561 F.2d at 503-505).

Alternatively, "before entering a dismissal order pursuant to this inherent authority, courts consider similar factors to those under Rule 37, namely, the degree of culpability of the wrongdoer; the prejudice to the judicial process and the victim caused by the misconduct; the availability of other adequate sanctions; and the public interest…These factors reflect the 'great[] caution' courts must exercise before imposing the severe sanction of dismissal." *Beach Mart, Inc. v. L&L Wings, Inc.,* 784 F. App'x 118, 124 (4th Cir. 2019). *See also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)("before exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability;

4

(2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the [plaintiff]; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.")

Even recognizing the undeniable shortcomings in Mr. Kurbanov's discovery responses, default judgment is not warranted under either of the Fourth Circuit's overlapping tests.

### A. Bad Faith/Degree of Culpability

With respect to the bad faith/culpability factors, it is important to remember that Mr. Kurbanov lives in (and has always lived in) Russia, a country with a radically different judicial system than the American system.  Russia does not have civil discovery as we know it: depositions in civil cases are not permitted; litigant-initiated document discovery is largely non-existent, and, in any event, litigants are only required to produce documents they intend to rely on at trial and they are not expected or required to produce documents that are adverse to them. *See, e.g.,* United States Department of State, Bureau of Consular Affairs, Russian Federation information page located at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html ("The Russian Federation does not permit the taking of voluntary depositions of willing witnesses in civil and commercial matters"); "Litigation and enforcement in the Russian Federation: overview," Bekeschenko, Edward and Lysenko, Dmitry, located at https://uk.practicallaw.thomsonreuters.com/5-502-0694?transitionType=Default&contextData=(sc.Default)&firstPage=true#co_anchor_a386514 ("The parties have a general obligation to disclose the evidence they rely on in support of their position. There is no express obligation to disclose all the evidence, including any that is helpful

to the other party"); *The International Comparative Legal Guide to: Litigation & Dispute Resolution 2019,* Chapter 30: Russia, located at https://www.morganlewis.com/-/media/files/publication/outside-publication/chapter/russia-chapter-intl-comparative-legal-guide-12th-edition.pdf ("There is no disclosure procedure in Russia similar to disclosure procedure in common law countries. Parties may only request the court to assist in locating and claiming evidence, but such evidence needs to be very precise and related to the subject matter of the dispute. No broad document collection is allowed. … In the absence of… an order by the court, the parties have no obligation to share relevant documents with each other. … Under existing procedural rules, there is no duty of the parties to preserve documents and other evidence pending trial….")

And, although none of this necessarily *excuses* Mr. Kurbanov's choices in the present litigation, it certainly helps to *explain* them. This is not, then, the typical case for sanctions in which a litigant who is fully familiar with United States civil litigation procedures willfully chooses to flout the process in bad faith. Rather, this is a situation in which a foreign-defendant who did not choose to litigate in the United States has nonetheless been forced to do so, requiring not only that claims against him be litigated in a foreign court, but also that he be subject to procedures directly contrary to those in his home country. Against this backdrop, Mr. Kurbanov's discovery failures are, at a minimum, *understandable* even if they are not permissible under the Federal Rules of Civil Procedure. As such, it is easy to see that Mr. Kurbanov lacks the requisite *bad faith* necessary for this Court to impose the ultimate sanction of dismissal. This factor, then, favors Mr. Kurbanov.

### B. Prejudice to Plaintiffs

The question of prejudice to Plaintiffs is both less straightforward and less significant than Plaintiffs would have the Court believe. First, it is important to differentiate here as between Mr. Kurbanov's failure to appear for his deposition and his failure to produce certain documents.

Turning then to Mr. Kurbanov's failure to appear for his deposition, as noted above, the conduct falls outside of the scope of Rule 37 inasmuch as Plaintiffs failed to move for an order compelling Mr. Kurbanov to appear. Even had they done so, however, it is important to note that it is far from clear that Mr. Kurbanov *could have* legally appeared for his deposition under Russian law even via video as the parties had contemplated.[3] Indeed, at least one federal district court to examine the question extensively concluded that such depositions were not permitted under Russian law:

> the Court is convinced that …it is in fact not legally possible to conduct the deposition in Russia. …Kontilai suggests that his deposition could be conducted by videographic means…. But Kontilai does not explain how this would surmount the barrier to deposing Kontilai in Russia. Moreover, as the State Department explains: "The Russian Federation does not permit the taking of voluntary depositions of willing witnesses in civil and commercial matters." State Department Information. Thus, in the absence of contrary authority, we have no reason to believe that a video deposition in Russia would be permissible under the Hague Convention. At least one Court has accepted a defendant's assertion of this principle. *See Interlabservice, OOO v. Illumina, Inc.,* 2017 U.S. Dist. LEXIS 153422, 2017 WL 4217133, at *9 (S.D. Cal. Sept. 20, 2017) (accepting defendant's assertion that "Russian law prohibits the taking of depositions in Russia for American lawsuits — even if the depositions are taken by videoconference") (citation omitted).

*United States SEC v. Collector's Coffee Inc.,* 2020 U.S. Dist. LEXIS 126369, at *7 (S.D.N.Y. July 17, 2020). *See also* United States Department of State, Bureau of Consular Affairs, Russian Federation information page located at https://travel.state.gov/content/travel/en/legal/Judicial-

---

[3] Unlike Mr. Kurbanov's failure to produce documents, his failure to appear at his deposition was not in violation of any order of this Court.

7

Assistance-Country-Information/RussianFederation.html ("The Russian Federation does not permit the taking of voluntary depositions of willing witnesses in civil and commercial matters.")[4]

To the extent that the deposition could not, then, have legally been taken in Russia in any event, Plaintiffs suffered no actual *prejudice* as a result of Mr. Kurbanov's failure to appear.[5] Moreover, as Plaintiffs might have surmised from Mr. Kurbanov's answers to interrogatories, even had Mr. Kurbanov been legally able to appear for his deposition (and had he done so), he most likely would have invoked his Fifth Amendment right against self-incrimination to most substantive questions. Here, too, while Mr. Kurbanov's failure to appear for his deposition may not have been *proper*, it cannot be said that this failure has *prejudiced* Plaintiffs inasmuch as Mr. Kurbanov would not have provided substantive testimony that would have assisted Plaintiffs in proving their case.

Mr. Kurbanov's failure to produce certain responsive documents[6] admittedly stands on a somewhat different footing, though not entirely so.

Presumably, the Plaintiffs asserted their action in good faith and, as such were (and are) well situated to be in command of the facts they alleged in support of the Complaint. This, of course, should minimize any actual prejudice felt by Plaintiffs. Indeed:

> Even in those cases where it may be found that failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction "must be no more severe * * * than is necessary to prevent

---

[4] This is, of course, simply one of the risks attendant to suing a foreign national in a United States Court: the Court must be cognizant of the sovereignty of the foreign nation and be cautious not to put a defendant to the Hobson's choice of violating the laws of his home country or abiding by an order of the Court.

[5] Mr. Kurbanov's deposition could not have occurred in the United States as Mr. Kurbanov does not have a U.S. Visa and there is little chance that he would be able to obtain one, particularly given the restrictions on travel due to COVID-19.

[6] Mr. Kurbanov produced some, but not all, responsive documents.

> prejudice to the movant." Accordingly, in determining whether to impose such sanction, the needs of the discovery party must be evaluated as well as the nature of the non-compliance and the Trial Court must consider "how the absence of such evidence [not produced] would impair [the other party's] ability to establish their case" and whether the non-complying party's "conduct [in not producing documents] would deprive [the other party] of a fair trial."

*Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504-505 (4th Cir. 1977)(footnotes omitted).

In the present case, the vast majority of documents sought by Plaintiffs that have not been produced relate to one of two issues: personal jurisdiction and damages. With respect to the former, this Court has already held – at least preliminarily at the 12(b)(6) stage – that Mr. Kurbanov is subject to personal jurisdiction in Virginia (and the United States). And, to the extent that Plaintiffs might be legitimately prejudiced by Mr. Kurbanov's failure to produce documents that might have arguably demonstrated connections with the United States, such prejudice can be completely eliminated with an order from this Court prohibiting Mr. Kurbanov from further disputing personal jurisdiction.

With respect to damages – and assuming that the Plaintiffs can first prove liability, which, as a purely legal matter, Mr. Kurbanov disputes – the only "prejudice" to Plaintiffs is in their inability to discern profits allegedly earned by Mr. Kurbanov directly attributable to the alleged infringement, a figure that is not only inherently difficult to prove in the best of circumstances, but also one that many copyright plaintiffs forego, given the availability of statutory damages (and the availability of enhanced damages if a plaintiff can prove willful infringement). In any event, Plaintiffs have subpoenaed banking and online payment records from third parties which, presumably, allow Plaintiffs to demonstrate revenues received by Mr. Kurbanov if Plaintiffs chose to proceed along those lines. In short, at the end of the day (and again, without attempting to *excuse*) Mr. Kurbanov's choices, the actual fallout from his

decisions is likely to have little impact on Plaintiffs' ability to prove their case. As such, this factor also favors Mr. Kurbanov.

### C. The Need for Deterrence of the Particular Sort of Non-Compliance.

As the Fourth Circuit has held, the "deterrence and lesser sanctions factors are somewhat intertwined." *Anderson v. Found. for Advancement*, 155 F.3d 500, 505 (4th Cir. 1998). And, as Mr. Kurbanov explains, there are adequate alternative sanctions available to the Court to sanction Mr. Kurbanov's failure to produce certain documents that the Court ordered he produce. For example, given Mr. Kurbanov's failure to produce server logs showing the geographic locations of the Websites' users, he can be precluded from further contesting the question of personal jurisdiction (the only thing that such logs would have shown). Similarly, to the extent that the server logs might have shown that Website users were indeed downloading songs owned by Plaintiffs, Mr. Kurbanov's non-compliance could be punished by the Court instructing the jury to find such downloading to be an established fact.[7] In short, to the extent the Court finds that Mr. Kurbanov's non-compliance requires deterrence, such deterrence can be accomplished with sanctions that do not require an entry of a default judgment.

### D. Availability of Other Sanctions.

To the extent that Plaintiffs have been legitimately prejudiced by Mr. Kurbanov's discovery failures, this Court has a panoply of less-severe remedies at its disposal including the use of adverse inferences and limitations on Mr. Kurbanov's ability to present evidence or maintain certain defenses that would have otherwise required the discovery sought by Plaintiffs. *See* Fed. R. Civ. P. 37(b)(2). There is no question but that such sanctions will have a punitive effect: certain facts that Plaintiffs would otherwise be required to prove may be deemed to be

---

[7] Mr. Kurbanov reserves his right, however, to continue to argue on appeal that the Court's order that he produce server logs that he never maintained was in error.

established; certain defenses that Mr. Kurbanov might otherwise have been able to mount will be unavailable to him. These are effective, appropriate sanctions that are commensurate with Mr. Kurbanov's failures to fully participate in the discovery process. And, because these sanctions are available, the Court must opt for them in lieu of dismissal. The fifth factor, then, favors Mr. Kurbanov.

### E. Blameworthiness

As Mr. Kurbanov's counsel noted in their motion to withdraw – which was denied by this Court – Mr. Kurbanov himself made the decision not to provide documents responsive to Plaintiff's requests and not to appear at his deposition. These decisions were not decisions made by counsel. As such, this factor favors Plaintiffs.

### F. Prejudice to the Judicial Process

Although Mr. Kurbanov's choices have certainly *inconvenienced* this Court, necessitating some motion practice that might otherwise have been avoided, his conduct has not *prejudiced* the overall judicial process inasmuch as the Plaintiffs (presumably) had evidence to support their allegations prior to initiating the present action, evidence that they can present at trial to meet their burden of proof. Moreover, and as is discussed, because other sanctions are available to the Court, this case can proceed with the likelihood that Mr. Kurbanov will be precluded from putting on certain evidence or pursuing certain defenses which would otherwise have been available to him. Indeed, Mr. Kurbanov's choices will likely have the (albeit unintended) consequence of *streamlining* the process given that certain facts will likely be presumed to be true, without the Plaintiffs being confronted with evidence to the contrary. And, to the extent that Plaintiffs' claims cannot succeed even when their factual allegations are uncontested, Mr. Kurbanov would still be entitled to a finding of summary judgment in his favor. Either way,

though, the judicial process has not been prejudiced and a just result can still be obtained. Accordingly, this factor favors Mr. Kurbanov.

### G. Public Interest.

Finally, as both the Fourth Circuit's previous cases and this Court's decisions demonstrate, the sixth factor is mainly concerned with the strong public policy that favors the resolution of cases not by default, but rather on their merits. *See, e.g., Blue Cross Blue Shield of N.C. v. Jemsek Clinic, P.A. (In re Jemsek Clinic, P.A.),* 850 F.3d 150, 159 (4th Cir. 2017)("Finally, regarding the sixth factor, public policy strongly favors deciding cases on the merits"); *Holmes v. Wal-Mart Stores, L.P.,* 2011 U.S. Dist. LEXIS 46021, at *32 (E.D. Va. Mar. 9, 2011)(in considering the sixth factor: "It has been established that there is a strong public policy in favor of resolving cases on the merits.")

In the present case, despite Mr. Kurbanov's discovery failures, there are legitimate issues that can and should be decided on the merits. These include questions such as whether the operation of the Websites constitutes circumvention of a technological measure and whether (even on the facts as alleged) Mr. Kurbanov can be held liable for the alleged copyright infringement of the Websites' visitors. As such, the final factor also favors Mr. Kurbanov.

Because Plaintiffs cannot prevail under either the Fourth Circuit's four-part test utilized in connection with Rule 37 sanctions or its overlapping six-part test applicable to the imposition of sanctions under the Court' inherent powers, Plaintiffs' motion must be denied.

## CONCLUSION

For the reasons stated hereinabove, Plaintiffs' Motion for a Default Judgment should be denied.

Dated: August 18, 2021

**Respectfully Submitted:**

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger (VSB No. 40163)
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
Facsimile: (804) 783-7291
jgeiger@sandsanderson.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of August, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

    Scott A. Zebrak, Esquire
    Matthew J. Oppenheim, Esquire
    Lucy Grace D. Noyola, Esquire
    Kellyn M. Goler, Esquire
    Oppenheim + Zebrak, LLP
    4530 Wisconsin Avenue, NW, 5th Floor
    Washington, DC 20016
    Email: scott@oandzlaw.com
           matt@oandzlaw.com
           lucy@oandzlaw.com
           kellyn@oandzlaw.com
    *Counsel for Plaintiffs*

                                          /s/ Jeffrey H. Geiger
                                          Jeffrey H. Geiger