# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

UMG RECORDINGS, INC., *et al.*,

               *Plaintiffs,*

               v.

KURBANOV, *et al.*,

               *Defendants.*

Case No. 1:18-cv-00957-CMH-TCB

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR REQUEST FOR DAMAGES, A PERMANENT INJUNCTION, AND ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

  I.   Plaintiffs' Copyrighted Sound Recordings .................................................. 3

  II.  YouTube's Technological Protections for Copyrighted Content ................ 5

  III. Defendant's Design and Operation of the Websites for Purposes of Infringement and Circumvention ............................................................................... 6

  IV. Plaintiffs' Efforts to Combat Defendant's Piracy ....................................... 10

  V.  Defendant's Refusal to Comply with His Discovery Obligations and This Court's Orders ....................................................................................................... 11

ARGUMENT ......................................................................................................... 13

  I.   Plaintiffs Are Entitled to an Award of Statutory Damages. ........................ 14

      A.   Plaintiffs Are Entitled to Statutory Damages for Defendant's Willful Infringement of the Works in Suit. ............................................................. 14

      B.   Plaintiffs Are Entitled to Statutory Damages for Defendant's Willful Circumvention of YouTube's Technological Protective Measures. ...................... 19

      C.   Plaintiffs Request a Substantial Award of Statutory Damages. ........................... 21

  II.  A Permanent Injunction Should Be Entered. ............................................. 22

      A.   Plaintiffs Have Suffered Irreparable Injury. ........................................ 22

      B.   Remedies at Law Are Inadequate. ..................................................... 23

      C.   The Balance of Hardships Favors Plaintiffs. ....................................... 24

      D.   Injunctive Relief Is in the Public Interest. ........................................... 24

      E.   Plaintiffs' Proposed Order Is Reasonable. ........................................... 25

  III. Plaintiffs Are Entitled to Recover Their Reasonable Attorneys' Fees and Full Costs. ........................................................................................................ 27

CONCLUSION ...................................................................................................... 28

On August 27, 2021, this Court granted Plaintiffs' motion for default judgment—thus establishing issues of liability in favor of Plaintiffs—and instructed Plaintiffs to file a brief setting forth their requested remedies.  ECF No. 125; ECF No. 127.  On September 16, 2021, the Magistrate Judge issued a report and recommendation in support of that decision.  ECF No. 128. On October 1, 2021, the District Judge adopted the report and recommendation and ordered that default judgment be entered in favor of Plaintiffs.  ECF No. 129.  Plaintiffs now respectfully file this memorandum in support of their request for statutory damages for copyright infringement under 17 U.S.C. § 504(c) and for circumvention of technological measures under 17 U.S.C. § 1203(c)(3)(A), a permanent injunction, and a ruling that Plaintiffs are entitled to an award of attorneys' fees and costs.[1]

## **INTRODUCTION**

Defendant Tofig Kurbanov ("Defendant") engages in and encourages unlawful copyright infringement through a pair of websites that he owns and operates, located at www.flvto.biz (the "FLVTO Site") and www.2conv.com (the "2conv Site") (collectively, "Defendant's Websites" or the "Websites").  The Websites are tools to convert authorized streams of music videos on third-party streaming sites, including YouTube, into unauthorized permanent downloadable audio files.  This type of online music piracy, called "stream-ripping," causes substantial and irreparable harm to Plaintiffs, who own or possess an exclusive license in the United States under copyright to many of the sound recordings being unlawfully exploited on Defendant's Websites. Defendant's conduct amounts to copyright infringement in violation of the Copyright Act, 17

---

[1] Depending on the size of the damage award, Plaintiffs may opt to forego attorneys' fees and costs.  Accordingly, Plaintiffs at this time seek a ruling that they are entitled to reasonable attorneys' fees and costs, but that the submission of a statement of fees and costs would not be due until 30 days after the Court issues its final order on damages and an injunction.

U.S.C. § 106, and unlawful circumvention of a technological measure in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201.

Using Plaintiffs' copyrighted music as a lure, Defendant has facilitated, and profited from, piracy on a massive scale. As the Fourth Circuit observed, Defendant's Websites are "two of the most popular stream-ripping websites in the world and are among the most popular websites of any kind on the Internet." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349 (4th Cir. 2020). In 2018 alone, the Websites had almost 32 million United States users, who collectively conducted over 96 million stream-ripping sessions. Defendant earns untold amounts of money from paid online advertising displays on the Websites.

Defendant has achieved this success by touting the free availability of Plaintiffs' sound recordings on his Websites. At times the Websites prominently displayed a list of the "Top 100 most converted and downloaded MP3s" or videos that were "Most Watched Today," virtually all of which showcased Plaintiffs' popular recordings. The Websites also included step-by-step tutorials, featuring well-known recordings owned by Plaintiffs, that showed users how to download "music for free." The Websites used Plaintiffs' popular music to attract visitors, displaying messages such as: "At the top of the Flvto.biz website, you will see a link of [sic] the most popular music on YouTube at the moment. This will give a person an idea of what he needs to get to expand their music library."

Not only has Defendant violated the Copyright Act and Section 1201 of the DMCA, he has also willfully disobeyed this Court's orders. In particular, in an apparent attempt to hide the full scope of his unlawful conduct and his financial resources, Defendant refused to comply with the Court's orders to produce web server data and financial information. This litigation misconduct made it impossible to calculate the full extent of damages. Defendant should not be

rewarded for hiding this information, and all reasonable inferences should be drawn against Defendant and in favor of Plaintiffs when assessing damages.

As set forth in greater detail below, the record in this case supports a substantial award of damages, permanent injunctive relief that bars Defendant from engaging in further copyright infringement and illicit stream-ripping, and an award of attorneys' fees and costs.

## FACTUAL BACKGROUND

### I.    Plaintiffs' Copyrighted Sound Recordings

Plaintiffs are record companies that create, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in the United States.  ECF 1, ¶ 1.[2] Under the Copyright Act, Plaintiffs have the exclusive U.S. rights to, *inter alia*, reproduce their copyrighted works, distribute copies or phonorecords of their copyrighted works, and perform their copyrighted works by means of a digital audio transmission to the public.  ECF 1, ¶ 26.  In addition to manufacturing, distributing, licensing, and selling phonorecords in the form of CDs, vinyl records, and other tangible media, Plaintiffs distribute their sound recordings in the form of digital audio files delivered or performed over the internet through authorized services.  ECF 1, ¶ 27; Declaration of Brad Cohen ("Cohen Decl.") ¶ 7; Declaration of Wade Leak ("Leak Decl.") ¶ 7; Declaration of Alasdair McMullan ("McMullan Decl.") ¶ 7.  Plaintiffs and the legitimate services with which they work provide a wide variety of lawful ways for consumers to enjoy recorded music that is distributed and performed over the internet, including streaming and digital download services, such as Apple Music, iTunes, Google Play, Amazon, Spotify, and many others.  ECF 1, ¶ 27; Cohen Decl. ¶ 7; Leak Decl. ¶ 7; McMullan Decl. ¶ 7.  Plaintiffs

---

[2] Because Defendant has defaulted, the well-pleaded factual allegations in the Complaint are deemed admitted. *McDonald v. Robinson*, No. 1:18-cv-697 (LMB/TCB), 2020 WL 10456846, at *11 (E.D. Va. Sept. 4, 2020) (citing *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014)).

authorize online streaming services, such as Google's YouTube, to stream their copyrighted works.  Cohen Decl. ¶ 7; Leak Decl. ¶ 7; McMullan Decl. ¶ 7.  In return, Google makes payments to Plaintiffs and commits to protecting their copyrighted sound recordings from unauthorized access and copying.  *Id.* ¶¶ 7-8.

Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to discover and develop recording artists and to create, manufacture, advertise, promote, sell, and distribute sound recordings embodying their performances.  ECF 1, ¶ 28; Cohen Decl. ¶ 6; Leak Decl. ¶ 6; McMullan Decl. ¶ 6.  Plaintiffs, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the legitimate sale, distribution, and licensing of sound recordings to the public. ECF 1, ¶ 28; Cohen Decl. ¶ 6; Leak Decl. ¶ 6; McMullan Decl. ¶ 6.

Amended Exhibit A to the Complaint is a non-exhaustive and representative list of Plaintiffs' copyrighted sound recordings.  ECF 1, ¶ 49; ECF No. 79-1.[3]  It is undisputed that Plaintiffs hold exclusive rights under U.S. copyright to the 1,618 sound recordings in suit. Cohen Decl. ¶ 3; Leak Decl. ¶ 3; McMullan Decl. ¶ 3; Ex. 1 at 2–3.[4]  The 1,618 works include iconic and popular recordings by some of the most well-known artists in the world, including Beyoncé, Justin Bieber, One Direction, Ariana Grande, Faith Hill, and Bruno Mars, to name just a few.  ECF No. 79-1.  Had Defendant complied with this Court's order to produce web server data, Plaintiffs expect they would have identified many more of their copyrighted sound recordings that were infringed by Defendant.

---

[3] In April 2021, in accordance with Federal Rule of Civil Procedure 15(a)(2) and with Defendant's written consent, Plaintiffs amended Exhibit A to the Complaint.  ECF No. 79.
[4] All exhibits are attached to the Declaration of Kellyn M. Goler ("Goler Decl."), filed contemporaneously with this brief.

## II.     YouTube's Technological Protections for Copyrighted Content

YouTube operates primarily as a service for streaming videos, including music videos containing Plaintiffs' copyrighted sound recordings.  ECF 1, ¶¶ 34, 37; Declaration of Robert W. Schumann ("Schumann Decl.") ¶¶ 10, 12.  YouTube has implemented multiple measures to protect that content from unauthorized access or copying.  Schumann Decl. ¶¶ 13-15; ECF 1, ¶ 36.  YouTube's standard service and Terms of Service prohibit users from downloading and copying videos and other content without authorization or permission.  Schumann Decl. ¶ 13; Ex. 2.  YouTube's Terms of Service also prohibit its users from other activities, including circumventing or otherwise interfering with YouTube's features that prevent or restrict the copying or other use of its content.  Schumann Decl. ¶ 13; Ex. 2.  YouTube generally requires a user to watch a video on that video's YouTube "watch page."  Schumann Decl. ¶ 14.  Each watch page contains a media player authorized by YouTube to play the video on the page and underlying source code by which the player accesses and plays media files from YouTube's servers.  *Id.* ¶ 11.  YouTube's standard service provides no features to download a video or related audio file or to directly access or copy a URL for a media file, and a user is confronted with a series of technical obstacles in accessing and using the numerous media-file URLs in the source code for a YouTube watch page.  *Id.* ¶¶ 13–14.

Further, for YouTube videos containing copyrighted content, including Plaintiffs' sound recordings, the media-file URLs are protected by a "rolling cipher."  *Id.* ¶ 15.  The authorized media player contains the tools and YouTube proprietary cryptographic algorithm necessary to identify and unscramble the rolling cipher.  *Id.*; ECF 1, ¶ 36.  At least one foreign tribunal has found that "the cipher and key routine is operated by YouTube as agent for, licensee of or in conjunction with the copyright owner such that the cipher and key routine is an 'effective' technological measure" in protecting copyrighted works.  Ex. 3, ¶ 28.

### III.     Defendant's Design and Operation of the Websites for Purposes of Infringement and Circumvention

Defendant owns and operates the Websites.  ECF 1, ¶ 1; Answer ¶ 1.  Defendant's Websites are designed and exist for the purpose of profiting from the unauthorized reproduction and distribution of popular copyrighted recorded music streamed on third-party streaming sites, including YouTube.  Schumann Decl. ¶¶ 16-17, 20; ECF 1, ¶ 37.  Indeed, Defendant's Websites explicitly describe their purpose in terms of "Download[ing] Music from YouTube," Ex. 4 at 1, "download[ing] . . . favourite tracks," Ex. 5 at 1, and "Rip[ping] Music from YouTube to iTunes," Ex. 6 at 1.  Users of Defendant's Websites ("Users") do not pay Plaintiffs anything to stream-rip and download their copyrighted sound recordings.  Schumann Decl. ¶ 17.  Instead, Defendant generates revenue for himself by selling advertising on the Websites.  *See, e.g.*, Ex. 7; Ex. 8 at 5.

Defendant actively encourages Users to infringe copyrighted sound recordings.  Schumann Decl. ¶¶ 20, 22.  For example, the FLVTO Site featured lists of the "Top 100 most converted and downloaded MP3s" and the 2conv Site featured lists of the videos "Most Watched Today," both of which overwhelmingly included popular commercial sound recordings owned by Plaintiffs.  *Id.* ¶ 21; Exs. 9–12.  Both lists also provided direct links to convert the videos to MP3 files.  Schumann Decl. ¶ 21; Exs. 9–12.  Below are screenshots of two of those lists.



Defendant's Websites specifically instruct Users on how to use Defendant's Websites to download music, such as "entire albums of Beatles" music, from YouTube and other third-party streaming sites.  Schumann Decl. ¶ 23; Ex. 13; Ex. 14.  One of the web pages states: "[N]ot everyone knows that we do not have to pay for this content[;] we can get free music.  We can download all the music, films, audio books and other content absolutely for free and add it to our iTunes without paying for it."  Ex. 17.

Defendant's social media accounts are just as shameless.  For example, on the Twitter and Facebook accounts associated with Defendant's Websites, Defendant posted at least 31 times about Plaintiffs' copyrighted works asserted in this case.  Goler Decl. ¶ 6; Ex. 18.  Below is a screenshot of a tweet, providing a direct link to the 2conv Site to stream-rip a YouTube music video featuring one of the works in suit.



Defendant's Websites are immensely popular and among the most-visited websites in the world.  *See Kurbanov*, 963 F.3d at 349.  Between October 2017 and September 2018, the Websites attracted over 300 million visitors from around the world. Ex. 19 at 12–28.  In the United States, between October 2017 and May 2021, over 300 million users visited Defendant's Websites.  Schumann Decl. ¶ 30; Ex. 20 at 2; Ex. 21 at 2.

In a few simple steps, Users can stream-rip infringing copies of Plaintiffs' sound recordings and distribute those infringing copies for free to any person who wants them. Schumann Decl. ¶¶ 19; ECF 1, ¶¶ 40, 42.  On either of Defendant's Websites, a User first enters the watch-page URL of a desired YouTube video into a text-entry box prominently displayed on the homepage.  Schumann Decl. ¶ 19; ECF 1, ¶¶ 42, 43.  After checking a box agreeing to the Website's terms of use, the User clicks a "convert" button.  Schumann Decl. ¶ 19; ECF 1, ¶¶ 42, 43.  In a matter of seconds, the page changes, and the User clicks on a "download" button or link for an MP3 file of the audio portion of the desired video.  Schumann Decl. ¶ 19.  When the User clicks on the download button or link, the MP3 file downloads from the Defendant's Websites' server and is distributed to the User's computer.  *Id.*; ECF 1, ¶ 44.

Defendant's Websites provide a quick and easy tool to obtain a permanent downloadable audio file of commercialized copyrighted music from YouTube by bypassing YouTube's multi-faceted protection system.  Schumann Decl. ¶¶ 16–17, 26–27.  Defendant has admitted that his Websites incorporate third-party software known as youtube-dl (available at https://youtube-dl.org) to convert video streams from YouTube and other sites into downloadable audio files.  Ex. 8 at 5.  Defendant's Websites use the youtube-dl program to retrieve and parse the source code for the watch-page URL of a desired video in order to extract the data it needs to access the protected YouTube content.  Schumann Decl. ¶ 29.  For YouTube videos protected by the rolling cipher, youtube-dl performs additional steps to decrypt the rolling cipher to access an audio or other media file.  *Id.*  Thus, Defendant's acts of infringement and circumvention were and are willful, intentional, and purposeful, in their disregard of and indifference to Plaintiffs' rights.  ECF 1, ¶¶ 56, 64, 72, 83, 93.

Defendant operates his Websites in concert with other entities and individuals.  Contrary to his representation that he operates the Websites solely by himself, *see* Ex. 8 at 2–3, documents produced by Defendant, as well as third parties, identify at least four individuals and two companies working with Defendant in his infringing scheme.  For example, Defendant produced several "insertion orders," which purport to be contracts between an advertiser and a publisher to run advertising campaigns on Defendant's Websites.  Ex. 7.  In each of the insertion orders produced by Defendant, the publisher—i.e., the party that controls what appears on the Websites—is Able Sun Holdings Ltd. ("Able Sun"), a company based in Cyprus; Able Sun's General Director, Natalia Kyriakidou, signed the advertising contract.  *See* Ex. 7; Goler Decl. ¶ 5.  The insertion orders also identify three other individuals as Able Sun contacts for advertising on Defendant's Websites: Pavel Vasin, Daria Jones, and Alexandra Dimakos.  *E.g.*,

Ex. 7 at 2, 58, 102.  Additionally, third-party document productions indicate that Mr. Vasin and Ms. Jones work at or with Hotger Ltd. ("Hotger"), a Russia-based company that arranges advertising on Defendant's Websites, *e.g.*, Ex. 22 at 1–2; Ex. 23 at 1, Ex. 24 at 1, and that Hotger communicates with Users via the Websites' social media accounts.  *E.g.*, Ex. 25 at 1; Ex. 26 at 1.

## IV.  Plaintiffs' Efforts to Combat Defendant's Piracy

Plaintiffs, and trade associations working on their behalf, have been combatting stream-ripping for years.  As a result of their antipiracy efforts, courts or other tribunals in several countries, including the United Kingdom, Australia, Italy, Denmark, Russia, and Spain, have ordered internet service providers to block access to Defendant's Websites.  Ex. 3, ¶¶ 2–3, 93, 103.  For example, a tribunal in the United Kingdom reached the following conclusions about Defendant's Websites:

- "The whole purpose of the technology offered by the Infringing Sites is to circumvent the TPMs ['technological protective measures'] on streaming sites like YouTube.  The TPMs are designed to protect copyright.  It is an overwhelming inference that (despite these terms of use) the site operators know that the users are using their services to infringe copyright."

- "[T]he reason these Sites and the Downloader App exist and are operated in this way is to enable users to obtain copyright works illegally.  The reason they provide 'conversion' is to enable users to obtain permanent downloaded content from streaming services which have safeguards to prevent just that happening."

- "Infringing Sites constitute a means of enabling users to infringe copyrights.  YouTube deliberately prevents downloading of content; the conversion technology provided by the Sites provides a means of getting around these safeguards."

*Id.* ¶¶ 39, 56–57.  Similarly, an Australian tribunal found infringement by Defendant's Websites based on evidence that the FLVTO Site was used to "strip music files out of each of the musical works and sound recordings."  Ex. 28 at 13–14, ¶¶ 35–42.

Between July 2016 and August 2017, the Recording Industry Association of America ("RIAA") sent seven notices on behalf of Plaintiffs to Defendant's Websites, demanding that the

Websites remove or disable access to files infringing Plaintiffs' copyrighted works.  Ex. 29.  In May 2018, the RIAA sent a cease-and-desist letter to Defendant's DMCA agent, demanding that Defendant's Websites disable all stream-ripping functionality used to infringe Plaintiffs' sound recordings and circumvent technological measures that prevent copying of Plaintiffs' sound recordings from YouTube.  Ex. 30.  Defendant failed to remove the infringing content or disable the Websites' stream-ripping functionality; instead, he merely provided the disingenuous response that his "company's policy is aimed at protecting the interests of all rights holders and compliance with applicable law."  Ex 31.  In October 2019, the RIAA sent notices to Google, identifying flvto.biz and 2conv.com as URLs that "provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading."  Ex. 32.  Google delisted the home pages of Defendant's Websites such that they no longer appeared in Google search results, but the delisting did not extend to other webpages of Defendant's Websites.  *See id.*

## V.      Defendant's Refusal to Comply with His Discovery Obligations and This Court's Orders

In August 2018, Plaintiffs filed this lawsuit against Defendant, asserting: four counts under the Copyright Act for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement; and one count under Section 1201 of the DMCA for circumvention of technological measures.  ECF No. 1.

In October 2018, Defendant filed a motion to dismiss for lack of personal jurisdiction. ECF No. 24.  The Court granted Defendant's motion.  ECF No. 30.  The Fourth Circuit reversed and remanded.  *Kurbanov*, 963 F.3d at 355.  On Defendant's motion, the Court stayed the proceedings while Defendant sought review by the U.S. Supreme Court, which denied

Defendant's petition for certiorari in January 2021.  *See* ECF No. 68.  On remand, this Court found that Defendant is subject to the Court's jurisdiction.  ECF No. 74.

Discovery began in April 2021, but Defendant's failure to meet his discovery obligations, along with his willful disobedience of this Court's orders, stymied discovery.  Plaintiffs filed two motions to compel Defendant to comply with his discovery obligations.  The first motion sought various documents relevant to core issues in the case that Defendant refused to produce or had produced with improper redactions, including communications with Users of Defendant's Websites, documents concerning Defendant's alleged non-infringing uses of the Websites, and documents sufficient to show Defendant's revenues, costs, and profits in connection with the Websites.  ECF No. 91 at 3.  The second motion sought web server data that Defendant's Websites necessarily generate in the ordinary course of operations, including data that identifies: (a) the YouTube videos being stream-ripped, (b) the MP3 audio files being copied and distributed, and (c) the geographic locations of the Users downloading the files.  ECF No. 98. The Court granted both of Plaintiffs' motions, ordering Defendant to produce the requested documents and data.  ECF No. 97; ECF No. 105.  Despite the Court's multiple warnings that non-compliance may result in the entry of a default judgment, Defendant failed to comply with both discovery orders.  ECF No. 128 at 2, 4–5.

In July 2021, days before his noticed deposition, Defendant's counsel informed Plaintiffs' counsel that Defendant did not intend to appear for his deposition.  ECF No. 128 at 3. The same day, Defendant's counsel moved to withdraw as counsel.  ECF No. 114.  Defendant's counsel explained that, despite the Fourth Circuit's ruling to the contrary and the U.S. Supreme Court's denial of his petition for certiorari, Defendant held a "firm conviction that he is not subject to personal jurisdiction in this Court."  ECF No. 115 at 2.  Defendant's counsel also

confirmed that Defendant had no intention of complying with the Court's orders or participating further in the proceedings.  ECF No. 115 at 2.  The Court denied Defendant's counsel's motion to withdraw.  ECF No. 118.

In August 2021, Plaintiffs filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 37 based on Defendant's willful disobedience of two Court orders and his refusal to appear for his deposition.  ECF No. 119; ECF No. 120.  The Court granted Plaintiffs' motion for default judgment, ECF No. 125, and ordered the parties to file briefing on remedies, ECF No. 127.  The Magistrate Judge's Report and Recommendation found that "Defendant acted in bad faith in failing to comply with the Court's two orders requiring him to respond to Plaintiffs' discovery requests fully and completely and by refusing to attend his scheduled deposition" and that Defendant's misconduct "substantially prejudice[d] Plaintiffs' ability to litigate this case."  ECF No. 128 at 4.  The Magistrate Judge also found that, given Defendant's failure to comply with the Court's orders and his insistence that he is not subject to the Court's jurisdiction, "there is a clear need to deter Defendant's behavior in this case."  *Id.* at 5.  Judge Hilton adopted the Magistrate Judge's Report and Recommendation and issued an order granting Plaintiffs' motion for default judgment and ordering the entry of default judgment in favor of Plaintiffs.  ECF No. 129.

## ARGUMENT

Defendant's liability is established, in view of the Court's entry of default judgment. When liability is determined through default judgment, the Court independently determines the appropriate amount of damages or other relief based on either an evidentiary hearing or affidavits, declarations, testimony, or other documentary evidence in the record.  *See, e.g.*, *Diaz v. Naylor*, No. 1:18-cv-1274 (LMB/TCB), 2019 WL 937308, at *1 (E.D. Va. Feb. 26, 2019);

*Lundie v. Smith & Cohen, LLC*, No. 2:15cv291, 2016 WL 717113, at *2 (E.D. Va. Jan. 26, 2016), *report and recommendation adopted*, 2016 WL 715736 (E.D. Va. Feb. 18, 2016); *Scott v. Arrowhead Grp., Inc.*, No. 1:06cv366, 2007 WL 5084072, at *3 (E.D. Va. Aug. 31, 2007).  No evidentiary hearing is necessary here because there is an adequate basis in the record for the requested relief.  *See, e.g.*, *Int'l Painters & Allied Trades Ind. Pension Fund v. Metro Glass & Mirror, Inc.*, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 91 (4th Cir. 1989).  Plaintiffs address their requested remedies below.

I.      **Plaintiffs Are Entitled to an Award of Statutory Damages.**

   A.      **Plaintiffs Are Entitled to Statutory Damages for Defendant's Willful Infringement of the Works in Suit.**

Plaintiffs seek statutory damages for Defendant's willful infringement of Plaintiffs' 1,618 copyrighted sound recordings listed in Amended Exhibit A to the Complaint.  Section 504(c) of the Copyright Act provides that a copyright owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages, instead of actual damages and profits, in an amount ranging between $750 and $30,000, as the Court considers just, for each work infringed.  17 U.S.C. § 504(c)(1).  If the Court finds that the infringement was willful, the Court in its discretion may increase the award up to $150,000 per work.  17 U.S.C. § 504(c)(2).

Courts have wide discretion in setting an amount of statutory damages for copyright infringement.  *MTI Enters. Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, No. 1:18-cv-650 (TSE/IDD), 2018 WL 6928927, at *5 (E.D. Va. Dec. 7, 2018).  Where appropriate, courts routinely issue awards at the high end of the statutory damages range per work infringed.  *See, e.g.*, *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) (awarding $150,000 per infringed work); *MTI Enters.*, 2018 WL 6928927, at *5 (awarding

14

$150,000 per infringed work); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (affirming jury award of $72,000 per infringed work).

In determining an appropriate damages award under the Copyright Act, courts in the Fourth Circuit consider a number of factors, including expenses saved by the defendant in avoiding a licensing agreement, profits reaped by the defendant in connection with the infringement, the plaintiff's lost revenues, the defendant's history of copyright infringement, the defendant's imperviousness to deterrence or rehabilitation, the extent of a defendant's knowledge of copyright laws, and any misleading or false statements. *See, e.g.*, *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 509 (E.D. Va. 2009); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996). "Infringement is willful for enhanced statutory damages purposes 'when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights.'" *Malibu Media, LLC v. Doe*, No. 1:19-cv-519 (LO/TCB), 2019 WL 7476684, at *4 (E.D. Va. Dec. 9, 2019) (Buchanan, M.J.) (quoting *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 649 (E.D. Va. 2011)). Statutory damages do "not merely compel[] restitution of profit and reparation for injury but also [are] designed to discourage wrongful conduct." *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

Here, Defendant's conduct has been the very definition of willful. *See* ECF 1, ¶¶ 56, 64, 72. Defendant actively encouraged Users to use the Websites to infringe Plaintiffs' copyrighted works. Defendant's Websites target YouTube and other streaming sites, *i.e.*, well-known sources of an incredible breadth of known copyrighted material, including Plaintiffs' copyrighted works. Schumann Decl. ¶¶ 10, 17–18. On his Websites and through his social media accounts,

Defendant induced and instructed Users to download specific copyrighted music using his Websites.  *Id.* ¶¶ 18–23; Ex. 13; Ex. 18.  Defendant flagrantly disregarded the rights of Plaintiffs and other copyright owners, misleadingly instructing Users that they "do not have to pay for this content" and can "download all the music . . . absolutely for free."  Ex. 17.  Moreover, Defendant had actual knowledge that his conduct was infringing: the RIAA sent notices to Defendant, notifying him of the infringement on his Websites and demanding that he stop it, but he continued his infringing activities.  Ex. 29.

The harm to Plaintiffs from Defendant's infringement has been enormous.  Stream-ripping causes lost revenue in legitimate sales and streaming and less money for Plaintiffs in invest in new artists and the music landscape; stream-ripping also negatively impacts the recorded music industry as a whole, including artists, session musicians, union workers, and others.  Cohen Decl. ¶¶ 9–10, 12; Leak Decl. ¶¶ 9–10, 12; McMullan Decl. ¶¶ 9–10, 12.  As the Fourth Circuit noted, Defendant's Websites are "two of the most popular stream-ripping websites in the world and are among the most popular websites of any kind on the Internet." *Kurbanov*, 963 F.3d at 349.  Between October 2017 and September 2018, the Websites attracted over 300 million visitors from around the world.  *See* Ex. 19 at 12–28.  In the United States, between October 2017 and May 2021, over 300 million users visited Defendant's Websites. Schumann Decl. ¶ 30; Ex. 20; Ex. 21.

At the same time, Defendant's litigation misconduct has made it impossible to calculate the full extent of Plaintiffs' harm from Defendant's infringement.  Cohen Decl. ¶ 11; Leak Decl. ¶ 11; McMullan Decl. ¶ 11.  Defendant refused to comply with the Court's order to produce web server data that would show the scope of Defendant's stream-ripping and the number of illegal downloads of Plaintiffs' copyrighted works.  ECF No. 128 at 5.  It is reasonable to infer that, had

Defendant produced that data, the data would have shown infringement of many thousands of Plaintiffs' copyrighted sound recordings, in addition to the 1,618 works listed in Exhibit A to the complaint that were infringed.  Schumann Decl. ¶ 33; Ex. 33 at ¶ 17.  Moreover, even if Defendant had preserved and produced that data, it would have reflected only a portion of the harm caused to Plaintiffs because the infringing music files that Defendant provides through his Websites are in an unrestricted format that can be copied and distributed to countless others. Schumann Decl. ¶ 17; Cohen Decl. ¶ 11; Leak Decl. ¶ 11; McMullan Decl. ¶ 11.

Defendant's litigation misconduct has made it similarly impossible to calculate Defendant's profits from the Websites, because he disobeyed this Court's order to produce financial documents.  Defendant should not be rewarded for refusing to comply with this Court's orders to produce financial information and web server data that would have helped determine the full extent of damages.  Rather, all reasonable inferences should be drawn against Defendant and in favor of Plaintiffs when assessing damages.  *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 712 (6th Cir. 2007) ("[T]he general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." (citation and quotation omitted)); Fed. R. Civ. P. 37(b).  Given the popularity of the Websites, it is reasonable to infer that, had Defendant produced financial information, it would have shown that Defendant's revenue from advertising is very substantial and that revenue is derived from and driven by infringement.

Defendant's Websites are parasitic in purpose and use.  They profit from piracy that attacks the creative community, including Plaintiffs and their artists, solely to put money in the pockets of Defendant and those acting in concert with him.  While Defendant has claimed there

are hypothetical lawful uses of his Websites, he has conceded that he is unable to produce any documents showing lawful, non-infringing uses. Goler Decl. ¶ 7; ECF No. 95 at 5. Instead, Defendant's own stated purpose for the Websites is to "rip" music from YouTube videos into downloadable files, Ex. 6; Ex. 14, and Defendant consistently and repeatedly posted messages on his Websites and social media accounts that encouraged Users to use the Websites to stream-rip popular music, including Plaintiffs' copyrighted sound recordings, Exs. 4–6, 8–15. Indeed, the U.S. Trade Representative has identified the FLVTO Site in a list of online markets "associated with infringing activity" in which "the owners, operators, or users . . . reportedly engage in or facilitate substantial piracy or counterfeiting to the detriment of U.S creators and companies." Ex. 34 at 13, 20; Ex. 35 at 15, 22. The Trade Representative noted that the FLVTO Site "continues to threaten legitimate streaming audio and video services, music performers, and composers." Ex. 34 at 20; Ex. 35 at 22.

Defendant is also impervious to deterrence or rehabilitation. As discussed above, courts around the world have determined that Defendant's stream-ripping operation is illegal. Despite receiving Plaintiffs' infringement notices and cease-and-desist letter, Defendant continued to operate his Websites to enable and facilitate stream-ripping of copyrighted content. He continued to infringe unabated throughout the course of this litigation. Moreover, despite warnings from this Court, he has knowingly refused to comply with the Court's discovery orders and his discovery obligations. The Magistrate Judge concluded that "Defendant has therefore clearly demonstrated 'a pattern of indifference and disrespect to the authority of the court' that supports a finding of bad faith." ECF No. 128 at 4 (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 93 (4th Cir. 1989)).

**B.      Plaintiffs Are Entitled to Statutory Damages for Defendant's Willful Circumvention of YouTube's Technological Protective Measures.**

Plaintiffs also seek statutory damages for Defendant's willful circumvention of

YouTube's technological measures under Section 1201 of the DMCA.  Under Section 1203(c)(3)

of the DMCA, a party may elect, at any time before final judgment is entered, to recover an

award of statutory damages, instead of actual damages, in an amount between $200 and $2,500,

as the court considers just, per act of circumvention.  17 U.S.C. § 1203(c)(3)(A).[5]  The DMCA

defines circumvention of a technological measure to include descrambling a scrambled work,

decrypting an encrypted work, or otherwise avoiding, bypassing, removing, deactivating, or

impairing a technological measure that effectively controls access to or protects a right of a

copyright owner.  17 U.S.C. § 1201(a)(3), (b)(2).

As with damages for infringement, courts have wide discretion in setting a statutory

damages award for circumvention.  *See, e.g.*, *Advanced Access Content Sys. Licensing Admin.,

LLC v. Shen*, No. 1:14-cv-01112 (VSB) (SDA), 2019 WL 2450495, at *9 (S.D.N.Y. Mar. 13,

2019).  In making this determination, courts consider the willfulness of the conduct and the goal

of discouraging wrongful conduct.  *Id.* (citing *Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F.

Supp. 2d 1068, 1074–75 (N.D. Cal. 2005)).  In determining damages for circumvention under

Section 1201, "willful" means acting with knowledge that a product is designed or used for

---

[5] Plaintiffs may recover statutory damages for copyright infringement both under the Copyright Act and for circumvention of technological measures under the DMCA because the different statutes seek to address distinct acts and interests.  *See, e.g.*, *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-cv-726 (CBA), 2012 WL 3306600, at *4-5 (E.D.N.Y. June 13, 2012) (distinguishing between the "very distinct behaviors" of circumvention of digital walls guarding copyrighted material and the subsequent use of those materials after circumvention has occurred); *accord Goulet v. Oculus Architecture Ltd.*, No. 8:18-cv-01475 (JLS/JDE), 2019 WL 7841926, at *4–6 (C.D. Cal. Sept. 5, 2019) (awarding statutory damages for copyright infringement and circumvention); *Sweepmasters Professional Chimney Servs., LLC v. Vanessa Servs.*, No. 1:16cv439, 2017 WL 3927626, at *6 (E.D. Va. July 5, 2017) (Buchanan, M.J.) (recommending statutory damages awards for both copyright infringement and unauthorized removal and alteration of copyright management information in violation of § 1202), *report and recommendation adopted*, 2017 WL 3927602 (E.D. Va. Sept. 7, 2017).

circumvention.  *See Filipiak*, 406 F. Supp. 2d at 1075.  Courts have awarded the maximum statutory amount per circumvention where the defendant's actions were willful, *see, e.g.*, *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1262 (S.D. Fla. 2010), or where necessary to discourage similar wrongful conduct, *Filipiak*, 406 F. Supp. 2d at 1075.

As explained above, Defendant's conduct has been willful and egregious.  *See* ECF 1, ¶ 93.  Defendant knows that YouTube videos and the sound recordings contained therein are protected from downloading.  YouTube's Terms of Service prohibit users from unauthorized copying and downloading and from circumventing its features that protect or restrict against use or copying of its content.  Schumann Decl. ¶ 13; Ex. 2; Ex. 36.  In addition, YouTube implements several layers of technological mechanisms to protect against unauthorized access and downloads, including omitting a download feature, not providing direct links to the media-file URLs, and scrambling the media-file URLs for videos with copyrighted sound recordings with a rolling cipher.  Schumann Decl. ¶¶ 14–15.  Defendant designed and operates his Websites to bypass these protective measures, using youtube-dl software to access and copy audio files from YouTube's servers.  *Id.* ¶¶ 26–29.

As with the scope of Defendant's infringement, the scope of Defendant's circumvention of YouTube's technological measures in connection with the unauthorized copying and downloading of Plaintiffs' copyrighted sound recordings is undeniably massive.  However, the number of acts of Defendant's circumvention cannot be specifically ascertained because Defendant refused to comply with this Court's orders to produce web server data.  It is reasonable to infer that, had Defendant produced that data, it would have shown many thousands of instances of circumvention.  Based on their design and operation, Defendant's Websites circumvent YouTube's technological protective measures for each unique video on YouTube

that a User submits a request to convert to a downloadable audio file.  Schumann Decl. ¶ 26.

Further, for commercialized music, including Plaintiffs' copyrighted sound recordings, YouTube

often has multiple videos, each with its own unique watch-page URL.  *Id.* ¶ 10.  As a result,

requests to stream-rip different videos of the same sound recording result in separate acts of

circumvention.  *Id.*

The damages award for Defendant's circumvention "should wipe out any profit [the

defendant] realized from his illegal scheme, deter him from repeating this conduct in the future,

and send a strong message to other would-be . . . 'pirates' that they, too, may be subject to

significant penalty for stealing . . . ."  *DISH Network L.L.C. v. Simmons*, No. 4:17-cv-53, 2018

WL 3647169, at *7 (E.D. Tenn. June 28, 2018) (awarding maximum statutory damages for

circumvention).

### C.      Plaintiffs Request a Substantial Award of Statutory Damages.

For all the reasons discussed above, the record in this case supports an award of damages

towards the high end of the range for statutory damages.  It is beyond dispute that Defendant's

unlawful conduct was egregious and willful.  Defendant has built his business on violations of

Plaintiffs' rights on a massive scale and in violation of 17 U.S.C. §§ 106 and 1201.  Further, the

harm to Plaintiffs is substantial, displacing lawful acquisition and payment for music.  Moreover,

as discussed above, despite repeated warnings from this Court, Defendant has knowingly

disobeyed the Court's orders by hiding financial information and web server data that

presumably would have assisted the Court in assessing the appropriate amount of statutory

damages.  In light of Defendant's willful disobedience of this Court's orders, all inferences

concerning the extent and effect of his infringement and circumvention should be drawn against

Defendant and in Plaintiffs' favor.

Accordingly, Plaintiffs seek an award of statutory damages in the amount of $82,922,500.

This includes an award of $50,000 for Defendant's willful infringement of each of the 1,618

copyrighted sound recordings listed in Amended Exhibit A to the Complaint, amounting to

$80,900,000, and an award of $1,250 for 1,618 acts of circumvention of YouTube's

technological measures, once for each of the works in suit, amounting to $2,022,500.

## II.    A Permanent Injunction Should Be Entered.

Plaintiffs also seek injunctive relief to ensure that Defendant and his Websites will not

cause additional harm to Plaintiffs' rights.  *See* 17 U.S.C. §§ 502(a); 1203(b)(1).  In the Fourth

Circuit, a plaintiff may obtain a permanent injunction if it shows that: (1) it has suffered an

irreparable injury; (2) remedies available at law, e.g., monetary damages, are inadequate to

compensate for that injury; (3) considering the balance of hardships between the plaintiff and the

defendant, a remedy in equity is warranted; and (4) the public interest is served by an injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay*

*Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, all four factors weigh in favor of granting Plaintiffs' requested injunctive relief.

### A.    Plaintiffs Have Suffered Irreparable Injury.

Plaintiffs have suffered irreparable injury from the operation of Defendant's Websites.

The Fourth Circuit has recognized that "[i]rreparable injury often derives from the nature of

copyright violations, which deprive the copyright holder of intangible exclusive rights."

*Christopher Phelps*, 492 F.3d at 544.  Here, the Websites are dedicated to the piracy of

Plaintiffs' copyrighted recordings that are streamed via YouTube videos and other third-party

streaming sites.  The Websites enable and facilitate the theft of Plaintiffs' principal corporate

assets, *i.e.*, copyrighted sound recordings, depriving Plaintiffs of their exclusive rights.

Moreover, Defendant and Users of Defendant's Websites do not pay Plaintiffs for copies of

Plaintiffs' copyrighted works; instead, they download them, for free, after a few clicks. The downloaded copies then can be copied and distributed without restriction and virally across the internet. As described in the sections above regarding statutory damages, Defendant's unlawful activities cause substantial harm to Plaintiffs.

Beginning sometime around July 2021, Defendant appears to have at least temporarily applied some sort of "geo-blocker" that is aimed at preventing access to the Websites from Users located in the United States. Goler Decl. ¶ 8; Ex. 37; Ex. 38. But, under the law, Defendant's eleventh-hour geo-blocking effort does not vitiate the need for injunctive relief. *See, e.g.*, *Humanscale Corp. v. CompX Int'l, Inc.*, No. 3:09-cv-86, 2010 WL 1779963, at *4 (E.D. Va. Apr. 29, 2010) (recognizing the "long-rejected notion that voluntary cessation of infringing activity prevents injunctive relief"); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281–82 (Fed. Cir. 1988) ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."), *abrogated on other grounds*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006)). Indeed, Defendant has proven he is not to be trusted. He could flip a switch tomorrow and re-enable access to the Websites by Users in the United States.

### B. Remedies at Law Are Inadequate.

Remedies available at law are inadequate to compensate for Plaintiffs' injuries. *See MTI Enters.*, 2018 WL 6928927, at *5 (finding monetary damages inadequate when defendant "completely disregarded Plaintiffs' copyrights through its continuous advertisements and promotions" of plaintiffs' copyrighted musicals despite numerous cease and desist letters). As discussed above, calculating the precise economic harm caused by Defendant's infringement and illicit stream-ripping is impossible because the scope of those activities is unknowable, now and

in the future.  Defendant singularly controls his web server data and other records that could shed light on the expansive scope of his illegal activities.  Moreover, even if Defendant had preserved and produced that data, it would have captured only a portion of lost revenue because it does not account for any subsequent copying and distribution of the illicit files created by Defendant's Websites.  Stream-ripping suppresses Plaintiffs' ability to sell music and depresses the value that some individuals and legitimate streaming sites are willing to pay in the legitimate digital market.  Cohen Decl. ¶ 10; Leak Decl. ¶ 10; McMullan Decl. ¶ 10.  It also negatively impacts Plaintiffs' ability to invest in new music, which in turn harms artists, session musicians, union workers, and others in the industry.  Cohen Decl. ¶ 12; Leak Decl. ¶ 12; McMullan Decl. ¶ 12. Consequently, remedies at law are incapable of compensating for the myriad harms caused by stream-ripping.

### C.     The Balance of Hardships Favors Plaintiffs.

The balance of hardships weighs in Plaintiffs' favor.  While Plaintiffs have been irreparably harmed by the infringement and stream-ripping on Defendant's Websites, "Defendant's unlawful conduct, on the other hand, garners no support."  *MTI Enters.*, 2018 WL 6928927, at *6.  This is true even when a defendant's entire business is premised on the unlawful conduct at issue.  *Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 468 (E.D. Va. 2010) (finding that the balance of hardships was in plaintiff's favor even though an injunction would destroy defendants' business).

### D.     Injunctive Relief Is in the Public Interest.

The public interest favors an injunction.  As this Court has recognized, "[i]t is easy to understand that the public interest reflected in the Constitutional protection of copyright, and the Congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place."  *EMI April Music, Inc. v. White*,

24

618 F. Supp. 2d 497, 511 (E.D. Va. 2009).  "[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" creative work.  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).  "Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works."  *Id.*

### E.    Plaintiffs' Proposed Order Is Reasonable.

Plaintiffs have submitted a proposed order containing terms that are "reasonable to prevent or restrain" Defendant from infringing Plaintiffs' copyrighted sound recordings and circumventing technological measures that effectively control access to and protect Plaintiffs' copyrighted sound recordings.  17 U.S.C. §§ 502(a); 1203(b)(1).

Plaintiffs' proposed order proscribes further infringement of Plaintiffs' copyrighted sound recordings and circumvention of technological protective measures by Defendant. Proposed Order ¶¶ 2-4.  The proposed injunction enjoins Defendant, as well as his officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, who receive actual notice of the proposed injunction, including Able Sun Holdings Ltd., Hotger Ltd., Natalia Kyriakidou, Pavel Vasin, Daria Jones, and Alexandra Dimakos, from copying, reproducing, downloading, distributing, uploading, publicly performing, or otherwise exploiting any and all of Plaintiffs' copyrighted works without Plaintiffs' authorization, from using or accessing YouTube or any third-party streaming site to infringe, or from otherwise operating the Websites to infringe or circumvent technological protective measures.  *Id.*; Fed. R. Civ. P. 65(d).  Courts have issued injunctions similar to what Plaintiffs seek here.  *See, e.g.*, *EMI April Music, Inc.*, 618 F. Supp. 2d at 511–12 (permanently enjoining defendant and his employees from publicly performing, causing to be performed, or aiding and abetting the public

performance of any and all music in repertory of performance rights organization without authorization); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317–18 (S.D.N.Y. 2000) (enjoining defendants from posting decryption software on their websites), *judgment entered*, 111 F. Supp. 2d 346 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001); *Paramount Pictures Corp. v. 321 Studios*, No. 03-CV-8970, 2004 WL 402756, at *1–2 (S.D.N.Y. Mar. 3, 2004) (enjoining defendant from providing or offering decryption services to the public).

Plaintiffs' proposed order also contains other relief that is necessary and tailored to suit the unique challenges faced here and to address the ease by which Defendant can otherwise continue infringing and engaging in unlawful circumvention.  Given Defendant's infringement, including throughout this case, willfulness, and disregard for these proceedings, there is every reason to believe that Defendant will continue to engage in and facilitate stream-ripping, along with copying and distributing, of Plaintiffs' copyrighted works.

In particular, Plaintiffs request that the Court order the transfer of the domain names associated with the Websites to Plaintiffs.  Proposed Order ¶¶ 5–6.  The domain names are part and parcel of Defendant's piratical operation.  Courts in copyright cases have included domain name transfers in granting injunctive relief, especially in cases where the defendant has not complied with the court's orders.  *See, e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500 (S.D.N.Y. 2018) ("[C]ourts have found that a transfer of domain names is an appropriate remedy to prevent further infringement of a copyright holder's rights." (citing *Paramount Pictures Corp. v. Does*, No. 15 Civ. 5819, 2015 WL 10013786, at *4 (S.D.N.Y. Nov. 24, 2015)); *DISH Network, L.L.C. v. Dima Furniture Inc.*, No. TDC-17-3817, 2019 WL 2498224, at *8–9 (D. Md. June 17, 2019) (recommending order to disable and transfer domains

used by defendant to transmit protected cable channels without authorization), *report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019).  Defendant is an international scofflaw who continues to profit from deliberate piracy, at the expense of Plaintiffs, notwithstanding rebuke from courts around the world and the U.S. government.  For there to be a meaningful remedy, preventing the domain names from resolving to Defendant's Websites is critical.

### III.    Plaintiffs Are Entitled to Recover Their Reasonable Attorneys' Fees and Full Costs.

Under the Copyright Act and the DMCA, the Court in its discretion may award the prevailing party its full costs and reasonable attorneys' fees.  17 U.S.C. §§ 505, 1203(b)(5).  In determining whether to award attorneys' fees and costs, courts in the Fourth Circuit look to a non-exhaustive list of factors, including the motivation of the parties, whether there was a finding of bad faith or willfulness, the objective reasonableness of the legal and factual positions taken by the parties, and the need for compensation and deterrence.  *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993).  Each of these factors supports an award of Plaintiffs' attorneys' fees and costs in this case.

While Plaintiffs are motivated in this case to enforce their rights under copyright law and protect their creative works, Defendant has time and again shown that he is motivated to profit from operating websites specifically designed to steal the creative works of others and avoid all consequences.  This Court also found that Defendant acted in bad faith in failing to comply with the Court's discovery orders.  ECF No. 128.  To date, Defendant's factual and legal positions have revealed that he does not believe himself to be subject to the laws of the United States and the rules of this Court, and there is no indication that Defendant will not simply continue to engage in and facilitate massive amounts of stream-ripping once this case is over.  There is thus a substantial need for compensation and deterrence here.

27

## **CONCLUSION**

Plaintiffs respectfully request that the Court enter Plaintiffs' proposed order: (1) awarding Plaintiffs statutory damages in the amount of $82,922,500, plus post-judgment interest; (2) permanently enjoining Defendant and those in active concert or participation with Defendant from infringing Plaintiffs' copyrighted sound recordings and from circumventing any technological measure that effectively controls access to or protects Plaintiffs' copyrighted sound recordings, and ordering the transfer of Defendant's domain names to Plaintiffs; and (3) ruling that Plaintiffs are entitled to an award of their full costs and reasonable attorneys' fees.

Respectfully submitted,

Dated: October 5, 2021

/s/ Scott A. Zebrak
Scott A. Zebrak (VSB No. 38729)
Matthew J. Oppenheim (*pro hac vice*)
Lucy Grace D. Noyola (*pro hac vice*)
Kellyn M. Goler (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: (202) 480-2999
Fax: (866) 766-1678
scott@oandzlaw.com
matt@oandzlaw.com
lucy@oandzlaw.com
kellyn@oandzlaw.com

*Attorneys for Plaintiffs*