UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KURBANOV, *et al.*, <br><br> *Defendants*. | Case No. 1:18-cv-00957-CMH-TCB |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST FOR DAMAGES,
A PERMANENT INJUNCTION, AND ATTORNEY'S FEES AND COSTS**

**INTRODUCTION**

Despite having submitted to this Court more than 450 pages worth of materials in support of their request for almost $83 million in damages and permanent injunctive relief, Plaintiffs have failed to prove (as they must) the one thing that is a prerequisite to *any* recovery, namely the existence of even a single improper download of Plaintiffs' copyrighted materials within the United States. This is not mere hyperbole. The Plaintiffs have produced *no evidence whatsoever* that even a single person in the United States ever utilized Mr. Kurbanov's Websites to improperly download one of their copyrighted songs.

Plaintiffs attempt to excuse this failure by pointing to Mr. Kurbanov's default – and his failure to produce discovery materials in this case – as the cause of their inability to demonstrate not just the *extent* of the alleged infringement, but the existence of *any* infringement of Plaintiffs' works. And yet, Plaintiffs were somehow able to allege in their complaint (and *not* on information and belief) that the extent of the alleged infringement was "enormous," inflicting "tremendous and irreparable damage on Plaintiffs' businesses." Complaint, ¶¶ 5, 6. In reality –

and as Plaintiffs' Request for Damages makes clear: Plaintiffs had always based their Complaint on conjecture and surmise and now they ask the Court to award them damages based on the same. Even in a case terminated by a default judgment, Plaintiffs are required to prove their damages and Plaintiffs here have failed to do so.

In addition to the $83 million in damages sought by Plaintiffs, Plaintiffs ask this Court to confiscate Mr. Kurbanov's Websites and turn them over to Plaintiffs for their use. Plaintiffs couch this requested confiscation as a request for injunctive relief, though it clearly is no such thing. Moreover, Plaintiffs seek an injunction not only concerning conduct that might occur in the United States and that might involve Plaintiffs' copyrighted songs, but rather they seek a worldwide injunction precluding the operation of the Websites anywhere and for any purpose. Such a request flies in the face of the operative statutory provisions and should not be allowed.

In further support of this Opposition, Mr. Kurbanov states as follows.

## ARGUMENT

### I. Plaintiffs Failed to Meet Their Burden of Proving Either Actual Damages or An Entitlement to Statutory Damages.

As Plaintiffs correctly note, a successful plaintiff in a copyright action (who has registered its copyrights) is entitled to select either an award of actual damages or an award of statutory damages, as provided for by statute. *Plaintiffs' Request*, p. 14, *citing* 17 U.S.C. §504. For obvious reasons (namely that Plaintiffs cannot prove that they suffered any actual damages from the alleged infringement),[1] Plaintiffs have elected to receive statutory damages.

---

[1] *See*, *e.g.*, The Copia Institute, *The Sky is Rising 2019: A detailed look at the state of the entertainment industry*, pp. 2-3 (April 2019) https://skyisrising.com/TheSkyIsRising2019.pdf ("In January of 2012, we released the very first Sky is Rising report, highlighting how – despite numerous doom and gloom stories about the impact of the internet on the creative communities – nearly all of the actual data showed tremendous, and often unprecedented, growth in both earnings and creative output.... [S]tepping back and looking at the data, frequently from the industry itself,

2

Plaintiffs base their request for statutory damages on their assertion that 1,618 copyrighted sound recordings were infringed upon by users of Mr. Kurbanov's Websites. Plaintiffs and their declarants concede, however, that they are unable to state "the full extent of Plaintiffs' harm from Defendant's infringement." Plaintiffs' Reply, pp. 16-17, *citing* Declarations of Cohen, Lean, and McMullen. Understandably, Plaintiffs attribute their inability to calculate the "full extent" of their damages to Mr. Kurbanov's failure to cooperate with

---

showed that the sky wasn't falling because of the internet – it was rising.... It has been over seven years since that first report, and plenty has changed, so it felt like time to revisit the original questions explored in that original report: how is the global market for entertainment faring – and is the sky now rising or falling? Has the internet decimated entertainment, or enabled a golden era? The data in this report show that, once again, the sky is rising. We are in, as Professor Joel Waldfogel has noted, a true 'Digital Rennaissance.' [Sic] No matter where you look, there are signs of an incredible abundance of not just creation of new content, but myriad ways to make money from that content. Contrary to clockwork complaints of content creation being killed off – all evidence points to an internet that has enabled stunning growth and opportunity for content. The internet has provided new tools and services that have enabled more creation, more distribution, more promotion, more access to fans and more ways to make money than ever before. There is almost no evidence we can find anywhere of the internet decreasing content creation or the size of any aspect of the content creation industry. If anything, the internet has opened up the opportunity for millions of new content creators to create, promote, distribute and profit off their works.... [T]here is no evidence whatsoever to support the idea that either content creators or the general public have been harmed by the internet revolution."); *Newsweek*, "Inside the Piracy Study the European Union Hid: Illegal Downloads Don't Harm Overall Sales" (Sept. 22, 2017) https://www.newsweek.com/secret-piracy-study-european-union-669436 ("Your illegal downloads of video games, top music acts and even e-books don't harm sales, according to a landmark report on piracy that the European Commission ordered but then buried when the findings didn't tell officials what they wanted to hear. The 300-page study offered the counterintuitive conclusion that illegal downloads actually help the gaming industry and have no negative impact on music sales by big stars or on e-book profits."); *BBC News*, "Music sales are not affected by web piracy, study finds" (March 20, 2013) https://www.bbc.com/news/technology-21856720 ("A report published by the European Commission Joint Research Centre claims that music web piracy does not harm legitimate sales.... They also found that freely streamed music provided a small boost to sales figures."); *TechDirt*, "GAO Concludes Piracy Stats Are Usually Junk, File Sharing Can Help Sales Studies" (April 13, 2010) https://tdrt.io/a7q ("The GAO's study unsurprisingly found that U.S. government and industry claims that piracy damages the economy to the tune of billions of dollars 'cannot be substantiated due to the absence of underlying studies.' The full GAO report ... not only argues that claims of economic impact have not been based on substantive science – but that file sharing can actually have a positive impact on sales....").

discovery in this case.  And, if the threshold question was *how many times* was each of the 1,618 recordings infringed, Plaintiffs would have a point.  However, the *scope* of the infringement of each recording only becomes relevant once Plaintiffs have first established that there has been *any* infringement of a given file by a website user within the United States.  In other words, if Plaintiffs had proven that a given song had been downloaded by a user in the United States, then an entitlement to statutory damages would be triggered and the scope of the infringement of that song would be relevant to the Court's determination of the precise amount of statutory damages to be awarded.  (The statute provides that, in general, an award can range between $750 and $30,000 per file infringed, though that amount can be increased to $150,000 for willful infringement, or reduced to $200 for innocent infringement.)

      Here, the problem for Plaintiffs is that they have failed to provide evidence that any of their copyrighted works were infringed by even one user of Kurbanov's Websites, much less by a United States user.  Indeed, the closest that Plaintiffs come to explaining their assertion that there are 1,618 copyrighted sound recordings at issue in this case is the declaration of their expert witness, Robert Schumann, who does *not* say that he himself downloaded any of the works in suit from the Websites, but rather says that he "understand[s]" that the Plaintiffs' investigator did so.  Schumann Declaration, ¶31 (Docket Entry 131-1).  Oddly, though, Plaintiffs submit no declaration from their investigator providing this Court with any first-hand evidence that such downloads took place or – *crucially* – that they took place from within the United States.  *See, e.g., Elsevier Ltd. v. Chitika, Inc.,* 826 F. Supp. 2d 398, 402-03 (D. Mass. 2011)(finding no actionable infringement to have occurred where Plaintiff's investigator downloaded copies of works from outside the United States because it "is well established that copyright laws generally do not have extraterritorial application…" and in "order for U.S.

copyright law to apply, at least one alleged infringement must be completed entirely within the United States.")

The same holds true here. Plaintiffs have provided the Court with no competent evidence from which the Court could conclude that *any* infringement took place at all in connection with the 1,618 works in suit, much less that such infringement took place within the boundaries of the United States. Without such evidence, this Court cannot find that Plaintiffs are entitled to any statutory damages, since the evidence of actual infringement does not exist.

**II.     Even if Statutory Damages Were Appropriate, the Court Should Award Plaintiffs Only the Minimal Amount Available Under the Statute.**

Even if the Court was presented with evidence from which it could conclude that actionable infringement had occurred (which it has not), this Court should utilize its discretion to award only the lowest level of statutory damages available for a variety of reasons. First, it is important to remember that the infringement at issue in this case is not direct, but rather contributory. The allegation is not that Mr. Kurbanov himself utilized the Websites to download copyrighted materials, but rather that visitors to his Websites used the Websites' functionality to do so. Next, the Court can (and should) consider the fact that Mr. Kurbanov is an individual who has, for his entire life, lived in Russia; who created the Websites in Russia; and who is (as a result) not conversant in the laws that apply to copyright infringement within the United States.

Most significantly, though, in considering the proper amount of statutory damages to award (assuming that any are awardable) is the fact that the Websites simply utilized open-source software, freely available to anyone on the Internet. This open-source software is known as "youtube-dl." It is Plaintiffs' contention that the youtube-dl software (which Mr. Kurbanov did not himself create) circumvents technological measures put in place by Youtube (and not by

the Plaintiffs). It is far from clear, however, that youtube-dl "circumvents" anything and, indeed, many experts have concluded that it does not.

Backing up for a moment, it is important to remember that Plaintiffs make *all* of the relevant works readily available at no cost to anyone with an internet connection. In other words, the music which Plaintiffs complain has been infringed by visitors to Mr. Kurbanov's Websites is music which those visitors could legally stream for free simply by going to YouTube.com and watching the music videos that Plaintiffs permit YouTube to transmit to anyone with an internet connection. The issue here is not that visitors to Mr. Kurbanov's Websites were able to listen to the relevant songs – the issue is that Mr. Kurbanov's Websites enabled them to *save* those songs (presumably so that they could listen to them at a different time or in a different location)[2] by virtue of their use of the youtube-dl software.

With that in mind, YouTube incorporates what is sometimes known as a "rolling cipher" when providing music videos to its visitors. The Electronic Frontier Foundation ("EFF") explains the use of this "cipher" thusly:

> For a subset of videos, YouTube employs a mechanism it calls a "signature." Here is our understanding of how it works: when a user requests certain YouTube videos, YouTube's servers send a small JavaScript program to the user's browser, embedded in the YouTube player page. That program calculates a number referred to as "sig." That number then forms part of the Uniform Resource Locator that the user's browser sends back to YouTube to request the actual video stream. This mechanism is completely visible to the user simply by viewing the source code of the player page. The video stream is not encrypted, and no secret knowledge is required to access the video stream. JavaScript is a ubiquitous technology found on millions of websites and understandable by numerous software programs. Any software capable of running JavaScript code can derive the URL of the video stream and access the stream, regardless of whether the software has been approved by

---

[2] Given the Supreme Court's landmark case of *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), where the court found that individuals had the right to create a personal recording of a broadcast television show so that the individual might "time shift" when he or she viewed the program, Mr. Kurbanov had every reason to believe that downloading freely available songs from YouTube was similarly non-infringing conduct.

6

> YouTube. To borrow an analogy from literature, travelers come upon a door that has writing in a foreign language. When translated, the writing says "say 'friend' and enter." The travelers say "friend" and the door opens. As with the writing on that door, YouTube presents instructions on accessing video streams to everyone who comes asking for it.

*See* **Exhibit 1**, letter from EFF to Github.

As the EFF explains, the youtube-dl software does nothing more than provide YouTube's servers with the same code that any web browser would provide if an individual went to YouTube looking to play one of the songs that Plaintiffs make freely available to the entire world:

> youtube-dl works the same way as a browser when it encounters the signature mechanism: it reads and interprets the JavaScript program sent by YouTube, derives the "signature" value, and sends that value back to YouTube to initiate the video stream. youtube-dl contains no password, key, or other secret knowledge that is required to access YouTube videos. It simply uses the same mechanism that YouTube presents to each and every user who views a video.

*Id.*

From this, the EFF concluded that youtube-dl does not circumvent technological measures as that term is defined under the law:

> youtube-dl does not "circumvent" it as that term is defined in Section 1201(a) of the Digital Millennium Copyright Act, because YouTube provides the means of accessing these video streams to anyone who requests them. As federal appeals court recently ruled, one does not "circumvent" an access control by using a publicly available password. *Digital Drilling Data Systems, L.L.C. v. Petrolink Services,* 965 F.3d 365, 372 (5th Cir. 2020). Circumvention is limited to actions that "descramble, decrypt, avoid, bypass, remove, deactivate or impair a technological measure," without the authority of the copyright owner. "What is missing from this statutory definition is any reference to 'use' of a technological measure without the authority of the copyright owner.*" Egilman v. Keller & Heckman, LLP.,* 401 F. Supp. 2d 105, 113 (D.D.C. 2005). Because youtube-dl simply uses the "signature" code provided by YouTube in the same manner as any browser, rather than bypassing or avoiding it, it does not circumvent, and any alleged lack of authorization from YouTube or the RIAA is irrelevant.
>
> Similarly, youtube-dl does not violate section 1201(b) of the DMCA because the

>"signature" code does not "prevent[], restrict[], or otherwise limit[] the exercise of a right of a copyright owner"—in other words, the code does not prevent copying of video data. Any program capable of running JavaScript programs can run YouTube's "signature" code, regardless of whether it can also save a copy of the video streams it receives.

*Id. See also* **Exhibits 2-4.**

The point here is *not* that Mr. Kurbanov is asking the Court to find that the Websites did not circumvent technological measures (although they did not). As Plaintiffs would undoubtedly argue, Mr. Kurbanov lost the right to make such an argument as a defense to liability by virtue of his having been defaulted in this case. However, the operation of the Website – and its use of freely available open-source software – is still relevant to the Court in its determination of the proper level of statutory damages to be awarded. Here, given that even some industry experts say that the use of the youtube-dl software does not circumvent technological measures, and given that Mr. Kurbanov did not himself use the software to download Plaintiffs' songs (but rather visitors to his Websites did), this Court can find that Mr. Kurbanov's infringement of Plaintiffs' works was innocent in nature, meriting only the lowest amount of statutory damages, or $200 per work in suit.

**III.    Plaintiffs Failed to Meet Their Burden of Proving Either Actual Damages or An Entitlement to Statutory Damages Concerning Their Claim For Circumvention of Technological Measures and Such Damages Would Be <u>Duplicative and Should Not Be Awarded.</u>**

Plaintiffs also argue that, separate and apart from an award of statutory damages for copyright infringement, they are entitled to duplicate damages for the same 1,680 works because (Plaintiffs argue) each instance of infringement is also an instance of circumvention of technological measures. Plaintiffs are mistaken about this for reasons similar to those outlined above. As with the Plaintiffs' failure to prove that any infringements took place or that they took

8

place within the United States, Plaintiffs have failed to show that any circumvention took place or that it took place within the United States.

Even if the Plaintiffs had presented the Court with evidence of circumvention occurring within the United States, awarding statutory damages to Plaintiffs for such circumvention would be duplicative of any amounts awarded to Plaintiffs for the infringement itself as the circumvention and the infringement are each part of a single violation. In other words, the means by which the songs were infringed would be the circumvention (had there actually been proof of either infringement or circumvention). Plaintiffs cannot recover twice for the same "injury." *See, e.g., Cengage Learning, Inc. v. Shi*, 2017 U.S. Dist. LEXIS 40554, at *8 (S.D.N.Y. Mar. 21, 2017)("Having conducted a review of the Report and applicable legal authorities, I find that the Report is not clearly erroneous. First, the Report's conclusion that a plaintiff should not be awarded statutory damages under both the Copyright Act and the Lanham Act, (R&R at 9), is not clearly erroneous. …I agree with Magistrate Judge Maas that a recovery of statutory damages under both Acts seems inappropriate here, as the awards would compensate the same injury and '[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery.' Further, I agree with Magistrate Judge Maas's conclusion that recovery under the Copyright Act, rather than the Lanham Act, is the appropriate remedy here because 'Defendants' unauthorized sale of Plaintiff's copyrighted materials is the substantial cause of their damages.'")(citations omitted). Here too, Plaintiffs are impermissibly seeking compensation for the same injury under different legal theories.

Additionally, under 17 U.S.C. §1203(c)(5), this Court is permitted to remit – in part or in whole – any amount that it would otherwise award as statutory damages for circumvention if it finds that Mr. Kurbanov "was not aware and had no reason to believe that [his] acts constituted a

9

violation." Once again, given the fact that even legal experts question whether the youtube-dl software utilized by the Websites circumvents any technological measures, Mr. Kurbanov – a lay person – could hardly be expected to know that use of that software might be considered a circumvention of technological measures. Accordingly, the Court should find no damages under §1203(c).

## IV. **Plaintiffs Are Not Entitled to the Injunctive Relief They Seek.**

Finally, Plaintiffs ask this Court to enter a permanent injunction: (a) precluding Mr. Kurbanov from allowing visitors to the Websites from anywhere in the world to utilize the sites' functionality, and (b) ordering the transfer of the Websites to Plaintiffs. Neither form of "injunction" is available to Plaintiffs.

### A. International Public Policy and the Plain Terms of Section 502 of the Copyright Act Preclude the Injunctive Relief Sought.

As a starting point, it is often recognized that United States Copyright laws have no extraterritorial application and, as such, United States Courts have no jurisdiction over acts of infringement that occur outside of the United States. *See*, *e.g.*, *Tire Eng'g & Distribution, Ltd. Liab. Co. v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012) ("As a general matter, the Copyright Act is considered to have no extraterritorial reach."); *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 249 n.5 (4th Cir. 1994) ("[T]he Copyright Act is generally considered to have no extraterritorial application."). *See*, *also*, *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("Federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States.... Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action." (citing *Subafilms, Ltd. v. MGM-Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc)));

*Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 108705 (S.D. Fla. Oct. 24, 2008) ("Federal copyright law has no extraterritorial effect, and therefore it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action.... Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place 'wholly outside' the United States or 'entirely overseas.'").

This limitation explicitly extends to the Court's power to order injunctive relief, as is evidenced by the plain language of section 502 of the Copyright Act. Although section 502(a) empowers the Court to grant temporary and final injunctions as it deems reasonable to prevent or restrain copyright infringement, such powers are explicitly limited by section 502(b), which provides that:

> Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person.

Plaintiffs here do not simply seek an injunction preventing Mr. Kurbanov from allowing people within the United States to use his Websites to convert audio tracks owned by Plaintiffs, rather they seek a global order precluding the operation of the Websites for any purposes, anywhere in the world.[3] As section 502(b) makes abundantly clear, such an injunction is outside of the Court's statutory power.

---

[3] The fact that Plaintiffs do not even try to limit the injunctive relief sought to an order protecting *their* copyrighted works demonstrates the true purpose of their request: this is not about protecting their intellectual property, it is about shutting down any website – despite that website's substantial non-infringing uses – that Plaintiffs perceive to be a threat.

And, although it is certainly within this Court's statutory power to issue a much more limited injunction – for example, ordering Mr. Kurbanov to block visitors to the Websites from the United State from accessing any copyrighted materials owned by the Plaintiffs – even that relief is presently unnecessary. As Plaintiffs acknowledge in their own Request, Mr. Kurbanov has blocked access to the Websites from the United States since July of 2021. *Plaintiffs' Request,* p. 23. In other words – to the extent that Plaintiffs might properly be entitled to injunctive relief under section 502(b) – they are already receiving all of the benefit that such an injunction would afford them. And, although Plaintiffs complain that Mr. Kurbanov could, at any time, restore service to United States visitors, this argument counsels only in favor of a much more limited injunction, ordering Mr. Kurbanov to block visitors to the Websites from the United State from accessing any copyrighted materials owned by the Plaintiffs.

Indeed, as the Fourth Circuit and other federal courts have made clear, the extraordinary relief of permanent injunctive relief must be narrowly tailored so that it targets only the wrongs it can legally prevent. *See, e.g., JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 28 F. App'x 207, 217 (4th Cir. 2002)(partially reversing and remanding as overbroad an injunction ordered by the District Court in a trademark case: "Block also maintains that the injunction entered against it is overbroad insofar as it enjoins the use of its 'rapid refund' mark. We agree and reverse that portion of the court's order. The Act vests district courts with the 'power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to . . . prevent a violation under [§ 1125(a)].' … It is well established, however, 'that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation.'")(citations omitted); *Forschner Grp., Inc. v. Arrow Trading Co.,* 124 F.3d 402, 406 (2d Cir. 1997)("It is well-settled that the essence of equity jurisdiction

has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation"); *Philip Morris USA, Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004)("federal courts hesitate to sweep within an injunction a needlessly broad range of lawful conduct so as effectively to enjoin unlawful conduct").

The scope of the injunction requested by Plaintiffs is both impermissible under 502(b), as it attempts to reach conduct entirely outside of the United States, and overly broad in that it attempts to preclude both conduct outside the United States and conduct wholly unrelated to Plaintiffs' copyrighted songs. As such, the Plaintiffs' request should be denied. Should this Court find injunctive relief appropriate, it should narrowly target such relief, ordering only that Mr. Kurbanov continue to block visitors to the Websites from the United State from accessing any copyrighted materials owned by the Plaintiffs.

      B.  The Confiscation of Defendant's Property is Not "Injunctive Relief," <u>Nor is it Appropriate Here.</u>

By its very definition, "injunctive" relief generally seeks to "enjoin" a party from taking (or failing to take) a narrow, specified, prohibited action. Plaintiffs' request that this Court order Mr. Kurbanov (who is in Russia) to transfer ownership of his Websites to Plaintiffs does something entirely different: it seeks to effect the confiscation of private property for Plaintiffs' benefit. Preliminarily, there is little question that Mr. Kurbanov has a property interest in the domain names Plaintiffs seek to have the Court transfer. *See, e.g., Zhiyang v. 45.com*, 2021 U.S. Dist. LEXIS 155631, at *3 (E.D. Va. Aug. 17, 2021)(recognizing that registrant has a "property interest" in the domain); *Jacobs Private Equity, LLC v.JPE.com,* 2017 U.S. Dist. LEXIS 30750, at *6 (E.D. Va. Feb. 2, 2017)("As the first registrant of the domain name, Plaintiff acquired exclusive property interest in the domain name and the exclusive sole right to use the domain name in commerce and communication.")

13

In asking the Court to confiscate Mr. Kurbanov's property – two domains that are registered with a registry in the Netherlands (see Schumann Decl., ¶36) – Plaintiffs are essentially attempting to convert the injunction process into one where, without due process, Plaintiffs seize Mr. Kurbanov's assets in an attempt to satisfy their judgment. Such a use of the injunctive process is improper. Additionally, because the domains are registered in the Netherlands (as Plaintiffs' own expert acknowledges), Plaintiffs are (again) attempting to get this Court to issue an injunction that would affect individuals and entities located wholly outside the United States in contravention of 502(b).

And, finally, even if this form of injunctive relief were both proper and permissible, the Court should decline to order it inasmuch as the confiscation of the domains would impact not only the alleged infringing uses made of the Websites within the United States, but also legitimate uses from with the United States and uses that may be perfectly legal outside of the United States. Courts have typically tried to avoid such overreaching in other cases. *See, e.g., Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008)("The Court therefore finds that the granting of injunctive relief, preventing Defendant from continuing in her counterfeiting and infringing activities, is proper. However, the Court declines to issue an injunction transferring the domain names Realdealhandbags.com and Authenticstyle4u.com to Plaintiff at this time, and will not do so unless further proof is submitted that Defendant continues to sell the infringing products on these websites in violation of this Default Judgment"); *Asia TV USA Ltd. v. Kamran Int'l Trade, Ltd.,* 2018 U.S. Dist. LEXIS 166786, at *27-30 (E.D.N.Y. Sep. 25, 2018)("Other courts in this circuit, however, have declined to issue third party injunctions transferring a defendant's domain names to plaintiffs. …Additionally, courts have specifically noted the jurisdictional concerns with issuing third party injunctions

14

impacting parties not before the court. …As the domain name registries are not parties to this suit, the Court respectfully recommends that the plaintiffs' request for a third party injunction ordering the transfer of domain names be denied"); *Hot Peas 'n Butter, Inc. v. Hot Peas & Butta LLC*, 2017 U.S. Dist. LEXIS 112695, at *3-4 (E.D.N.Y. July 18, 2017)("Domain transfer is not required, however. Courts resort to this 'novel form of relief,' … where it is 'necessary to protect the plaintiff's rights,' … Moreover, 'federal courts hesitate to sweep within an injunction a needlessly broad range of lawful conduct so as effectively to enjoin unlawful conduct.'")

In the present case, Mr. Kurbanov has voluntarily stopped permitting access to the Websites from the United States (not only potentially infringing uses of the Websites, but all use of the Websites within the United States).  And, as is noted above, the Court has at its disposal the more targeted (and statutorily-permissible) relief of ordering Mr. Kurbanov not to allow users from the United States to utilize the Websites to access Plaintiffs' copyrighted materials.  Such an order – while not currently necessary given the complete blocking of the sites in the United States – is sufficient to protect all of Plaintiffs' legitimate concerns.

## CONCLUSION

For the reasons stated hereinabove, Plaintiffs' Request should be denied in its entirety.  In the alternative, to the extent that the Court finds that Plaintiffs have proven an entitlement to statutory damages, such damages should be minimal to reflect Mr. Kurbanov's innocent infringement.  Similarly, to the extent that the Court finds Plaintiffs are entitled to some form of permanent injunctive relief, such relief should be limited to an order requiring Mr. Kurbanov to take measures necessary to ensure that users from the United States cannot utilize the Websites to access Plaintiffs' copyrighted materials.

Dated: October 19, 2021

**Respectfully Submitted:**

/s/ Jeffrey H. Geiger
Jeffrey H. Geiger (VSB No. 40163)
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
Facsimile: (804) 783-7291
jgeiger@sandsanderson.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

    Scott A. Zebrak, Esquire
    Matthew J. Oppenheim, Esquire
    Lucy Grace D. Noyola, Esquire
    Kellyn M. Goler, Esquire
    Oppenheim + Zebrak, LLP
    4530 Wisconsin Avenue, NW, 5th Floor
    Washington, DC 20016
    Email: scott@oandzlaw.com
           matt@oandzlaw.com
           lucy@oandzlaw.com
           kellyn@oandzlaw.com
    *Counsel for Plaintiffs*

                                        /s/ Jeffrey H. Geiger
                                        Jeffrey H. Geiger