# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

UMG RECORDINGS, INC., *et al*.,

          *Plaintiffs*,

     v.

KURBANOV, *et al*.,

          *Defendants*.

Case No. 1:18-cv-00957-CMH-TCB

## PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR REQUEST FOR DAMAGES, A PERMANENT INJUNCTION, AND ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT.............................................................................................................. 1

    I.    **The Court's Entry of Default Judgment Already Established
        Defendant's Liability.** ................................................................................... 1

    II.   **Plaintiffs' Requested Statutory Damages Should Be Awarded.**................................... 3

        A.   The Record Supports a Substantial Award of Statutory Damages. ............................... 3

        B.   Plaintiffs Do Not Seek Duplicative Damages................................................. 6

    III. **Plaintiffs' Requested Permanent Injunction Should Be Entered.**............................... 7

        A.   The Circumstances of This Case Justify a Domain Name Transfer Order..................... 8

        B.   Plaintiffs' Proposed Order Appropriately Enjoins Defendant from Infringing Plaintiffs'
            Copyrighted Sound Recordings and Circumventing Technological Protective
            Measures........................................................................................ 11

CONCLUSION ...................................................................................................... 14

**INTRODUCTION**

Defendant has failed to offer any valid reason why Plaintiffs are not entitled to their requested damages, injunctive relief, and attorneys' fees and costs.  Plaintiffs have provided the Court with substantial evidence, including fact witness declarations, an expert declaration, and documents from the record, in support of their request for statutory damages in the amount of $50,000 per work for the 1,618 works in suit, and $1,250 for one act of circumvention with respect to each work in suit.  In response, Defendant has provided absolutely no evidentiary basis to justify his request for the "lowest level" of statutory damages.  As set forth below, he relies on nothing more than misstatements of the facts and unsupported legal theories.  With respect to Plaintiffs' requested injunctive relief, Defendant contends that Plaintiffs' proposal sweeps too broadly, but his arguments cannot be squared with the numerous cases cited by Plaintiffs in which courts have ordered very similar injunctions, including the transfer of domain names. Finally, Defendant does not dispute that Plaintiffs are entitled to recovery of their reasonable attorneys' fees and full costs.

Respectfully, Plaintiffs' requested remedies should be granted.

**ARGUMENT**

I.      **The Court's Entry of Default Judgment Already Established Defendant's Liability.**

Defendant argues that Plaintiffs have failed to establish that any infringement of the 1,618 works in suit, or any circumvention of technological measures, has actually occurred. Opp. at 1-5.  This argument does not withstand even the slightest scrutiny.  It fundamentally mischaracterizes the procedural posture of this case.  As discussed in Plaintiffs' opening memorandum ("Memorandum"), the Court has already entered default judgment in favor of Plaintiffs.  Accordingly, all issues of liability have been resolved in favor of Plaintiffs and all factual allegations in the Complaint are deemed admitted.  *See* Mem. at 3 & n.2 (citing cases);

1

*see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  The admitted allegations include, among other things, that Defendant reproduced and distributed Plaintiffs' copyrighted works, including but not limited to the 1,618 works listed in Amended Exhibit A; had actual knowledge of and materially contributed to the infringement of those works; had the right and ability to supervise and control the infringement of those works, and derived a direct financial benefit from the infringement of those works; induced others to infringe those works; and circumvented technological measures to gain access to those works.  ECF No. 1, ¶¶ 49, 54, 62, 70, 79-80, 89-91; ECF No. 79-1.  Defendant engaged in this conduct in violation of the Copyright Act and the DMCA.  *Id.*  In short, based on the admitted allegations, it is already established that Defendant engaged in unlawful infringement and circumvention with respect to the 1,618 works in suit.

To the extent Defendant suggests there is doubt that the unlawful conduct occurred in the United States, Plaintiffs' allegations put that concern to rest, too.  *See, e.g.*, ECF No. 1, ¶ 54 ("Defendants, without authorization or consent from Plaintiffs, reproduce and distribute into the United States unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in Exhibit A hereto."); *id.* ¶ 11 (alleging that Defendant has committed copyright infringement in Virginia); *id.* ¶ 12 (alleging that Defendant distributed unlawful copies of sound recordings to users in the United States).  Indeed, the Fourth Circuit concluded that Defendant "actively facilitated the alleged music piracy through a complex web involving Virginia visitors, advertising brokers, advertisers, and location-based advertising" and "directly profited from a substantial audience of Virginia visitors."  *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 355 (4th Cir. 2020).

## II.    Plaintiffs' Requested Statutory Damages Should Be Awarded.

### A.    The Record Supports a Substantial Award of Statutory Damages.

In support of their request for statutory damages, Plaintiffs have submitted fact witness

declarations, an expert declaration, and documentary evidence from the record.  This information

provides a solid foundation for Plaintiffs' requested damages.  In response, Defendant fails to

offer any declarations or record evidence to rebut Plaintiffs' request or to support a lower award.

Instead, he relies on misstatements of the record and claims of ignorance of the law that cannot

be squared with the facts.

First, Defendant contends that "it is important to remember that the infringement at issue

in this case is not direct, but rather contributory."  Opp. at 5.  That is a patently false statement.

Plaintiffs' Complaint asserted claims not only for contributory copyright infringement, but also

for direct copyright infringement, vicarious copyright infringement, inducement of copyright

infringement, and circumvention of YouTube's technological protective measures.  *See* ECF No.

1, ¶¶ 53-96; ECF No. 129.  With respect to direct infringement, the Complaint specifically

alleged that Defendant made unauthorized copies of Plaintiffs' copyrighted sound recordings on

his servers and distributed those copies to Users.  ECF No. 1, ¶ 47.  In granting default judgment

in Plaintiffs' favor, the Court held Defendant liable for all the claims against him, including

direct infringement.  Defendant cannot re-write the record to try to limit the scope of his liability.

Nor was Defendant a mere bystander to the infringing and illicit stream-ripping activities

on Defendant's Websites.  As alleged in the Complaint, Defendant's infringement and

circumvention of YouTube's technological measures were willful and intentional.  ECF No. 1,

¶¶ 56, 64, 72, 93.  Also, as discussed in detail in Plaintiffs' Memorandum, Defendant facilitated,

and profited from, piracy on a massive scale; actively encouraged users to infringe copyrighted

sound recordings; featured popular music prominently on the Websites and on social media

accounts to lure users into illegal downloads; and provided specific instructions, tools, and direct

links to stream-rip copyrighted music. *See* Mem. at 6-9, 15-16.

Second, Defendant seeks a lower damages award because he alleges that he is "not

conversant" in U.S. copyright law and "could hardly be expected to know that use of that

software might be considered a circumvention of technological measures." Opp. at 5, 10. But

these claims are neither credible nor persuasive. Defendant registered a DMCA copyright agent

with the U.S. Copyright Office for the Websites, and expressly referred to the DMCA on the

Websites. *UMG Recordings*, 963 F.3d at 354; Ex. 4, at 9. That is hardly the conduct of someone

unfamiliar with U.S. copyright law. In addition, the undisputed facts in the record show that

between July 2016 and August 2017, the RIAA on behalf of Plaintiffs sent seven copyright

infringement notices to Defendant's Websites, and that in May 2018 the RIAA sent a cease-and-

desist letter to Defendant's DMCA agent, plainly stating that the Websites were violating U.S.

law with respect to copyright infringement and circumvention of technological measures. *See*

Mem. at 10-11 & Exs. 29, 30. If Defendant was not previously aware that he was violating U.S.

law (which he was), this correspondence ensured that he became aware, as did the filing of this

lawsuit in August 2018. Yet Defendant continued to engage in his unlawful conduct.

Defendant's claims of ignorance of U.S. law are further belied by the fact that he has been

represented by competent U.S. counsel throughout this litigation and the trial court and appellate

levels.

Third, Defendant tries to justify a low award of statutory damages by pointing to a few

online articles about online piracy and a letter written (for an unrelated matter) by the Electronic

Frontier Foundation ("EFF"). Opp. at 6-8 & n.1. As an initial matter, the online articles cited in

footnote 1 of Defendant's opposition are not in the record and thus cannot form a basis for the

Court's damages determination. *See* Mem. at 13-14 (citing cases finding adequate evidentiary basis for damages based on affidavits, declarations, testimony, or other documentary evidence in the record). Nor do the articles say anything about Defendant's Websites or the harm they cause. Indeed, some of the articles pre-date the existence of Defendant's Websites. With respect to the EFF letter, Defendant seems to imply that it somehow amounts to "expert" testimony. But the only expert witness in this case is Plaintiffs' expert, Robert W. Schumann. *See* Schumann Decl. ¶ 4. Defendant did not disclose any experts, serve any expert reports during discovery, or provide any expert declarations. EFF is a partisan advocacy group that regularly sides with infringers and has not submitted a declaration in this case. The EFF letter is certainly no substitute for an expert report. Having refused to comply with this Court's orders to produce information in discovery, or comply with the deadlines for experts, Defendant should not be allowed to present non-record evidence instead.

Regardless, the EFF letter does not justify a lower award of statutory damages. Defendant relies on EFF's conclusions for the purpose of trying to show that Defendant's violations were innocent. Opp. at 6-8, 9-10. Defendant bears the burden of proving that he had a "'good faith belief of the innocence of his conduct.'" *Malibu Media, LLC v. Doe*, 381 F. Supp. 3d 343, 360 (M.D. Pa. 2018) (quoting 4 Nimmer on Copyright § 14.04[B][2][a]); *see also* 17 U.S.C. §§ 504(c)(2), 1203(c)(5)(A). But the EFF letter does not speak to Defendant's state of mind; he provides no declaration to suggest that he relied on EFF's opinions. Indeed, Defendant does not—and cannot—provide any record evidence to support the notion that he had a good faith belief that his conduct was lawful. To the contrary, as noted in Plaintiffs' Memorandum and above, the record shows the opposite.

Nor does the youtube-dl program somehow shield Defendant from an award of statutory

damages for his unlawful conduct.  Defendant did not "simply utilize[]" youtube-dl.  Opp. at 5.

The admitted allegations establish that Defendant—not youtube-dl—designed and operated the

Websites purely for piracy, using Plaintiffs' copyrighted sound recordings as bait.  Defendant's

incorporation of youtube-dl into the infrastructure of his Websites does not alter or diminish his

malevolent intent, the benefits he obtained, or the harm he caused to Plaintiffs.  Pointing out that

others may also engage in unlawful conduct by using youtube-dl is the opposite of contrition.

Indeed, to the extent it is relevant at all, it weighs in favor of a larger award, to deter such bad

actors.

       **B.**       **Plaintiffs Do Not Seek Duplicative Damages.**

Plaintiffs cited extensive case law that establishes that statutory damages may be awarded

for both copyright infringement and DMCA violations in the same lawsuit.  *See* Mem. at 19 n.5.

Lacking any response to these numerous cases, Defendant simply ignores them and instead cites

a single case, *Cengage Learning*.  That case is inapposite, as it did not involve the question of

assessing damages for infringement and circumvention; rather, it involved the Lanham Act and

unauthorized product sales that resulted in both copyright and trademark infringement.  Opp. at

9.  In any event, courts have rejected Defendant's argument that damages awards under both the

Copyright Act and the DMCA result in double recovery for a single injury: "'Because the

Copyright Act and the DMCA protect different interests'—that is, they create separate tort

causes of action designed to remedy different harms—the awards here compensate distinct

injuries."  *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 851 (N.D. Ill. 2019) (quoting

*Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y.

Aug. 13, 2014)); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir.

2001) ("[T]he DMCA targets the *circumvention* of digital walls guarding copyrighted material

(and trafficking in circumvention tools), but does not concern itself with the *use* of those materials after circumvention has occurred." (emphasis in original)).

Plaintiffs have submitted unrebutted evidence from expert witness Mr. Schumann showing that Defendant's acts of circumventing YouTube's technological protective measures and accessing Plaintiffs' protected content from YouTube's servers are "very distinct" from subsequent acts of unauthorized copying and distribution of Plaintiffs' copyrighted sound recordings. *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-cv-726 (CBA), 2012 WL 3306600, at *4-5 (E.D.N.Y. June 13, 2012). While Defendant uses the youtube-dl program for both circumvention and infringement, Defendant glosses over the separate processes by which youtube-dl *first* identifies appropriate media-file URLs and decrypts YouTube's rolling cipher to obtain functional URLs and *then* uses the URLs to make unauthorized copies and distributions of Plaintiffs' copyrighted sound recordings. Schumann Decl. ¶¶ 14-15, 29. Defendant has failed to provide any evidence from a fact or expert witness that would challenge, much less rebut, Mr. Schumann's conclusion.

## III.   Plaintiffs' Requested Permanent Injunction Should Be Entered.

Defendant does not dispute that Plaintiffs are entitled to a permanent injunction. Instead, Defendant contends that Plaintiffs' requested injunctive relief is inappropriate because it (1) orders the transfer of the domain names to Plaintiffs, and (2) "preclud[es] the operation of the Websites anywhere and for any purpose." Opp. at 2, 10. Defendant's arguments are meritless. The provisions in Plaintiffs' proposed order are "reasonable to prevent or restrain" Defendant from infringing Plaintiffs' copyrighted sound recordings and circumventing technological measures that effectively control access to and protect Plaintiffs' copyrighted sound recordings; they are also narrowly tailored to address the harm to Plaintiffs. 17 U.S.C. §§ 502(a), 1203(b)(1).

### A.      The Circumstances of This Case Justify a Domain Name Transfer Order.

Defendant makes several arguments challenging the permissibility and appropriateness of an order requiring transfer of the domain names to Plaintiffs.  Each of those arguments fails.

First, Defendant contends that injunctive relief may not include an order to transfer domain names, Opp. at 13-15, but ignores the cases cited by Plaintiffs in which courts have ordered this very relief as part of injunctions to prevent further copyright violations, Mem. at 26-27.  The case law makes clear that a transfer of domain names is an appropriate remedy to prevent further infringement of a copyright holder's rights.  *See, e.g.*, *id.* (citing cases)*; TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-CV-1489 (DLI)(PK), 2018 WL 7076022, at *8 (E.D.N.Y. Mar. 9, 2018); *Elsevier Inc. v. Sci-Hub*, No. 15-cv-4282 (RWS), 2017 WL 3868800, at *2 (S.D.N.Y. June 21, 2017).

Indeed, none of Defendant's cases stands for the proposition that domain name transfer is inappropriate injunctive relief under all circumstances.  *See* Opp. at 13-15.  To be sure, courts in copyright cases typically grant domain name transfers only after a defendant has continued his infringing conduct in violation of an injunction.  But a court may order the transfer of domain names based on a defendant's conduct in the course of a litigation, including where (as here) the defendant has continued to engage in infringing activities after the commencement of the lawsuit and has failed to meet discovery obligations to the point of default.  *See TVB Holdings*, 2018 WL 7076022, at *8.  Further, as Defendant's own cases acknowledge, domain name transfers may be granted where this relief is "'necessary to protect the [Plaintiffs'] rights.'"  *Hot Peas 'n Butter, Inc. v. Hot Peas & Butta LLC*, No. 16-cv-2786 (LDH) (RLM), 2017 U.S. Dist. LEXIS 112695, at *3-4 (E.D.N.Y. July 18, 2017) (quoting *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07-CV-1784, 2007 U.S. Dist. LEXIS 82201, 2007 WL 3287368, at *7 (S.D.N.Y. Nov. 7, 2007)).

Here, Defendant has already shown his lack of respect for this Court's authority by violating numerous of this Court's orders and making clear that he still believes he is not even subject to this Court's jurisdiction. *See* Mem. at 12-13. Other courts throughout the world have already enjoined the operation of Defendant's Websites. *See id.* at 10. Defendant's plain goal is to continue profiting from infringement of Plaintiffs' copyrighted works, even if it means acting as a digital nomad, constantly moving his operations in the cross-border shadows to avoid shutdown. And Defendant's recent voluntary blocking of U.S. traffic to the Websites does not eradicate the very real concern that Defendant will re-open the Websites to U.S. users, who (until he blocked them) represented a significant segment of Defendant's business. *See id*. at 23 (citing cases holding that voluntary cessation is not a basis to deny injunctive relief).

Second, Defendant contends that Plaintiffs' domain name transfer request is overreaching because it would impact legitimate uses of the Websites, both within and outside of the United States. Opp. at 14. Again, however, this argument relies on a plain misrepresentation of the record in this case. The record is clear that Defendant's Websites are purely piratical and exist for the purpose of infringing copyrighted works. Mem. at 17-18; *see also* ECF No. 1*,* ¶ 37 ("The FLVTO/2conv websites were designed and exist for one principal reason: to profit from the unauthorized reproduction and distribution of the popular copyrighted recorded music that appears on YouTube, a substantial portion of which is owned or controlled by Plaintiffs"). Indeed, Defendant has conceded on the record that he is unable to provide any evidence of non-infringing uses of his Websites. Mem. at 17-18. It is too late for Defendant to re-write the record to try to assert that his Websites have lawful uses. Nor does Defendant identify any law

9

of any country that permits the unauthorized reproduction or distribution of copyrighted works,

or the circumvention of technological measures that control access to or protect such works.[1]

Third, citing no case law or other legal authority, Defendant suggests that Plaintiffs'

requested relief raises due process concerns. Opp. at 14. This objection is unfounded. As noted

above, numerous courts have granted similar relief. Plaintiffs' proposed order first directs

*Defendant* to transfer the domain names to Plaintiffs. *See* Proposed Order ¶ 5. Only if

Defendant fails to comply with that provision does the next provision kick in, which would

require the registrars and registries for the domains to facilitate the domain name transfer to

Plaintiffs. *See id.* ¶ 6. Further, Defendant ignores that Plaintiffs' proposed order may be

implemented without the assistance of the Netherlands-based registrar; instead, the top-level

registries alone may facilitate the domain name transfer because both of Defendant's top-level

domain registries (Verisign for .com and Go Daddy for .biz) are located in the United States. *See*

*id.*; Schumann Decl. ¶ 35.

---

[1] Even if there were support in the record for Defendant's claim about legitimate uses of his Websites (and there is none), this Court could grant the requested relief. The Supreme Court has held that, "[i]n framing a decree a judge has authority to enjoin actions otherwise lawful when such action is deemed by him necessary to correct the evil effects of unlawful conduct." *United States v. United Liquors Corp.*, 77 S. Ct. 208, 210 (1956). As the Eighth Circuit has explained, "a district court has authority to issue a broad injunction in cases where a proclivity for unlawful conduct has been shown" and "is even permitted to enjoin certain otherwise lawful conduct where the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012) (omitting internal quotation marks and citations); *see also Excelsior College v. Frye*, 345 Fed. Appx. 241, 244 (9th Cir. 2009) (upholding "broad injunction" that enjoined lawful activity where defendant "was found liable for *willful* copyright infringement *and* trade secret misappropriation" (emphasis in original)). Indeed, the court in one of Defendant's cited cases held that, "where, as here, no more narrowly-tailored relief would be effective, and the defendant has made absolutely clear that it will not comply with the injunction, a [domain name transfer order] that incidentally proscribes certain lawful conduct is necessary and appropriate in the public interest." *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246-47 (S.D.N.Y. 2004) (internal quotation marks omitted).

**B.      Plaintiffs' Proposed Order Appropriately Enjoins Defendant from Infringing Plaintiffs' Copyrighted Sound Recordings and Circumventing Technological Protective Measures.**

Defendant incorrectly argues that Plaintiffs' proposed order is overbroad in enjoining "conduct outside the United States and conduct wholly unrelated to Plaintiffs' copyrighted songs." Opp. at 13. The Court is well within its authority to grant Plaintiffs' requested injunctive relief.

Defendant does not specify the provisions of Plaintiffs' proposed order that he contests as overbroad. Paragraphs 2 through 4 of Plaintiffs' proposed order enjoin certain conduct by Defendant (and all those in active concert or participation with him who receive actual notice of the order). Proposed Order ¶¶ 2-4. As is typical with permanent injunctions in copyright cases, Paragraphs 2 and 3 prohibit specific conduct that are violations of the Copyright Act and the DMCA. *Id.* ¶¶ 2-3. Paragraphs 2 and 3 also expressly prohibit infringement or circumvention of technological measures with respect to Plaintiffs' copyrighted works. *Id.* The only remaining prohibition appears in Paragraph 4, which requires Defendant to cease operation of the Websites, but only if "necessary to comply completely and strictly within the terms of Paragraphs 2 and 3." *Id.* ¶ 4. Thus, Plaintiffs' proposed order is reasonable and narrowly tailored to prevent or restrain Defendant from further violations of U.S. copyright law.

Defendant's argument that the injunction must be limited to blocking U.S. users is baseless. Opp. at 13, 15. As noted above, Defendant has not provided any evidence that users, in the United States or other countries, use the Websites for lawful purposes. Instead, Defendants' Websites are designed and operated for piracy.

Defendant attempts to portray himself as an entirely extraterritorial actor because he at least temporarily purports to block all U.S. users from accessing the Websites. That is simply not the case. To deliver a music file to any user, Defendant visits the website of YouTube, a

11

U.S-based company, to stream-rip and copy the music file.  Schumann Decl. ¶ 11, 14-16, 29.

Defendant's Websites also regularly downloads updates to the youtube-dl program from another

U.S.-based company to keep up with YouTube's continuous updates and changes to its rolling

cipher technology.  *Id.* ¶ 28.  Defendant's illegal operation of the Websites necessarily flows

from these activities in the United States.

Contrary to Defendant's contentions, there is no extraterritoriality problem here.  As the

Supreme Court has noted, "[i]f the conduct relevant to the statute's focus occurred in the United

States, then the case involves a permissible domestic application even if other conduct occurred

abroad."  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).  Applying this

principle, courts have rejected Defendant's extraterritoriality arguments.  For example, in

*Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068 (S.D. Cal. 2019), the court

found that, despite evidence that the plaintiff's servers were located in China and that

Defendant's access to the plaintiff's copyrighted works technically occurred abroad, the DMCA

violations by the U.S.-based defendant undisputedly occurred "at least in part [] in the United

States."  *Id.* at 1073-74 (internal quotation marks omitted).  The court thus issued a preliminary

injunction enjoining the defendant from directly or indirectly accessing or using the plaintiff's

protected software—without any limitation to conduct in the United States.  *Id.* at 1077-78.

Likewise, here, there can be no reasonable dispute that Defendant has engaged in

unlawful conduct in the United States.  As discussed above, Defendant's illegal activities have

had, and continue to have, a substantial nexus to the United States.  And Defendant has for many

years distributed the infringing files to U.S. users.

To adequately protect Plaintiffs' U.S. copyrights, the Court should invoke its broad

equity powers, which allow it to fashion injunctive relief necessary to stop Defendant's

infringing and stream-ripping activities.  *See, e.g., Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case." (internal quotation marks citation omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Indeed, courts have issued injunctions with worldwide impact where necessary to protect the plaintiff's intellectual property.  *See, e.g., Elektra Ent't Grp. Inc. v. Bryant*, No. 2:03-cv-06381-GAF-JTL, 2004 WL 783123, at *6-7 (C.D. Cal. Feb. 13, 2004) (enjoining defendant from "using Internet or any online media distribution system" where "Defendant's means of infringement—an online media distribution system with tens of millions of potential users—has left Plaintiffs' sound recordings vulnerable to massive, repeated, near-instantaneous, and worldwide infringement"); *Nintendo of America, Inc. v. NTDEC*, 822 F. Supp 1462, 1465-66 (D. Ariz. 1993) (issuing "worldwide permanent injunction" to prevent Taiwanese corporation's sale of counterfeit video game cartridges in multiple countries in violation of the Copyright Act and Lanham Act where defendants' "illegal domestic and extraterritorial activities had a direct impact on U.S. commerce by causing economic damage to Nintendo, a U.S. corporation"), *aff'd*, 53 F.3d 281 (9th Cir. 1995); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (stating a "worldwide injunction" was "consistent with" the overarching "goals" involving trade secret injunctions, namely, "to protect the secrecy of misappropriated information and to eliminate any unfair head start the defendant may have gained").

13

Plaintiffs' proposed order is necessary and appropriate to protect their U.S. copyrights

and to enjoin Defendant's unlawful operation of his Websites.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant the relief requested in Plaintiffs'

Memorandum and enter their proposed order.


Respectfully submitted,

Dated: October 25, 2021

*/s/ Scott A. Zebrak*
Scott A. Zebrak (VSB No. 38729)
Matthew J. Oppenheim (*pro hac vice*)
Lucy Grace D. Noyola (*pro hac vice*)
Kellyn M. Goler (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: (202) 480-2999
Fax: (866) 766-1678
scott@oandzlaw.com
matt@oandzlaw.com
lucy@oandzlaw.com
kellyn@oandzlaw.com

*Attorneys for Plaintiffs*