**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-957 (CMH/TCB) |
| | ) | |
| TOFIG KURBANOV, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned on UMG Recordings, Inc., Capitol Records,

LLC, Warner Records Inc., Atlantic Recording Corporation, Elektra Entertainment Group Inc.,

Fueled by Ramen LLC, Nonesuch Records Inc., Sony Music Entertainment, Sony Music

Entertainment US Latin LLC, Artista Records LLC, Laface Records LLC, and Zomba Recording

LLC's ("Plaintiffs") Memorandum in Support of their Request for Damages, a Permanent

Injunction, and Attorneys' Fees and Costs (Dkt 131), Defendant Tofig Kurbanov's

("Defendant") Opposition to Plaintiffs' Request for Damages, a Permanent Injunction, and

Attorneys' Fees and Costs (Dkt. 136), and Plaintiffs' Reply Memorandum in Further Support of

Their Request for Damages, a Permanent Injunction, and Attorneys' Fees and Costs (Dkt. 137).[1]

---

[1] The relevant filings before the undersigned include Plaintiffs' Complaint ("Compl.") (Dkt. 1);
Judge Claude M. Hilton's Order denying Defendant's Motion to Dismiss (Dkt. 74); Plaintiffs'
first Motion to Compel (Dkt. 91) and the Court's Order granting that motion (Dkt. 97);
Plaintiffs' second Motion to Compel (Dkt. 98) and the Court's Order granting that motion (Dkt.
105); Plaintiffs' Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 37
(Dkt. 119) and accompanying memorandum (Dkt. 120); Defendant's Opposition to Plaintiffs'
Motion for Default Judgment Pursuant to Rule 37 (Dkt. 123); and Plaintiffs' Reply
Memorandum in Support of Plaintiffs' Motion for Default Judgment Pursuant to Federal Rule of
Civil Procedure 37 (Dkt. 124).

For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that the Court

grant Plaintiffs' request for damages, a permanent injunction, and attorneys' fees and costs.

## I. BACKGROUND

**A.      Procedural Posture**

Plaintiffs filed their Complaint on August 3, 2018 under the Copyright Act of 1976

("Copyright Act") and Digital Millennium Copyright Act ("DMCA") bringing specific claims

for direct copyright infringement, contributory copyright infringement, vicarious copyright

infringement, inducement of copyright infringement, and circumvention of technological

measures against Defendant. (*See* Dkt. 1.) Plaintiffs sought a declaration that Defendants

willfully infringed Plaintiffs' copyrights, equitable relief preventing further infringement,

statutory or, alternatively, actual damages, Plaintiffs' costs and attorneys' fees, pre-judgment and

post-judgment interest, and other relief deemed proper.[2] (*See* Dkt. 1.)

After the Court granted Defendant an extension to respond, Defendant filed a Rule

12(b)(2) motion to dismiss on October 1, 2018, requesting dismissal or transfer of venue. (*See*

dkts. 17, 24.) The Honorable District Court Judge Claude M. Hilton granted the motion to

dismiss for lack of personal jurisdiction on January 22, 2019. (Dkts. 30, 31.) Plaintiffs

subsequently appealed Judge Hilton's Memorandum Opinion and Order to the United States

Court of Appeals for the Fourth Circuit on January 29, 2019. (Dkt. 35.) The Fourth Circuit

reversed Judge Hilton's decision on June 26, 2020 and remanded for further proceedings. (Dkt.

39, 40.)

---

[2] Plaintiffs' Complaint names both Defendant Kurbanov and "Does 1-10;" however default
judgment has only been entered against Defendant Kurbanov.

The Court issued its first Scheduling Order on September 4, 2020. (Dkt. 48.) Defendant filed a motion to stay, pending the ruling on personal jurisdiction in this Court and petition for certiorari in the Supreme Court. (Dkt. 50.) This Court granted the motion to stay on September 18, 2020 (Dkt. 57), and Plaintiffs subsequently filed a motion for reconsideration of the stay, which the Court denied. (Dkts. 61, 67.) The Supreme Court denied Defendant's petition for certiorari on January 11, 2021. (Dkt. 68.)

On remand, Judge Hilton denied Defendant's Motion to Dismiss, finding, in accordance with the Fourth Circuit's decision, that Defendant is subject to the Court's jurisdiction. (Dkt. 74 at 8.) On April 1, 2021, the Court entered its second Scheduling Order, setting the initial pretrial conference for April 28, 2021, the final pretrial for August 19, 2021, and the close of discovery on August 13, 2021. (Dkt. 77.) Defendant filed his Answer on April 21, 2021, and the parties submitted their Proposed Joint Discovery Plan Pursuant to Rule 26(f), which the Court approved. (Dkts. 81-82, 87.)

Plaintiffs filed their first Motion to Compel on May 26, 2021, seeking documents that Defendant "initially agreed to produce but is now withholding" or claimed do not exist and properly unredacted documents. (Dkt. 91, 92.) The Court granted this motion, ordered Defendant to produce the requested discovery by June 11, 2021 and warned that failure to comply with the order could result in sanctions, including default judgment. (Dkt. 97.)

Plaintiffs filed their second Motion to Compel on June 16, seeking to compel Defendant to preserve and produce web service data. (Dkt. 98, 99.) Defendant failed to meet the deadline and Plaintiffs filed a status update on June 18 notifying the Court of this failure. (Dkt. 101.) After a hearing, the undersigned granted the Plaintiffs' second Motion to Compel, reiterating that Defendant's continued failure to comply could result in default judgment sanctions. (Dkts. 105,

106.) Judge Hilton affirmed this ruling on the second Motion to Compel. (Dkts. 107, 113.)

Defendant's counsel moved to withdraw as attorney on July 23, 2021 and stated that his uncooperative client maintained a "firm conviction that he is not subject to personal jurisdiction in this Court." (Dkts. 114, 115 at 2.) Counsel also stated that Defendant would not attend his deposition on July 28 and 29, 2021. (Dkt. 115 at 2.) The Court denied counsel's motion to withdraw and suspended the final pretrial conference pending Plaintiffs' forthcoming motion for sanctions. (Dkt. 118.)

Plaintiffs filed their Motion for Default Judgment as to Defendant Tofig Kurbanov Pursuant to Federal Rule of Civil Procedure 37 on August 4, 2021 for failure to comply with the discovery orders and to attend his deposition. (Dkt. 119.) Because Defendant refused to meaningfully participate in discovery, the undersigned granted the motion at the August 27, 2021 hearing. (Dkt. 125.) The undersigned thereafter issued a Report and Recommendation, recommending that the Court grant default judgment against Kurbanov pursuant to Federal Rule 37. (Dkt. 128.) On October 1, 2021, the Honorable District Judge Claude M. Hilton adopted the Report & Recommendation and entered default judgment for Plaintiffs. (Dkt. 129.)

As directed by the undersigned, Plaintiffs filed the instant memorandum detailing their requested remedies. (Dkts. 127, 131.) Defendant filed an Opposition to Plaintiffs' Request for Damages, a Permanent Injunction, and Attorneys' Fees and Costs on October 19, 2021. (Dkt. 136.) Finding oral argument unnecessary, the undersigned cancelled the Friday, November 12, 2021 hearing.[3] The undersigned issues this second Report and Recommendation to independently determine Plaintiffs' requested remedies.

---

[3] An evidentiary hearing is unnecessary when the record presents an adequate basis for the relief requested. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 91 (4th Cir. 1989).

**B.    Jurisdiction and Venue**

Before the Court can render default judgment, it must have subject matter and personal jurisdiction over the defaulting parties, and venue must be proper.

*First*, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). A federal district court has subject matter jurisdiction when a dispute arises under federal law as shown on the face of the complaint. 28 U.S.C. § 1331. The federal district courts also have subject matter jurisdiction over federal copyright cases. 28 U.S.C. § 1338(a). Here, Plaintiffs' Complaint alleges (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) inducement of copyright infringement, and (5) circumvention of technological measures. (Compl. at 18-25.) Counts (1)–(4) arise under the Copyright Act, 17 U.S.C. §§  106 (1) and (3), and Count (5) arises under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a) and (b)(1)(A). Because these claims arise under federal law, the Court has subject matter jurisdiction over Plaintiffs' claims.

*Second*, the Court has personal jurisdiction over Defendant. The Fourth Circuit found that Defendant's actions sufficiently demonstrated that he purposefully availed himself of Virginia and that the Plaintiffs' copyright claims arose from these actions. (Dkt. 39 at 14.) The court remanded to this Court to decide whether specific personal jurisdiction is constitutionally reasonable. On remand, this Court weighed the *Burger King* constitutional factors and found that the Court's exercise of personal jurisdiction over Defendant did not offend "substantial notions of fair play and substantial justice." (Dkt. 74 at 4-8 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Therefore, personal jurisdiction over Defendant Kurbanov in this case is well established.

*Lastly*, Plaintiffs filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue

5

is proper in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[] or (3) if there is no district in which an action may otherwise be brought in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2)-(3). Here, venue is proper under the second provision because a substantial part of the alleged copyright infringement on Defendant's Websites occurred in Virginia. (Dkt. 74 at 2-3) (discussing how the Fourth Circuit found Defendant's business contacts with Virginia to be "plentiful.") And because this Court has established that the Defendant is subject to the Court's personal jurisdiction, venue is nevertheless proper under the third, "fallback venue" provision. § 1391(b)(3); (Dkt. 74.)

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiffs has established the following facts.

### A.   Plaintiffs' Copyrighted Recordings

Plaintiffs are record companies that deal with most of the commercial audio recordings in the United States. (Compl. ⁋ 1.) Plaintiffs manufacture, distribute, license, and sell these audio recordings through both tangible media and intangible media like digital audio files performed on the internet. (Compl. ⁋ 27; Cohen Decl. ¶ 7; Leak Decl. ¶ 7; McMullan Decl. ¶ 7.) Plaintiffs work with legitimate downloading and streaming services like Apple Music, iTunes, Google Play, Amazon, Spotify, and others to lawfully distribute and perform these digital audio files. (*Id.*) Streaming services like Google's YouTube pay Plaintiffs in exchange for permission stream the copyrighted audio files and agreement to protect the files from unauthorized access and copying. (*Id.*)

6

Plaintiffs have and continue to invest significant resources into their business of discovering recording artists and developing their audio recordings. (Compl. ⁋ 28; Cohen Decl. ¶ 6; Leak Decl. ¶ 6; McMullan Decl. ¶ 6.) Plaintiffs, recording artists, and the music industry rely on the legitimate sale, distribution, and licensing of audio recordings for their compensation. (*Id.*) Amended Exhibit A to the Complaint identifies 1,618 audio recordings that Plaintiffs allege that Defendant infringed. (Compl. ¶ 1, Dkt. 79-1.) Plaintiffs hold exclusive copyright title to those recordings, and some are by well-known artists like Beyoncé, One Direction, Ariana Grande, Faith Hill, and Bruno Mars. (Dkt. 78-1; Cohen Decl. ¶ 3; Leak Decl. ¶ 3; McMullan Decl. ¶ 3; Mem. Supp., Ex. 1 at 2-3.)

### B.      YouTube's Technological Protections for Copyrighted Content

YouTube is a streaming service that allows users to watch videos, including music videos with Plaintiffs' audio recordings. (Compl. ¶¶ 34, 37; Schumann Decl. ¶¶ 10, 12.) YouTube protects content through its standard service and Terms of Service, which prohibit users from engaging in unauthorized downloading and copying of content. (Compl. ¶ 36; Schumann Decl. ¶¶ 13-15; Mem. Supp., Ex. 2.) Users also may not circumvent or interfere with YouTube's features that prevent unauthorized uses of content. (Schumann Decl. ¶ 13, Mem. Supp., Ex. 2.)

On the site, users can stream videos on the individual "watch page" for that video. (Schumann Decl. ¶ 13, Ex. 2.) The watch pages contain authorized media players and an underlying source code. (Schumann Decl. ¶ 14.) The authorized media player uses the source code to access and stream media files stored on YouTube's servers. (Schumann Decl. ¶ 11.) YouTube's standard service does not allow users to download the videos or audio files streamed on the watch pages, and users are faced with technological obstacles in accessing the media-file URLs in the media page source codes. (Schumann Decl. ¶¶ 13-14.)

7

YouTube has adopted additional "rolling cipher" protections for the media-file URLs of videos containing copyrighted content. (Schumann Decl. ¶ 15.) The authorized media player uses YouTube's proprietary cryptographic algorithm and other tools to identify and unscramble the rolling cipher. (Compl. ¶ 36; Schumann Decl. ¶ 15.) At least one foreign tribunal has found that YouTube acts "as agent for, licensee of, or in conjunction with the copyright owner such that the cipher and key routine is an 'effective' technological measure in protecting copyrighted works." (Mem. Supp., Ex. 3 ¶ 28.)

### C.  Defendant's Design and Operation of the Websites

Defendant is the designer, owner, and operator of  www. FLVTO.biz and www.2conv.com ("the Websites"), where site users ("Users") can freely download MP3s of Plaintiffs' copyrighted audio recordings from streaming sites like YouTube. (Compl. ¶ 1.) Over 300 million individuals in the United States used the sites from October 2017 to May 2021. (Schumann Decl. ¶ 30; Mem. Supp., Ex. 20 at 2, Ex. 21 at 2.)  And over 300 million individuals globally used the sites from October 2017 to September 2018. (Mem. Supp., Ex. 19 at 12-28.)

Users convert URLs from streaming sites like YouTube into free downloadable and distributable MP3s in seconds through a few simple steps. (Compl. ¶¶ 40-44; Schumann Decl. ¶ 19.) This process is known as "stream ripping." (Compl. ¶ 2.) The User first copies a URL of a desired YouTube video, for example, and pastes the URL from into the text-entry box on either of the Websites' homepages. (Compl. ¶¶ 42, 43; Schumann Decl. ¶ 19.) The User is then prompted to check a box and agree to the Website's terms of use and to click a "convert" button. (*Id.*) The Website then converts the URL to an MP3 within seconds and thereafter displays a "download" button. (Schumann Decl. ¶ 19.) The User then clicks the "download" button or a link, which triggers the file to download from the Website to the User's computer. (Compl. ¶ 44;

8

Schumann Decl. ¶ 19.)

The Websites incorporate the youtube-dl software to convert protected YouTube content.[4] (Schumann Decl. ¶ 29.) Youtube-dl is a third-party software engineered to bypass YouTube's media file protection mechanisms, including the rolling cipher. (Schumann Decl. ¶¶ 16-17, 26-27; Mem. Supp. at 9, Ex. 8 at 5.) With the youtube-dl program, the Websites parse source code data and extract the protected YouTube content media file. (Schumann Decl. ¶ 29.) The Websites also use the youtube-dl software to decrypt and disarm YouTube's rolling cipher, which allows the Websites to extract copyrighted media files through a few additional steps. (*Id.*)

Defendant profits from the unauthorized reproduction and distribution of copyrighted audio recordings found on streaming sites like YouTube. (Compl. ¶ 37; Schumann Decl. ¶¶ 16-17, 20.) Users of the Websites download copyrighted audio recordings for free without compensating Plaintiffs for their copyrighted content. (Schumann Decl. ¶ 17.) Defendant sells advertisements on the Websites to harness the high volume of site traffic and profit from the Users' activity. (*See* Mem. Supp., Exs. 7, 8 at 5.)

Defendant's Websites actively encourage Users to infringe copyrighted audio recordings, including those owned by Plaintiffs. (Schumann Decl. ¶¶ 20, 22.) For example, www.FLVTO.biz displayed a list of the "Top 100 most converted and downloaded MP3s," and www.2conv.com listed the "Most Watched Today" videos. (Schumann Decl. ¶ 21; Mem. Supp., Ex. 9-12.) These lists included direct links to convert videos including Plaintiffs' audio recordings to free MP3 files. (*Id.*) The Websites describe their purpose as "Download[ing] Music from YouTube," "download[ing] . . . favourite tracks," and "Rip[ping] Music from YouTube to iTunes." (Mem. Supp., Exs. 4-6.) Additionally, Defendant's Websites tell Users that they can

---

[4] Available at youtube-dl.org.

9

download "entire albums of Beatles Music" from streaming sites. (Schumann Decl. ¶ 23; Mem. Supp., Ex. 13, 14.) One site states "[N]ot everyone knows that we do not have to pay for this content[;] we can get free music. We can download all of the music, films, audiobooks, and other content absolutely for free and add it to our iTunes without paying for it." (Mem. Supp., Ex. 17.) Also, Defendant's social media accounts for the Websites have posted at least 31 times about Plaintiffs' works at issue here. (Goler Decl. ¶ 6; Mem. Supp., Ex. 18.)

"Insertion orders" produced by Defendant and other third-party document production indicate that Defendant operates the Websites in concert with at least four individuals and two companies. (Compl. ¶ 31; Mem. Supp. at 9, Exs. 7, 8.) The insertion orders appear to be advertising contracts related to advertising campaigns on the Websites. (Mem. Supp. at 9, Ex. 7.) Able Sun Holdings, Ltd. ("Able Sun") and its Director, Natalia Kyriakidou signed the contract as "publisher." (*Id.*) The insertion orders also identify Pavel Vasin, Daria Jones, and Alexandra Dimakos as parties related to the advertising contracts. (*Id.* at 2, 58, 102.) The third-party documents show that Pavel Vasin and Daria Jones are associated with Hotger Ltd. ("Hotger"), a Russian company that arranges advertising on the Websites and communicates with Users through the Websites' social media. (Mem. Supp. at 10, Exs. 22-26.)

D.     **Plaintiffs' Efforts to Combat Defendant's Piracy**

Several other countries, including the United Kingdom, Australia, Italy, Denmark, Russia, and Spain, have ordered service providers to block Defendant's Websites because of their stream-ripping functions. (Mem. Supp. at 10; Ex. 3 ¶¶ 2-3, 39, 56-57, 93, 103, Ex. 28 ¶¶ 35-42.) The Recording Industry Association of America ("RIAA") sent seven notices between July 2016 and August 2017 demanding that the Websites disable Users from infringing Plaintiffs' copyrighted works. (Mem. Supp. at 10-11, Ex. 29.) The RIAA sent a cease and desist letter to

Defendant's registered DMCA agent in May 2018, demanding that the Websites disable the stream-ripping functions that enable Users to circumvent YouTube's technological protections of copyrighted content. (Mem. Supp. at 11, Ex. 30.) Defendant did not disable the stream-ripping functionalities and instead responded that the "company's policy is aimed at protecting the interests of all rights holders and compliance with applicable law." (Mem. Supp. at 11, Ex. 31.) RIAA also sent notices to Google in October 2019, which prompted Google to delist the homepages of the Websites from the search engine results. (Mem. Supp. at 11, Ex. 32.)

E.   **Defendant's Refusal to Comply with Discovery and Court Orders**

In the Report and Recommendation adopted by Honorable Claude M. Hilton, the undersigned recommended that the Court should enter default judgment sanctions against Defendant. (Dkts. 128, 129.) There, the undersigned found that Defendant failed comply with the Court's two orders requiring him to respond to Plaintiffs' discovery requests fully and completely and by refusing to attend his scheduled deposition. (Dkt. 128.) The undersigned's prior orders warned Defendant that a failure to obey would subject him to default judgment sanctions under Federal Rule of Civil Procedure 37. (*Id.*) Nevertheless, Defendant continued to insist that he is not subject to the Court's jurisdiction and indicated no intention to cooperate with discovery. (*Id.*) The undersigned accordingly found that (1) Defendant acted in bad faith, (2) Defendant substantially prejudiced Plaintiffs' ability to litigate the case, (3) Defendant's conduct should be deterred, and (4) less drastic sanctions would not salvage the case. (*Id.*)

11

III. EVALUATION OF PLAINTIFFS' COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Plaintiffs claim direct, contributory, and vicarious copyright infringement, inducement of copyright infringement, and circumvention of technological measures under the DMCA. The undersigned will consider each element of the relevant causes of action in turn.

**A.      Defendant's Infringement of Plaintiffs' Audio Recordings**

The Plaintiffs assert claims of direct, contributory, and vicarious copyright infringement against Defendant pursuant to the Copyright Act. (*See* Compl. ¶ 4.) It is unnecessary to address all four alleged bases of liability, as Plaintiff seeks to recover the same relief on each basis. The following recommendations are limited to the alleged direct and contributory copyright infringements. The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)-(5), 501. In other words, the owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; publicly perform the works; or display the works. *See id.*

12

One who violates any of the copyright owner's exclusive rights is considered an infringer. *See id.* For a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

*First*, Plaintiffs have sufficiently alleged that they own valid copyrights for the 1,618 audio recordings at issue. Plaintiffs allege and Defendant does not dispute that Plaintiffs own copyrights for the non-exhaustive list of works provided in Amended Exhibit A to the Complaint. (*See* Compl. ¶ 1; Dkt. 79-1; Mem. Supp., Ex. 1 at 2-3.)

*Second*, Plaintiffs allege that Defendant violated the Plaintiffs' exclusive rights to reproduce and distribute their copyrighted audio recordings. 17 U.S.C. §§ 106(1), (3), 501; (*See* Compl. ¶ 54.) Copyright holders have the exclusive right to make copies of their works. § 106(1). As outlined in detail above, the Websites recreate Plaintiffs' audio recordings without authorization, converting URLs to downloadable MP3s. This replication violates Plaintiffs' exclusive rights to reproduce their Works. *See* § 106(1). A defendant violates a copyright-holder's distribution rights when that defendant disseminates the work or makes the work generally available to the public. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). Defendant makes and distributes unauthorized copies of Plaintiffs' audio recordings available to the public. *See* § 106(3); (Compl. ¶ 54.) Accordingly, the undersigned finds that Plaintiffs have sufficiently pled a direct infringement claim under the Copyright Act.

**B.      Defendant's Contributory Infringement of the Audio Recordings**

Plaintiffs' Complaint alleges contributory liability against Defendant for infringement of

Plaintiffs' exclusive rights. (Compl. ¶¶ 60-64.) Common law contributory copyright infringement may be found where someone "intentionally induc[es] and encourage[es] direct infringement" of a copyrighted work by another. *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 930 (2005). Mere knowledge of infringing uses by third parties is insufficient to establish intentional inducement. *Id.* at 937. Instead, a "clear expression or other affirmative steps taken to foster infringement" is required. *Id.* at 936-37.

Here, Plaintiffs have sufficiently alleged that Defendant has intentionally induced the Users' infringement of the Plaintiffs' audio recordings. (*See* Compl. ¶¶ 51-52.) As discussed above, the Websites explicitly encourage Users to infringe the Plaintiffs' rights by instructing them to "download entire albums" for free and by providing links to convert and download videos that include Plaintiffs' audio recordings. (Schumann Decl. ¶¶ 21, 23; Mem. Supp., Ex. 9-14.) Additionally, the Websites' social media accounts have posted about Plaintiffs' works at least thirty-one (31) times. (Goler Decl. ¶ 6; Mem. Supp., Ex. 18.) The Websites' statements, links, and posts explicitly encourage Users to make unauthorized copies of their audio recordings and violate Plaintiffs' copyrights. Because of these affirmative steps, the undersigned finds that Plaintiffs sufficiently pled a claim of contributory copyright infringement.

## C.    Defendant's DMCA Circumvention Liability

The Plaintiffs further allege that Defendant is liable under Digital Millennium Copyright Act. Section 1201(b)(1) of the DMCA states:

> (1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
>
> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

14

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

17 U.S.C. 18 § 1201(b)(1). Plaintiffs sufficiently allege violations under all three provisions of section 1201(b).

*First*, Plaintiffs allege that Defendant's Websites are designed to circumvent YouTube's technological measures for protecting copyrighted content. *See* § 1201(b)(1)(A); (Compl. ¶¶ 88-89.) The Websites implement youtube-dl, a software designed to circumvent YouTube's protections. This software enables Website Users to stream-rip copyrighted audio files from otherwise protected YouTube videos.

*Second*, Plaintiffs allege that the Websites' technology has limited other commercial purposes other than to circumvent these technological measures. *See* § 1201(b)(1)(B); (Compl. ¶¶ 88, 90.) As one foreign tribunal found, "the entire purpose of the technology offered by the [Websites] is to circumvent the [technological protection measures]." (Mem. Supp. at 10.) The Websites announce their purpose as enabling the free "Download[ing] Music from YouTube," "download[ing] . . . favourite tracks," and "Rip[ping] Music from YouTube to iTunes." (Mem. Supp., Exs. 4-6; Schumann Decl. ¶ 17.) Defendant derives profit from the site activity generated by "free music" by selling advertisements on the Websites. (Mem. Supp., Exs. 7, 8 at 5.)

*Third*, Plaintiffs allege that Defendant markets this stream-ripping technology to circumvent the technological measures. *See* § 1201(b)(1)(C); (Compl, ¶¶ 88, 91.) As discussed

15

above, Defendant's Websites actively encourage Users to infringe Plaintiffs' copyrighted audio recordings by providing direct links to convert the videos that include Plaintiffs' audio recordings. (Schumann Decl. ¶¶ 20-22; Mem. Supp., Ex. 9-12.) Additionally, the Websites tell Users that they can download "entire albums" from streaming sites like YouTube for free or "without paying for it." (Schumann Decl. ¶ 23; Mem. Supp., Ex. 13, 14, 17.) Therefore, the undersigned finds that Plaintiffs sufficiently stated a claim for circumvention under the DMCA against Defendant.

## IV. REQUESTED RELIEF

Plaintiffs requests that the Court award (1) statutory damages under the Copyright Act, (2) statutory damages under the DMCA, (3) injunctive relief under the Copyright Act, and (4) reasonable attorneys' fees and costs. (Compl. ¶¶ 57-59; 65-67; 73-75; 84-86; 94-96.)

### A.    Statutory Damages Under the Copyright Act

The Copyright Act allows a copyright owner to elect to recover "an award of statutory damages for all infringements involved in the action." 17 U.S.C. §§ 504(a)(2), (c)(1). Should a copyright owner elect for statutory damages, the Copyright Act affords courts discretion in determining the proper amount. *See EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009). In exercising this discretion, courts consider "expenses saved by the defendant in avoiding a licensing agreement, profits reaped by defendant in connection with the infringement, revenues lost to the plaintiff, and the willfulness of the infringement" and "the goal of discouraging wrongful conduct." *Id.* at 509; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003).

16

"[W]ith respect to any one work," statutory damages may total "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Upon a finding of willful infringement, however, the Court "may increase the award of statutory damages to a sum of not more than $150,000.00." *Id.* § 504(c)(2). Infringement is willful for enhanced statutory damages purposes "when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 649 (E.D. Va. 2011) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F. 3d 789, 799 (4th Cir. 2001)).

Here, Plaintiffs pleaded in the Complaint and further demonstrated in the Memorandum in Support of Relief that Defendant Kurbanov violated Plaintiffs' 1,618 copyrights. (*See* Compl. ¶¶ 56, 64, 72; Mem. Supp. at 15-16.) Plaintiffs elected for statutory damages. Therefore, Plaintiffs are entitled to statutory damages. The remaining issue is whether the amount requested is appropriate. Plaintiffs request an award of $50,000 per work (here, 1,618) for a total of $80,900,000.[5] (Compl. ¶¶ 57, 65, 73; Mem. Supp. at 22.) Defendants argue Plaintiffs should be awarded the lowest amount of statutory damages per violation, $200, if at all. (Opp. at 5.) The undersigned finds that Plaintiffs' requested relief is appropriate given Plaintiffs' lost profits and Defendant's advertising revenue, history of infringement, knowledge of copyright laws, and overall willfulness. The undersigned will address each factor below.

---

[5] This total comprises damages of $50,000 per work, which is an enhanced damages value but is less than the statutory maximum of $150,000 per work for willful copyright violations. *See* 17 U.S.C. § 504(c)(2). The maximum statutory damages amount has been awarded in analogous cases. *See Sony/ATV Music Publishing LLC v. 1729172 Ontario, Inc.*, 2018 WL 4007537, at * 16-35 (M.D. Tenn. Aug. 20, 2018) (awarding hundreds of millions of dollars in statutory damages for violations of thousands of copyrighted audio recordings); *Graduate Mgmt. Admission Counsel v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003) (awarding a total of $3,300,000 for twenty-two infringements);

*First*, Defendant's Websites caused the Plaintiffs to lose profits and streaming revenue because of the enormous internet traffic to and use of the Websites' stream-ripping functions. The Fourth Circuit has recognized that the Websites are "two of the most popular stream-ripping websites in the world and are among the most popular of any kind on the Internet." *Kurbanov*, 963 F.3d at 349. Further, the sites received 300 million visitors based in the United States between October 2017 and May 2021. (*See* Schumann Decl. ¶ 30.) Accordingly, this factor weighs in favor of granting Plaintiffs' requested damages.

*Second*, Defendant has wrongfully profited from this scheme by selling digital advertising on the Websites. The actual profits that Defendant has received from the Websites are impossible to calculate given Defendant's refusal to produce his financial documents, among others, during discovery. This Court previously found that Defendant willfully disregarded the authority of the Court by repeatedly refusing to participate in discovery.[6] It is reasonable to infer that Defendant's financial documents would have reflected that Defendant has generated significant profit from his highly popular stream-ripping Websites. Therefore, this factor weighs in favor of granting Plaintiffs' requested damages.

*Third*, Defendant has a storied history of infringement. Multiple courts have found that Defendant's Websites are illegal for their stream-ripping functionality. Plaintiffs also sent infringement notices and cease-and-desist letters to Defendant, yet he has continued to infringe their copyrights. This factor also weighs in favor of granting Plaintiffs' requested damages.

*Fourth*, Defendant has knowledge of United States copyright law. Defendant argues that because he is a Russian resident and citizen, that he is does not have sufficient knowledge of

---

[6] The Court may draw adverse inferences that the information in the possession of a party but not produced by that party would be harmful to the party if produced. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 712 (6th Cir. 2007); Fed. R. Civ. Pro. 37(b).

United States Copyright laws. (Opp. at 5.) Plaintiffs reply that, in fact, Defendant is aware of and has been notified of United States Copyright law. (Reply at 4.) His websites include citations to the DMCA, and the Websites have a registered DMCA agent with the U.S. Copyright Office. (*Id.*) This fourth factor therefore weighs in favor of granting Plaintiffs' requested damages.

*Finally,* Plaintiffs have demonstrated that Defendant had actual and constructive knowledge that he is violating the Plaintiffs' copyrights. Defendant's Websites target sites like YouTube which are known for offering streaming of Plaintiffs' copyrighted audio recordings. Defendant's Websites explicitly encourage Users to download Plaintiffs' copyrighted audio recordings for free. And Defendant has received actual notices from the RIAA, instructing him to disable from the infringing functions of the Websites, yet he continued. Accordingly, the Plaintiffs have sufficiently demonstrated that Defendant's conduct has been willful, which supports the enhanced statutory damages claimed by Plaintiffs.

Defendant's Opposition argues that Plaintiffs are not entitled to any relief because they have failed to prove that any United States-based Users have illegally downloaded the copyrighted content. (Opp. at 4.) Defendant's arguments mischaracterize the relevant burden of proof in this case. This Court has entered default judgment against Defendant Kurbanov for his willful discovery violations and repeated contentions that he is not subject to the personal jurisdiction of this Court. (*See* dkts. 128, 129.) This entry of default judgment is equivalent to a finding of liability on all counts of Plaintiffs' Complaint, including the violations alleged under the Copyright Act. Furthermore, as discussed above, the Plaintiffs' Complaint sufficiently states claims for violations of the Copyright Act under multiple theories of liability. The Plaintiffs therefore do not have the burden of proving the elements of the alleged Copyright Act violations, and merely need to survive, as they have, a 12(b)(6) evaluation of the Complaint.

19

Accordingly, upon considering the aforementioned factors and Defendant's willful infringement, the undersigned finds that Plaintiffs are entitled to statutory damages and that Plaintiffs' request of $80,900,000 in Copyright Act statutory damages is reasonable.

**B.      Statutory Damages Under the DMCA**

The DMCA entitles plaintiffs to statutory damages of "the sum of no less than $2,500 or more than $25,000" per violation. 17 U.S.C. § 1203(c)(3)(B). Like under the Copyright Act, and the court looks to the circumstances and willfulness of the circumvention to determine statutory damages under the DMCA. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. Jan. 17, 2019).[7] "Willfulness" under the DMCA is determined by considering whether the defendant acted with knowledge that the service is designed for circumvention. *Sony Computer Ent. Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005). Courts have awarded maximum statutory damages where the defendant's actions were found to be willful or where deterrence was necessary. *See, e.g. id.; TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1262 (S.D. Fla. 2010).

Here, Defendant installed the youtube-dl software to the Websistes for the purpose of circumventing YouTube's technological and rolling cipher protections. Defendant implemented this software with the knowledge that YouTube videos are protected, as YouTube's Terms of Service prohibits users from circumventing these protections. Accordingly, the undersigned finds that Defendant acted willfully in circumventing YouTube's protections.

---

[7]  Defendant argues that awarding damages for circumvention under the DMCA would be duplicative and compensating plaintiffs for the same "injury." But as Plaintiffs' Reply argues, courts have held that recovery under both the Copyright Act and the DMCA is not "duplicative" because the statutes protect different interests and therefore compensate different injuries. *See GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 851 (N.D. Ill. 2019) (citing *Agence France Presse v. Morel*, No. 10-cv-2730, 2014 WL 3963124, at * 10 (S.D.N.Y. Aug. 13, 2014)).

Plaintiffs request a total of $2,022,500 in DMCA statutory damages, $1,250 per act of circumvention. (*See* Compl. ¶ 94; Mem. Supp. at 22.) As discussed above, Plaintiffs argue that Defendant is liable for at least 1,618 DMCA violations for intentionally circumventing YouTube's technological protection measures. The Websites circumvent these protections each time a User stream-rips a YouTube URL to create a free downloadable MP3. Defendant received a cease and desist letter from the RIAA demanding that Defendant disable this circumvention function. Therefore, the claimed 1,618 violations are likely on the low-end of Defendant's indeterminable number of violations.[8] Given the large scale and willfulness of Defendant's DMCA violations, the undersigned finds the statutory damages request of $2,022,500 to be reasonable.

### C.   Injunctive Relief Under the Copyright Act

The Plaintiffs seek injunctive relief under the Copyright Act. *See* 17 U.S.C. § 502(a). Specifically, Plaintiffs request multiple forms of injunctive relief to permanently enjoin from infringing on Plaintiffs' copyrighted audio recordings and from circumventing YouTube's technological protections of the audio recordings. (Mem. Supp. at 25.)

The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). Additionally, the Copyright Act states that a court may, "[a]s part of a final judgment or decree," order the

---

[8] Because Defendant refused to produce the requested web server data, it is impossible to determine how many acts of circumvention have occurred. YouTube often provides multiple videos containing the same copyrighted audio recording. It is therefore reasonable to infer that the web server data that Defendant failed to produce would have shown thousands more instances of circumvention. *See Clay*, 501 F.3d at 712; Fed. R. Civ. Pro. 37(b).

"destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights." *Id.* § 503(b). The DMCA also authorizes courts to grant injunctive relief to prevent violations of the statute. 17 U.S.C. § 1203(b)(1) ("[T]he court-(1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation . . . ."). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The undersigned determines that permanent injunctive relief is appropriate because the above four elements are satisfied.

*First*, the Plaintiffs have demonstrated that they have suffered—and will continue to suffer—irreparable harm. In copyright cases, "[i]rreparable injury [can be] derive[d] from the nature of copyright violations, which deprive the copyright holder of intangible [and] exclusive rights." *Christopher Phelps*, 492 F.3d at 544. Here, the undersigned determined that Defendant willfully infringed on Plaintiffs' copyrighted audio recordings. Further, Plaintiffs have lost the ability to control how their Works are distributed. Ultimately, this loss of control makes monetary damages inadequate as Defendant's conduct will continue to harm Plaintiffs in the future absent an injunction. These findings therefore support a determination that Plaintiffs have been irreparably harmed and that injunctive relief is appropriate.

*Second*, other remedies at law are inadequate to compensate the Plaintiffs. Despite a holding by the Fourth Circuit stating otherwise, Defendant insisted that he was not subject to the

personal jurisdiction of this Court and refused to participate in discovery. This lack of an appropriate response demonstrates a near certainty of continuing copyright infringement and makes it impossible to determine the actual profits and damages in the case. Furthermore, the willful refusal to participate in the litigation shows that Defendant is unlikely to cooperate with Plaintiffs' requests absent an issuance of injunctive relief.

*Third*, a permanent injunction would only cause the Defendant to experience the "hardship" of following clearly established copyright law. Defendant's Websites are premised on copyright violation and circumvention of copyright protections. *See Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 468 (E.D. Va. 2010). Therefore, Defendant's "unlawful conduct . . . garners no support." *MTI Enters.*, 2018 WL 6928927, at *6. The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiffs' hardships far outweigh any purported hardship that Defendant faces.

*Finally*, the public interest further favors an injunction. The public benefits from the judicial enforcement of copyrights by preserving legal integrity and protecting creativity. *See EMI Apr. Music*, 618 F. Supp. 2d at 511; *see also WPIX, Inc. v. ivi, Inc.*, 691 F. 3d 275, 287 (2d Cir. 2012). Here, an injunction would enforce Plaintiffs' legal rights and maintain the integrity of their copyrighted audio recordings. Additionally, the public will remain able to lawfully access and stream Plaintiffs' audio recordings on authorized services like YouTube. *See WPIX, Inc.* 691 F. 3d at 288. The undersigned finds that, because of Defendant's continuing infringement and his refusal to participate in this lawsuit, injunctive relief is appropriate and the best means to prevent future harm to Plaintiffs.

### D.    Reasonable Attorneys' Fees and Costs

Lastly, the Plaintiffs request that the Court to rule that they are entitled to reasonable

attorneys' fees and costs incurred in bringing this action.

    1)  <u>Attorneys' Fees</u>

The Copyright Act authorizes courts "to award a reasonable attorney's fee to the prevailing party as part of the cost." 17 U.S.C. § 505. Courts in the Fourth Circuit consider four factors to determine if attorney's fees are appropriate under the Copyright Act: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation or deterrence,' and (4) 'any other relevant factor presented.'" *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F. 3d 503, 505 (4th Cir. 1994) (quoting *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir. 1993)).

Here, the factors weigh heavily in favor of granting attorneys' fees to Plaintiffs. First, the Plaintiffs' motivation is to guard their intellectual property from Defendant's stream-ripping enabling Websites. Second, Plaintiffs' legal and factual positions are objectively reasonable given the allegations in the Complaint discussed thoroughly above. Third, as discussed, Defendant's willful copyright and DMCA infringements remain ongoing and require deterrence. Accordingly, the undersigned finds that an award of attorneys' fees is appropriate.

    2)  <u>Costs</u>

Plaintiffs additionally request that the Court award the costs incurred in bringing this action. The Copyright Act authorizes courts to award "full costs" to successful plaintiffs. 17 U.S.C. § 505. Costs include reasonable out-of-pocket expenses the attorney incurred in pursuing legal services that would typically be charged to a fee-paying client. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Courts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement. *See, e.g.,*

24

*Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165, at *14 (D. Md. July 11, 2016). Here, Plaintiffs have not submitted the amount of expenses they have incurred during this litigation. The undersigned finds that Plaintiffs are entitled to an award of reasonable costs, but first the Plaintiffs should file a memorandum requesting specific costs.

## V. RECOMMENDATION

For the reasons outlined above and because default has been entered against Defendant Kurbanov under to Rule 37(b), the undersigned recommends that the Court issue an order:

(1) awarding Plaintiffs statutory damages for Copyright and DMCA violations in the amount of $82,922,500;

(2) ruling that Plaintiffs are entitled to reasonable attorney's fees and costs; and

(3) issuing a permanent injunction

　　(i)　　preventing Defendant from directly or indirectly infringing in any manner any and all of Plaintiffs' Copyrighted Works;

　　(ii)　　preventing Defendant from directly or indirectly circumventing any and all technological measures, including, but not limited to, YouTube's "rolling cipher," that effectively control access to or protect a right of any Plaintiff in any and all of Plaintiffs' Copyrighted Works;

　　(iii)　　requiring Defendant to, within thirty (30) days of the Court's Order, permanently delete and destroy all electronic copies of any of Plaintiffs' Copyrighted Works, or derivative works thereof, that Defendant has in his possession, custody, or control, and all devices by means of which such copies have been created. Defendant shall then certify to this Court in a declaration that he has complied with this paragraph;

　　(iv)　　requiring Defendant within ten (10) business days following entry of this Order, to give notice of it to each of his officers, agents, servants, employees, and attorneys and all those in active concert or participation with him, including, but not limited to, Able Sun Holdings Ltd., Hotger Ltd., Natalia Kyriakidou, Pavel Vasin, Daria Jones, and Alexandra Dimakos.

25

VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

/s/

Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December 16, 2021
Alexandria, Virginia

26